**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | | |
|---|---|---|
| In re: | * | |
| **CTLC, LLC** | * | **Case No. 23-15444-DER** |
| | | **(Chapter 11)** |
| **Debtor.** | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**AMENDED DISCLOSURE STATEMENT FOR CHAPTER 11 PLAN**

**I.    Introduction**

CTLC, LLC, Debtor and Debtor-in-Possession (the "Debtor"), by its undersigned counsel, pursuant to the provisions of Chapter 11 of Title 11 of the United States Code, file this Disclosure Statement to disclose the information believed to be material for creditors to arrive at a reasonably informed decision and to exercise the right to vote on acceptance of the Chapter 11 Plan (the "Plan") filed by the Debtor with the United States Bankruptcy Court for the District of Maryland on **February 2, 2024**.

**NO REPRESENTATIONS CONCERNING THE DEBTOR (PARTICULARLY AS TO THE VALUE OF ITS ASSETS) ARE AUTHORIZED, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE ACCEPTANCE OF THE PLAN THAT ARE NOT CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY ANY CREDITOR AND SHOULD BE REPORTED TO UNDERSIGNED COUNSEL FOR THE DEBTOR. MUCH OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. THE RECORDS KEPT BY THE DEBTOR ARE NOT WARRANTED OR**

REPRESENTED TO BE WITHOUT ANY INACCURACY, ALTHOUGH GREAT
EFFORT HAS BEEN MADE TO ENSURE THAT ALL RECORDS ARE ACCURATE.

II.    **History and Background of the Debtor**

The Debtor is a Maryland limited liability company which owns real estate known as
15125 Devlin Drive, Glenelg, MD 21737 in Howard County (the "Real Property").  The Real
Property is a custom home site, consisting of approximately 38.25 acres, improved by a partially
constructed two story, approximately 25,000 square-foot single family residence.  Prior to the
Petition Date, the Debtor was declared to be in default of the secured loan against the Real
Property and, thereafter, subject to foreclosure proceedings.  Following unsuccessful
negotiations to reinstate or resolve the loan, the Debtor was forced to commence this Chapter 11
proceeding on August 11, 2023.

The Debtor is in the process of making the necessary repairs to maximize the sale of
Property, with the proceeds of the sale expected to provide for full satisfaction of the Debtor's
creditors and a substantial return to the Debtor's equity holder.  The Debtor has engaged
Makeover Construction LLC as its general contractor pursuant to a Construction Agreement
dated February 1, 2024, a copy of which is attached as **Exhibit 1** hereto.  The Debtor's general
contractor is currently managing warranty repairs and finishing incomplete work, to prepare the
Real Property to be marketed for sale.  The Debtor and its general contractor are operating under
a project plan with projected deadlines and estimated budget, a copy of which is attached as
**Exhibit 2** hereto.  A photograph depicting recent status of the Real Property is attached as
**Exhibit 3** hereto.

The Debtor has engaged TTR Sotheby's International Realty as broker for the sale of the
Real Property, and anticipates having an active listing no later than June 1, 2024.  Given the

peculiarities of the Real Property with its size, complex nature, and the condition it was left in and will be sold in, the Debtor anticipates an extended sale period, as is necessary for creditors to fully realize their due returns.   The Debtor has retained, with court approval, Tydings & Rosenberg LLP ("T&R") as their general bankruptcy counsel.   The Debtor's application to approve the employment of its real estate broker is pending.

### III.    The Plan of Reorganization

SET FORTH BELOW IS A BRIEF SUMMARY OF THE PLAN.   THE SUMMARY SHOULD NOT BE RELIED UPON FOR VOTING PURPOSES. CREDITORS ARE URGED TO READ THE ENTIRE PLAN AND TO CONSULT WITH COUNSEL OR EACH OTHER TO FULLY UNDERSTAND THE PLAN.   A COPY OF THE PLAN HAS BEEN FILED WITH THE CLERK, UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF MARYLAND, U.S. COURTHOUSE, 101 W. LOMBARD STREET, BALTIMORE, MARYLAND 21202, AND IS AVAILABLE FOR INSPECTION AND REVIEW.

THE PLAN IS COMPLEX AND REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT.   AN INFORMED JUDGMENT CONCERNING THE PLAN, THEREFORE, CANNOT BE MADE WITHOUT READING AND UNDERSTANDING IT.

A.    Definitions and Classes

The Plan, in Article 1, provides the following definitions:

1.1    "Administrative Bar Date" means forty-five (45) days after the Effective Date and is the date by which applications for allowance of Administrative Expense Claims incurred

6140946.1

through the Confirmation Date must be filed with the Court or be forever barred and discharged. Notice of confirmation of the Plan shall be deemed sufficient and adequate notice of the Administrative Bar Date.

1.2 "Administrative Expense(s)" means a Claim for costs and expenses of administration of the Chapter 11 case allowed under section 503(b) or, if applicable, 1114(e)(2) of the Bankruptcy Code, including: (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Debtor's Estate and operating the business of the Debtor (such as wages, salaries, commissions for services and payments for inventories, lease equipment and premises) and Claims of governmental units for taxes (including Claims related to taxes which accrued after the Petition Date, but excluding Claims related to taxes which accrued on or before the Petition Date); (b) compensation for legal, financial, advisory, accounting and other services and reimbursement of expenses allowed by the Bankruptcy Court under sections 330, 331 or 503(b) of the Bankruptcy Code to the extent incurred prior to the Effective Date; and (c) all fees and charges assessed against the Debtor's Estate under 28 U.S.C. §1930.

1.3 "Allowed Claim(s)" means any Claim:

(a) in respect of which a proof of claim has been filed with the Bankruptcy Court within the applicable period of limitations fixed by Bankruptcy Rule 3003; or

(b) which is listed in Schedules D, E, or F filed by the Debtor with the Court, including any amendments thereto, and is not listed as disputed, contingent, or unliquidated as to amount; or

(c) for which an application has been filed pursuant to sections 329 and 330 of the Bankruptcy Code;

and further, as to any such Claim, (i) either no objection to the allowance thereof has been filed, or if an objection to the allowance thereof has been filed, the objection has been overruled or the

amount of such Claim fixed by a Final Order; or (ii) such Claim has not been paid, settled, waived or withdrawn.

1.4    "Bankruptcy Code" means Title 11 of the United States Code ("U.S.C.") as enacted by the Bankruptcy Reform Act of 1978, Public Law No. 95-598 and subsequently amended, and such portions of Title 28 of the United States Code as are applicable to bankruptcy cases.

1.5    "Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the District of Maryland.

1.6    "Bankruptcy Rules" means (a) the Federal Rules of Bankruptcy Procedure, and (b) the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Maryland, both as now in effect or hereafter amended.

1.7    "Causes of Action" means any action, claim, cause of action, controversy, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law, including but not limited to any action to recover any transfer that may be avoided under any provision of the Bankruptcy Code including, but not limited to, sections 544, 547, 548 or 549; or any action, cause of action, claim, power, right and/or and remedy arising under sections 544, 545, 546, 547, 548, 549, 550, 553 or 558 of the Bankruptcy Code.  Causes of Action also include: (a) any right of setoff, counterclaim or recoupment and any claim for breaches of duties imposed by law or in equity; (b) the right to

object to Claims or Interests; (c) any claim pursuant to sections 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

1.8    "Claim(s)" means any claim against the Estate or as defined in § 101(5) of the Bankruptcy Code, including, but not limited to, all claims arising from the rejection of unexpired leases and/or executory contracts.

1.9    "Claims Bar Deadline" means October 21, 2023 for all creditors except for a governmental unit; and January 29, 2024 for a governmental unit.

1.10    "Claim Objection Deadline" means the date that occurs ninety (90) days following the Effective Date.

1.11    "Confirmation Date" means the date on which the Court enters the Confirmation Order.

1.12    "Confirmation Order" means the order of the Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.13    "Disputed Claim(s)" means any Claim or a portion of any Claim as to which the Debtor, or any other party in interest has filed an objection or motion to estimate claim in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection has not been withdrawn or adjudicated pursuant to a Final Order.

1.14    "Effective Date" means the day after the Confirmation Order becomes final by expiration of the time for appeal therefrom.

1.15    "Estate" means the Debtor's bankruptcy estate created pursuant to section 541 of the Bankruptcy Code upon commencement of the Debtor's bankruptcy case.

1.16    "Final Order" means an order that has not been reversed, stayed, modified or amended and the time to appeal from or to seek review of or rehearing on such order has expired, and which order has become final.

1.17    "Petition Date" means August 2, 2023.

1.18    "Plan" means the Debtor's Chapter 11 Plan, or as hereafter amended or modified.

1.19    "Plan Proponents" shall mean Sandra Grier, Michael Grier, and the Grier Revocable Trust.

1.20    "Professional Person(s)" means an attorney, accountant, appraiser, consultant or other professional retained or to be compensated pursuant to an order of the Court entered under sections 327, 328, 330, 503(b), or 1103 of the Bankruptcy Code.

1.21    "Proof of Claim" means a proof of claim filed pursuant to section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.22    "Real Property" means the real estate known as 15125 Devlin Drive, Glenelg, MD 21737 in Howard County, Maryland, generally described as a custom home site, consisting of approximately 38.25 acres, improved by a partially constructed two story, approximately 25,000 square-foot single family residence.

1.23    "Schedules" means the schedules of assets and liabilities and statement of financial affairs filed by the Debtor with the Bankruptcy Court in accordance with section 521(1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules, and any amendments thereto.

1.24    "Secured" shall be consistent with section 506 of the Bankruptcy Code, and shall mean an allowed Claim in an amount equal to the present value of the applicable creditor's interest in the Debtor's interest in the property, or in the amount subject to setoff, as may be

established by this Plan, the Confirmation Order, or separate Order of the Court. Debtor reserves the right to challenge whether a Claim is fully secured or secured at all.

**The Plan, in Articles 2 and 3, classifies and treats claims as follows**:

        <u>Class 1</u>. Class 1 consists of (i) Allowed Claims for costs and expenses of administration of the Estate, as defined above as Administrative Expenses, including fees of Professional Persons approved by the Court and other post-petition operating expenses and (ii) fees payable to the United States Trustee by the Debtor under 28 U.S.C. § 1930(a)(6).

**Treatment:** The Debtor shall pay each Class 1 claimants in full, in cash, on the latest of (a) the Effective Date, (b) the thirtieth (30th) day after such claimant's claim has become an Allowed Claim, or (c) a date agreed upon by the Debtor and the particular claimant. Class 1 is not a class of claims impaired under the Plan.

        <u>Class 2</u>. Class 2 consists of all Allowed Claims that are entitled to priority under section 507 of the Bankruptcy Code excluding 11 U.S.C. § 507(a)(2) administrative claims and § 507(a)(8) unsecured tax claims.

**Treatment:** The Debtor shall pay each Class 2 claimants in full, in cash, but only to the extent each is entitled to priority under section 507, on the latest of (a) the Effective Date, (b) the thirtieth (30th) day after such claimant's claim has become an Allowed Claim, or (c) a date agreed upon by the Debtor and the particular claimant. Class 2 is not a class of claims impaired under the Plan.

Class 3. Class 3 consists of all Allowed Claims for unsecured taxes of government units entitled to priority under section 507(a)(8).

**Treatment**:  While the Debtor does not believe that there are any claims in Class 3, to the extent that the Court determines otherwise, the Debtor shall pay each Class 3 allowed claim in full, in cash, on the latest of (a) the Effective Date, (b) the thirtieth (30th) day after such claim has become an Allowed Claim, or (c) a date agreed upon by the Debtor and the particular claimant. Class 2 is not a class of claims impaired under the Plan.

Class 4.   Class 4 consists of the Secured Claim of WCP Fund I LLC as Servicer for Pacific RBLF Funding Trust, as claimed against the Debtor's Estate at Claim No. 1 filed with the Bankruptcy Court.

**Treatment**:  Class 4 asserts a lien against the Debtor's Real Property by way of a Deed of Trust recorded at Book 21365, page 438 among the Land Records for Howard County, Maryland.  The Debtor shall pay the Class 4 claimants their Allowed Secured Claim in full upon the sale or refinance of the Debtor's Real Property, no later than two (2) years from the Effective Date, and after such date the automatic stay provided by 11 U.S.C. § 362 shall be immediately terminated as to Class 4 claimants, and such claimants shall then be entitled, without further order of the Court, to immediately exercise and enforce all rights and remedies afforded their Secured interest(s) in the Debtor's Real Property under applicable state law.  Class 4 is a class of Claims impaired under the Plan.

Class 5.   Class 5 consists of the Secured Claim of J Paul Builders, LLC, as claimed against the Debtor's Estate at Claim No. 5 filed with the Bankruptcy Court.

**Treatment**:  Class 5 asserts a lien against the Debtor's Real Property by way of a Final Mechanic's Lien Order entered in the Circuit Court for Howard County, Case No. C-13-Cv-22-

000026.  The Debtor shall pay the Class 5 claimants their Allowed Secured Claim in full upon the sale or refinance of the Debtor's Real Property, no later than two (2) years from the Effective Date, and after such date the automatic stay provided by 11 U.S.C. § 362 shall be immediately terminated as to Class 5 claimants, and such claimants shall then be entitled, without further order of the Court, to immediately exercise and enforce all rights and remedies afforded their Secured interest(s) in the Debtor's Real Property under applicable state law.  Class 5 is a class of Claims impaired under the Plan.

Class 6. Class 6 is comprised of all general unsecured Claims.

**Treatment:** Class 6 claims shall be paid pro rata from (i) any surplus net sale proceeds from the sale of the Debtor's Real Property after the payment of all closing costs, real estate taxes and all amounts required to satisfy the Allowed Secured Claims, and (ii) any remaining cash of the Debtor, within sixty (60) days of the sale of the Debtor's Real Property.  Class 6 is a class of Claims impaired under the Plan.

**B.       Plan Execution**

The Plan, in Article 4, provides the means for execution as follows:

Funding of Plan.  The funds necessary to implement the Plan, and including the repairs referenced in Section II *supra*, shall be funded by the Debtor's cash reserves, contributions from the Plan Proponents, and, ultimately, the sale or refinance of the Debtor's Real Property.  The Debtor shall adhere to the following deadlines:

(a)       Deadline for Listing: No later than June 1, 2024, Debtor shall actively list the Real Property for sale with a broker employed with Court authorization.

(b)    <u>Deadline for Sale</u>:  The Debtor's Real Property shall be sold no later than two years from the Effective Date.

<u>Retained Duties, Rights and Powers of the Debtor</u>.  Upon confirmation of the Plan, the Debtor shall retain all rights and powers under the Bankruptcy Code, including, but not limited to, the right to prosecute all Causes of Action and all other causes of actions and all other rights and powers under §§ 505, 506, 541, 542, 543, 544, 547, 548, 549, 550, and 553 of the Bankruptcy Code.  Furthermore, from and after the Effective Date the Debtor shall retain the authority for (i) enforcing and prosecuting claims, interests, rights and privileges of the Debtor's Estate, including, without limitation, Causes of Action; (ii) resolving Disputed Claims; and (iii) confirming and administering the Plan and taking such actions as are necessary to effectuate the Plan.

The Debtor shall have the exclusive right, power and authority, but not the obligation, among other things, to: (a) object to any Claim; (b) file suit or commence an action or proceeding with respect to any claim or cause of action of the Debtor and/or the Debtor's Estate, and otherwise prosecute, settle, compromise or pursue such claim or cause of action; (c) retain and employ professionals as it deems necessary or appropriate to carry out the terms and purposes of the Plan and on such terms as the Debtor deems reasonable; (d) execute and enter into contracts on behalf of the Estate as the Debtor deems necessary or appropriate to carry out the terms and purposes of the Plan and on such terms as the Debtor deems reasonable; (e) distribute funds to holders of allowed Claims consistent with the terms of the Plan; (f) file a final report and move to close the Debtor's Chapter 11 case; and (g) to take such other and further actions as may be necessary or appropriate to carry out the terms and purposes of the Plan.

Special Tax Provision.   Pursuant to § 1146 of the Bankruptcy Code, the following transactions shall not be subject to any stamp, real estate transfer, recapture, mortgage recording or other similar tax: the issuance, transfer or exchange of any notes or equity securities under the Plan; sale of the Debtor's Real Property or other assets; the creation of any mortgage, deed of trust or other security interest; the making or assignment of any lease or sublease; or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan; and/or any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan.

Resolution of Disputed Claims. To the extent a Claim is a Disputed Claim, the Debtor shall not be required to pay the applicable disputed portion of a payment to the holder of the Disputed Claim that would otherwise be payable with respect to the Disputed Claim.   In the event that the Disputed Claim is allowed, the Debtor shall thereafter pay the appropriate amount to the holder of such Claim in accordance with the terms of the Plan and in the same manner as any other creditor of the same Class.

Distributions.   The Debtor may stop payment on any distribution check that has not cleared the issuing bank within ninety (90) days of the date of distribution of such check.   All unclaimed funds or property may be used to satisfy any additional expenses or fees, or if none exist and all classes have been paid in full, shall revert to the bank accounts maintained by the Debtor.   Distributions to holders of Allowed Claims shall be made at the address of each such holder as determined in accordance with the proof of claim filed by the respective claimholder, or if no proof of claim is filed, in accordance with the Schedules.   If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Debtor becomes aware of such holder's then current address, at which time all missed

6140946.1

distributions shall be made to such holder, without interest, from the date of the first attempted distribution. All unclaimed distributions shall be used to satisfy the costs of administering and fully consummating this Plan and the holder of any such Claim or interest shall not be entitled to any other further distribution under this Plan on account of such Claim or interest. **C.**

**Executory Contracts and Unexpired Leases**

The Plan, in Article 5, contains the following provisions concerning the treatment of executory contracts and unexpired leases:

Assumption of Remaining Leases and Contracts. Unless otherwise assumed or rejected by separate Court order, on the Effective Date, except as otherwise provided herein, or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, executory contracts and unexpired leases shall be deemed rejected, with the effective date of assumption being the Effective Date or such date determined by the Bankruptcy Court, unless such executory contract or unexpired lease: (i) was assumed, assumed and assigned, or rejected previously; (ii) previously expired or terminated pursuant to its own terms; or (iii) is the subject of a motion to assume or assume and assign filed on or before the Effective Date. The entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions or rejections of such executory contracts or unexpired leases as set forth in the Plan, pursuant to sections 365(a) and § 1123 of the Bankruptcy Code. Any motions to assume or assume and assign executory contracts or unexpired leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a final order, including the Confirmation Order.

Rejection Claims. Pursuant to Bankruptcy Rule 3002(c)(4), and except as otherwise ordered by the Court, Claims arising from the rejection of an executory contract or unexpired

lease shall be filed, by way of motion, with the Court no later than thirty (30) days after the later of the entry of a Final Order approving such rejection and the confirmation of the Plan, or such Claim shall be forever barred. Any Claim arising from the rejection of an executory contract or unexpired lease shall be deemed a Class 6 Claim for distribution purposes as of the date of the entry of an order of the Court approving said Claim.

### D.   Plan Modification

The Plan, in Article 6, contains the following provisions regarding Plan modification:

Pre-Confirmation Modification. The Debtor reserves the right, in accordance with the Bankruptcy Code, to amend or modify the Plan or the treatment of any Claim prior to the Confirmation Date.

Post-Confirmation Modification. After the Confirmation Date, the Debtor may amend or modify the Plan, or any portion thereof, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission, or reconcile any inconsistency in the Plan, in such a manner as may be necessary to carry out the purpose and intent of the Plan.

### E.   Retention of Jurisdiction Provisions

The Plan, in Article 8, contains the following provisions regarding jurisdiction:

Retention of Jurisdiction. Notwithstanding the Confirmation of the Plan, the Court will retain jurisdiction until consummation of the Plan to ensure that the purposes and intent of the Plan are carried out. The Court's jurisdiction shall be over any and all disputes and litigation pending at the time of the confirmation of the Plan, any controversies that may arise thereafter, and any controversies that may affect the ability of the Debtor to effectuate the consummation of the Plan. By way of illustration of the jurisdiction retained by the Court, but not by way of

limitation of the same, the Court shall retain jurisdiction in this case, among other things, for the following purposes:

(a)  The classification of the claim of any creditor and the re-examination of claims which have been allowed for purposes of voting, and the determination of such objections as may be filed to the claims of creditors.  The failure by the Debtor to object, or to examine any claim for purposes of voting, shall not be deemed to be a waiver of the right to object to or re-examine any claim in whole or in part.

(b)  Except to the extent that the Debtor choose to invoke the jurisdiction of a state court, the determination of all causes of action, controversies, disputes and conflicts involving, or relating to, the Debtor or the Debtor's assets, arising prior to or after the Confirmation Date, whether or not subject to an action pending as of the Confirmation Date, between the Debtor and any other party or parties, including but not limited to, any right of the Debtor to recover assets pursuant to applicable provisions of the Bankruptcy Code.

(c)  The modification of this Plan after confirmation to correct any defect, to cure any omission, or to reconcile any inconsistency in this Plan or in the Order of Confirmation, as may be necessary or otherwise appropriate to carry out and/or clarify the intended purposes of the Plan or the Confirmation Order.

(d)  The allowance of compensation for professional services rendered to the Debtor's Estate by professionals of the Debtor through the Confirmation Date pursuant to section 330(a) of the Bankruptcy Code, upon application for such compensation.

(e)  The enforcement and interpretation of the terms and conditions of this Plan, including any agreement for satisfaction of an Allowed Claim.

(f)  The determination of the existence of any liens, encumbrances, or interests of other parties in property of the Debtor's Estate or the Debtor, and the extent and priority thereof.

(g)  The enforcement of, and the continuation of, the automatic stay and any similar equitable relief with respect to post-confirmation actions against the Debtor, the Debtor's Estate, and/or property of the Debtor's Estate.

(h)  The resolution of any disputes regarding implementation of the Plan.

(i)  Entry of an order concluding and terminating the case.

Payment as Release.  The tender of full payment to the holder of an Allowed Claim in any class as provided for under this Plan shall be deemed to effect a settlement, release, and discharge of the Debtor, the Debtor's Estate, and all of the Debtor's property by such holder on behalf of itself, successors and assigns.

Extension of Dates.  If any date or deadline under this Plan falls on a Saturday, Sunday, or legal holiday, the date or deadline shall be deemed to occur on the next business day thereafter, unless otherwise provided herein.

Rules of Construction.  Except as otherwise provided herein, this Plan shall be construed in conformance with the rules of construction in § 102 of the Bankruptcy Code.  Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Maryland, without giving effect to the principles of conflicts of law of such jurisdiction.

Addresses for Notices.  In the event a party is required to give notice to the Debtor under this Plan, such notice shall be in writing, shall reference the above-referenced case numbers, and shall be sent by commercially reasonable means under the circumstances to the following:

Richard L. Costella, Esq.
Joseph M. Selba, Esq.
Tydings & Rosenberg LLP
1 East Pratt Street, Suite 901
Baltimore, MD 21202
(410) 752-9700
Fax: 410.727.5460
rcostella@tydings.com
jselba@tydings.com

Section 1129(b) Election.  In order to confirm the Plan, and to the extent necessary, the Debtor invokes the entitlement of section 1129(b) of the Bankruptcy Code, such that, as long as

6140946.1

the Plan does not discriminate unfairly, and is fair and equitable, with respect to any Class of Claims that is impaired under and has not accepted the Plan, the Plan may be confirmed by the Court.

Statutory Fees.  All fees payable pursuant to Chapter 123 of Title 28, United States Code, as determined by the Court on the Confirmation Date, shall be payable on the Effective Date. Any statutory fees accruing after the Effective Date shall constitute Administrative Expenses.

Deadline for Filing Administrative Expense Claims.  Notwithstanding section 503(a) of the Bankruptcy Code, any person or entity seeking the allowance or payment of an Administrative Expense Claim under section 503 of the Bankruptcy Code and/or any Professional Person or firm retained with approval by order of the Court seeking compensation in this Chapter 11 case pursuant to sections 330 or 503(b) of the Bankruptcy Code, shall be required to file on or before the Administrative Bar Date an application for the allowance and/or payment of an Administrative Expense Claim including, without limitation, an application for the final compensation of a Professional Person and reimbursement of expenses.  Any such Administrative Expense Claim not filed by the Administrative Bar Date shall be forever barred and discharged.  Objections to any such application shall be filed on or before a date to be set by the Court.

Actions on Claims.  After the Confirmation Date, unless otherwise ordered by the Court after notice and a hearing, the Debtor shall have the sole and exclusive right to make and file objections to Claims and shall serve a copy of each objection upon the holder of such Claim to which the objection is made.  Objections to Claims shall be filed by the Claim Objection Deadline.  The Debtor shall retain the discretion to litigate such objection to a final determination in the Court or to elect to compromise, settle, or otherwise resolve any such objection subject to

6140946.1

approval thereof by the Court. The Debtor may, at any time, request that the Court estimate any Disputed Claim pursuant to § 502(c) of the Bankruptcy Code regardless of whether there is a previous objection to such Claim, and the Court will retain jurisdiction to estimate any such Claim(s) at any time.  On or after the Confirmation Date, any Claims which have been estimated may subsequently be compromised, settled, withdrawn or otherwise resolved subject to approval by the Court. If, on or after the Effective Date, any Disputed Claim is allowed, the Debtor shall include the Claim in the next distribution to creditors in that particular class of Claims, and any distribution thereafter until the Claim has been paid in accordance with all other Claims in that class.

Closing of Case.  When all Disputed Claims filed against the Debtor have become Allowed Claims or have been disallowed by Final Order, and the Debtor has determined that all causes of action have been fully and finally resolved, the Debtor may seek authority from the Bankruptcy Court to close its case and seek a final decree in accordance with the Bankruptcy Code and the Bankruptcy Rules.

Invalidity of Plan Provisions. Should any provision of this Plan be determined to be invalid, void or unenforceable, such determination shall not in any way limit or affect the enforceability and operative effect of any or all other provisions of the Plan and the Court shall, with the consent of the Debtor, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and in no way shall be affected, impaired or invalidated by such holding,

6140946.1

alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in according with the foregoing, is valid and enforceable pursuant to its terms.

## IV. <u>Voting On The Plan And Confirmation</u>

Voting on acceptance or rejection of the Plan will be governed by the provisions of the Bankruptcy Code.  Each voting creditor will be supplied with an official ballot, in a form prescribed by the Court.  Creditors may vote to accept or reject the Plan by returning a completed ballot to the undersigned counsel for the Debtor as instructed on the ballot.  A class of creditors will be considered to have accepted the Plan (a) if it is accepted by creditors holding at least two-thirds (2/3) in amount, and more than one-half (1/2) in number of the allowed claims of each class that has voted, or (b) if the class is unimpaired within the meaning of the Bankruptcy Code.

After the time for voting on the Plan passes, the Court will hold a hearing and rule on confirmation of the Plan in accordance with the Bankruptcy Code.  If all requirements for confirmation of the Plan under the Bankruptcy Code are satisfied, except that the Plan is not accepted by one or more classes of creditors, the Court may confirm the Plan without the acceptance of creditors if the Court finds that the Plan does not discriminate unfairly, and is fair and equitable (within the meaning of the Bankruptcy Code) with respect to any class of creditors that does not accept the Plan.

Dated:  April 12, 2024                        /s/ Joseph M. Selba

Richard L. Costella, Bar No. 14095
Joseph M. Selba, Fed. Bar No.: 29181
Tydings & Rosenberg LLP
1 East Pratt Street, Suite 901
Baltimore, Maryland 21202
Tel: (410) 752-9700
Fax: 410.727.5460

Email: rcostella@tydings.com
jselba@tydings.com
*Counsel for the Debtor*

# EXHIBIT 1

# CONSTRUCTION AGREEMENT

This Construction Agreement (hereinafter referred to as the "Agreement ") is made effective as of this February 1, 2024 (hereinafter referred to as the "Effective Date"), by and between CTLC LLC (hereinafter referred to as the "Owner") and Makeover Construction LLC (hereinafter referred to as the "Contractor"), collectively referred to as the "Parties." The parties have entered into this agreement so that the Contractor can execute the work described in **Exhibit A: Scope of Work** (hereinafter referred to as the "Work"), except to the extent that an item of Work is excluded.

The Contractor hereby agrees to provide the Architecture, Engineering, Construction, and Project Management services required to complete the Work ("hereinafter referred to as the "Project") located at **15125 Devlin Drive, Glenelg, Maryland, 21737** (hereinafter referred to as the "Property"). The Contractor shall provide the construction, procurement, administration, and management of services to complete the Project in accordance with the terms of this Agreement .

## ARTICLE 1 – ENTIRE AGREEMENT

This Agreement , the Plans, Specifications, General Conditions, Certificate of Warranty and any other written document signed by the parties subsequent to the execution of this Agreement , including all subsequent Change Orders shall be and hereby are made a part of this Agreement by incorporation and reference and shall be referred to collectively as the "Agreement Documents."

This Agreement may not be orally amended, modified, or terminated. No amendment or modification shall be binding upon the Owner unless signed by the Owner. No amendment or modification shall be binding upon the Contractor unless signed by the Contractor's business owner or designated representative. This Agreement shall bind the permitted successors and assigns of the respective parties.

This Agreement contains the entire agreement of the parties, and there are no other promises or conditions in any other agreement or agreement whether oral or written concerning the subject matter of this Contract. Any amendments must be in writing and signed by each party. This Agreement supersedes any prior written or oral agreement s between the parties.

Nothing in this Agreement shall create or be construed to create any third-party beneficiary rights in any person not a signatory to this Agreement .

## ARTICLE 2 – COMMENCEMENT AND TERM

**Commencement.** The Contractor shall commence work on the Project no later than thirty (30) business days after the later to occur of by (i) the execution of this Agreement by the Owner and the Contractor; or (ii) the issuance of the general building permit; or (iii) the authorization to proceed on the Project as granted by a government organization has jurisdiction over the Project.

Upon completion of the Project, the Owner agrees to sign a Notice of Completion within ten (10) days of the completion of the Contract. If the project passes its final inspection and the

Owner does not provide the Notice, the Contractor may sign the Notice of Completion on behalf of the Owner.

**Project Duration.** The Project shall be Complete by the Contractor no later than twenty-four (24) months from Effective Date of the Agreement . The Project shall be completed on or before July 1, 2026, time being of the essence.

However, if construction is delayed by adverse weather, fire or other casualty, material or labor shortages, strikes, national defense, acts of God, the acts or omissions of the Owner, unanticipated delays by applicable governmental authorities having jurisdiction over the Project in the issuance of approvals and permits and the conducting of inspections of the Work, provided that Contractor is diligently pursuing such permits, approvals and inspection and cooperating with applicable governmental authorities with respect thereto, including, but not limited to temporary certificates of occupancy, or any other cause beyond the Contractor's reasonable control, then the date of Completion shall be extended by the period of such delay.

## ARTICLE 3 – CONTRACTOR

The Contractor is an independent contractor of the Owner. The Contractor and Owner do not have a confidential or fiduciary relationship, and none is created by this Agreement or the performance or the Work by the Contractor.

The Contractor warrants to the Owner that the materials and equipment furnished under this Agreement will be of good quality and new, unless the Agreement Documents allow or indicate otherwise, and that the Work will be free from defects not inherent in the quality required or permitted, and that the work will conform to the requirements of the Agreement Documents.

The Contractor represents and warrants to Owner that Contractor is financially solvent. able to pay its debts as they mature and possess sufficient working capital to complete the Project in a timely manner.

The Contractor shall be responsible for and have the right to determine the means, methods, and techniques of the construction of the Project and the performance of the Work. The Project will be constructed, and the Work will be performed on the Property.

The Contractor will allow free access to work areas for workers and vehicles and will allow areas for the storage of materials and debris. Driveways will be kept clear for the movement of vehicles during work hours. The Contractor will make reasonable efforts to protect driveways, lawns, shrubs, and other vegetation. The Contractor also agrees to keep the Worksite clean and orderly and to remove all debris as needed during the hours of work in order to maintain work conditions that do not cause health or safety hazards. The Contractor shall keep the Property and surrounding area free from the accumulation of waste, materials, and rubbish caused or created by the performance of the Work.

The Contractor represents that it has visited and become familiar with the Project site and any special conditions disclosed by a visual inspection of the site. The Contractor further represents that it has reviewed and become familiar with any information provided to it by the Owner

(hereinafter referred to as "Owner Information"), such as plats. surveys. geotechnical reports, etc. The Contractor is entitled to rely upon Owner Information. Work associated with remedying any natural or manmade adverse subsurface conditions is not within the scope of the Work, unless such condition is fully disclosed to Contractor in the Owner Information and the estimated costs associated with such work are identified.

The Contractor reserves the right to make such changes or substitutions in the construction, materials, and equipment, as may be required. provided the changes or substitutions are of equal quality or grade, together with such other reasonable changes as Contractor may deem necessary by reason of unavailability of certain material or equipment or by reason of peculiar engineering and construction requirements or topography of the Property. No such change shall be made without Owner's knowledge and consent, provided that such consent shall not be unreasonably withheld or delayed.

The Contractor assumes no liability whatsoever, including warranty coverage, for any work performed or materials supplied by subcontractors hired directly by the Owner. Any changes or alterations of the plans or specifications or additional work required by any public body, inspector, or private individual or governmental agency shall constitute additional work whose cost will be home by the Owner. Any inspections (including but not limited to; engineering, compaction, soils testing, water testing, environmental, etc.) beyond governmental officials' typical oversight as required by a governing body, not included in Agreement Sum, shall be an additional cost to Owner. During the course of Contractor's work, if any concealed conditions are found that interfere with completion or affect the scope or price of the work, this work or costs will be billed as a change order. Owner's consent is necessary prior to any changes in the plans or specifications in order for Contractor to make changes in the Plans and Selection Sheet for the purposes of mechanical installations, building code and site requirements, and normal architectural design improvements subsequent to the date of this Agreement .

The Contractor shall have the right to stop the Work upon five (5) business days written notice to the Owner if (i) any payment under this Agreement is overdue; (ii) the Contractor and the Owner have a disagreement regarding the Project or the Work, which the Contractor in good faith believes to be irreconcilable, (iii) the Owner interferes with the Contractor's good faith and proper performance of the Work; (iv) the Owner fails to give the Contractor adequate assurances of the Owner's financial ability to pay the Contractor; or (v) the Owner otherwise materially breaches this Contract. In the event the Contractor stops the Work, and the Agreement is not terminated, the Owner shall be responsible for any additional costs incurred by the Contractor as a result of its ceasing and recommencing the Work.

## ARTICLE 4 – OWNER

To the extent necessary for the performance of the Work and the Project, the Owner shall: (i) furnish all surveys and legal descriptions of the Property and the improvements thereon relevant to the Work; (ii) furnish the plans and specifications for the Project; (iii) hire any architects and engineers required to perform necessary architectural and engineering services; (iv) obtain all necessary variances, licenses, special exceptions and/or zoning approvals; (v) provide the Contractor and its subcontractors, suppliers, and vendors access to the Property during normal work hours and cooperate in all respects with the Contractor's coordination of the Work; (vi) make

timely payments as required hereunder; and, (vii) follow any guidelines for safety around the site of the Work, which are adopted by the Contractor and delivered to the Owner or posted at the Property.

In order to allow the Contractor to complete the Work in an orderly and professional manner, the Owner and Owner's agents, contractors, employees, licensees, and invitees, shall not instruct, direct, order or interfere with the Contractor's subcontractors, suppliers, and/or vendors performing any portion of the Work. All communications by the Owner and Owner's agents, contractors, employees, licensees, and invitees, regarding the Work shall be through and with the Contractor.

The Owner warrants and represents that the Owner is the sole owner of the Property. The Owner warrants and represents that the Owner has received any and all approvals from any homeowner's association, architectural committee, developer. etc. necessary and/or required for the Contractor to perform the Work. Owner further warrants and represents that the Owner has delivered all such necessary and required approvals to the Contractor.

The Owner warrants, represents, and agrees that it shall not contract, assign, convey or otherwise transfer the Property upon which the Project is to be constructed, except to the extent necessary to procure construction and permanent financing.

The Owner shall have access to the Property during work hours for the purpose of inspecting the construction of the Project. The Owner, and anyone accompanying Owner, must wear appropriate safety attire when visiting the improvements during the performance of this Agreement . The Contractor shall not be liable for any personal injury, death or damage to the Property suffered by the Owner or Owner's agents, Separate Contractors. invitees or licensees while visiting the Project site during the performance of Work. The Owner shall defend, indemnify, and hold the Contractor harmless from any claims asserted by any non-party to this Agreement arising from or related to injury, death or damage to property occurring during any Project site visits.

## ARTICLE 5 – SUBCONTRACTORS

Any use of first-tier Subcontractors must meet the Owner's approval before commencing any work with the Subcontractor. Owner's approval of first-tier Subcontractors shall not be unreasonably withheld.

## ARTICLE 6 – SEPARATE CONTRACTORS

The Owner may perform construction or operations related to the Work not already provided for in The Scope of Work/Plans and Specifications with separate contractors (hereinafter referred to as "Separate Contractors"). The Contractor will coordinate and sequence the activities of Separate Contractors with the Work of the Contractor.

Any Separate Contractor must execute a Subcontractor Agreement with the Contractor. In the event that a Separate Contractor engages in conduct that, in the Contractor's reasonable opinion, is detrimental to the Contractor's performance of the Work, the Contractor shall notify the

Owner in writing of such conduct and the Owner shall, within five (5) business days, instruct such Separate Contractors to cease the complained conduct. If such conduct does not cease, then the Owner, within five (5) business days after receiving further written notice from the Contractor that such conduct has not ceased, the Owner shall remove such Separate Contractor. The Contractor is not responsible for warrantying any work performed by the Owner's Separate Contractors. The Owner will be responsible if the Owner's Separate Contractor's work is subpar or causes damage or delay to the Contractor or the Contractor's Subcontractor work.

The agreement between Owner and such Separate Contractors shall require such Separate Contractors to maintain insurance as required by the Contractor and to identify the Contractor as an additional insured. The Owner shall not enter into an agreement with any Separate Contractor to which the Contractor, in writing, reasonably objects.

The Contractor will make reasonable revisions to the construction schedule necessary to coordinate the schedule of Separate Contractors, to the extent that such revisions do not interfere with the Contractor's ability to complete the Work in an efficient and timely manner or as required by this Agreement .

Costs caused by delays to the Work or by improperly timed activities or defective construction due to Separate Contractors shall be the responsibility of the Owner. The Owner shall ensure that Separate Contractors that causes any damage or delay to the Work shall promptly remedy or repair that damage. The Owner shall require that Separate Contractors have appropriate licenses to perform their work and adequate liability insurance. The Owner and/or its Separate Contractors shall not alter, modify, damage, or endanger any portion of the Work. The Owner may not unreasonably withhold from the Contractor the Owner's consent to cutting or otherwise altering the work of Separate Contractors necessary to perform the Work.

## ARTICLE 7 – CHANGE ORDERS

Should the Owner at any time after execution of this Agreement request any alteration, addition, or deletion, (a "Change Order"), the Owner may do so without invalidating the Agreement . Said Change Order should include the cost of the change in the Work, including appropriate Contractor's fees, adjustment to the Agreement Time, if any, be agreed to in writing and be signed (by hand or electronic signature) by both parties.

Failure by the Owner to return Change Orders within ten (10) days shall constitute rejection of the work and cost. The Contractor is authorized to make changes that are authorized by the Owner in writing. The Owner shall abide by the ordering and scheduling policies of the Contractor's purchasing/estimating department.

All changes may result in extending the date of Completion. The Contractor shall not be obligated to perform changes to the Work until a Change Order has been executed by the Owner and Contractor. If the Owner enters into an agreement with any subcontractor directly, then the Owner does so at its own risk.

In the event of material shortages or if the Owner's selections are not available, the Owner shall have the right to select other materials or colors, provided said selections are made without

delay. The Owner shall not unreasonably withhold consent for such changes. This provision allows, but does not obligate, the Contractor to deviate from The Scope of Work. Any and all changes to this Agreement shall be recorded as Change Orders.

## ARTICLE 8 – PAYMENT

The Owner agrees to pay the Contractor for the performance of this Agreement , subject to additions and deductions and change orders provided herein, on the following basis:

    a.   10% for work carried out by trades identified/hired by the Contractor

    b.   05% for work carried out by trades identified/hired by the Owner

No more than every thirty (30) days, the Contractor shall submit to the Owner an itemized Application for Payment for operations completed in that month. Such application shall be notarized, if required, and supported by such data substantiating the Contractor's right to payment as the Owner may require, such as copies of requisitions from Subcontractors and material suppliers.

The Owner shall make payment on a Contractor's Application for Payment within twenty (20) days after receipt. Provided, however, if the Owner disputes the Contractor's entitlement to a portion of the amount requested, the Owner shall pay the undisputed portion within such twenty (20) day period and shall provide the Contractor with written notice setting forth the basis for the dispute. The Owner and the Contractor shall use good faith efforts to resolve such dispute. The amount withheld shall be immediately due and payable upon resolution of the dispute. The Owner's payment of an Application for Payment or use of the Project, whether in whole or in part, shall not be deemed to be an acceptance of any Work not conforming to the requirements of this Agreement

The Owner is to fully fund any monies, including Change Orders, owed at the time of Substantial Completion. Final payment, constituting the entire unpaid balance due, shall be made when the Contractor has fully performed this Agreement . The Owner's final payment to the Contractor shall be made no later than thirty (30) days after the issuance of Contractor's final Application for Payment. In accepting final payment, the Contractor waives all claims except those previously made in writing and which remain unsettled. In making final payment, the Owner waives all claims except for outstanding liens, warranty claims made, and terms of any special warranties required by this Agreement .

If any invoice is not paid when due, interest will be added to and payable on all overdue amounts at 5 percent (5%) per year, or the maximum percentage allowed under applicable laws, whichever is less. The Owner shall be responsible for all costs of collection, including without limitation, reasonable attorney fees.

In addition to any other right or remedy provided by law, if the Owner fails to pay for the Work when due, the Contractor has the option to treat such failure to pay as a material breach of this Agreement and may cancel this Agreement and/or seek legal remedies.

## ARTICLE 9 – INSURANCE, INDEMNIFICATION, LIMITATION OF LIABILITY

The risk of loss for the Work shall remain with the Contractor until Substantial Completion of the Project. The Contractor shall maintain adequate insurance to insure against casualty and other risks during the term of this Agreement . The Contractor shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located such insurance as will protect the Contractor from claims set forth below which may arise out of or result from the Contractor's operations under this Agreement and for which the Contractor may be legally liable, whether such operations may be by the Contractor or by a Subcontractor or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable:

a. Claims under workers' compensation, disability benefit and other similar employee benefit acts which are applicable to the Work to be performed;

b. Claims for damages because of bodily injury, occupational sickness or disease, or death of tl1e Contractor's employees;

c. Claims for damages because of bodily injury, sickness or disease, or death of any person other than the Contractor's employees;

d. Claims for damages insured by usual personal injury liability coverage;

e. Claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom;

f. Claims for damages because of bodily injury, death of a person or property damage arising out of ownership, maintenance, or use of a motor vehicle;

g. Claims for bodily injury or property damage arising out of completed operations; and

h. Claims involving contractual liability insurance applicable to the Contractor's obligations under this article.

The Contractor shall maintain, during the term of this Agreement , general liability insurance in an amount not less than $2,000,000 per occurrence, $4,000,000 general aggregate, and an additional $8,000,000 umbrella, and covering the risks required to be covered hereunder. This insurance shall name the Owner as an additional insured. Coverages, whether written on an occurrence or claims-made basis, shall be maintained without interruption from date of commencement of the Work until the later of the termination of this Agreement or the date of final payment and termination of any coverage required to be maintained after final payment.

Certificates of insurance acceptable to the Owner and Lender(s), if applicable, shall be filed with the Owner prior to commencement of the Work. These certificates and the insurance policies required by this article shall contain a provision that coverage afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner. If any of the foregoing insurance coverages are required to remain in force after final payment and are available, an additional certificate evidencing continuation of such coverage shall be submitted with the final Application for Payment. Information concerning reduction of coverage on account of revised limits or claims paid under the General Aggregate, or both, shall be furnished by the Contractor with reasonable promptness in accordance with the Contractor's information and belief.

The Contractor shall also purchase and maintain property insurance upon the entire Project to the full insurable value thereof (including footings and foundations). This insurance shall include the interests of the Owner, the Contractor, and subcontractors in the Work, and shall insure against the perils of fire and extended coverage and shall include "all risk" insurance for physical loss or damage, including, without duplication of coverage, theft, vandalism, and malicious mischief. Said insurance policy shall provide that the coverage provided thereby shall not be canceled, materially modified, or allowed to expire without at least 30 days prior written notice to the Contractor and the Owner and shall name the Owner as an insured. Actual Costs will include an Allowance for the foregoing insurance costs.

**Indemnification.** To the fullest extent permitted by law, the Contractor agrees to indemnify and hold harmless the Owner from any and all loss, cost or damage (including reasonable attorneys' fees) for claims brought by third parties against the Owner for bodily injury or for property damage (other than to the Work itself) arising from the performance of the Work to the proportional extent of the negligence of the Contractor, the Subcontractors or anyone employed directly or indirectly by any of them, or by anyone for whose acts any of them may be liable, which arise prior to the completion of the Project or occupancy by Owner whichever occurs first. The Contractor shall not be required to indemnify or hold harmless the Owner for any loss, cost or damage arising from the negligent acts or omissions of the Owner or such other person, entities, or anyone for whom the Owner is directly or indirectly responsible.

**Waivers of Subrogation.** The Owner and the Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) Architect, Architect's consultants, separate contractors, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance applicable to the Project, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged. A loss insured under the Owner's property insurance shall be adjusted by the Owner as fiduciary and made payable to the Owner as fiduciary for the insureds, as their interests may appear, subject to requirements of any applicable mortgagee clause. The Contractor shall pay Subcontractors their just shares of insurance proceeds received by the Contractor, and by appropriate agreement s, written where legally required for validity, shall require Subcontractors to make payments to their Sub-subcontractors in a comparable manner.

**Limitation of Liability.** As between the Owner and the Contractor, except for any latent defects in the work, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued not later than the date of Substantial Completion or termination of this Agreement , whichever occurs first. The Owner acknowledges that the Contractor is a limited liability company and agrees that any claim made by the Owner arising out of or pertaining to this Agreement shall be made against only Contractor and not against any member, director, officer, or employee of the Contractor or any other company affiliated with the Contractor.

## ARTICLE 10 – TERMINATION & DISPUTE RESOLUTION

The below constitutes an event of default by the Contractor (hereinafter referred to "Contractor Event of Default"). Upon a Contractor Event of Default, the Owner may give the Contractor ten (10) business days written notice of the Contractor Event of Default and the Contractor shall commence curing the default. If the Contractor fails to cure the default, then the Owner may terminate this Agreement . A Contractor Event of Default includes:

a. Persistent or repeated failure of the Contractor to supply enough properly skilled workers or proper materials for the Work:

b. Repeated failure of the Contractor to abide by the laws, ordinances, rules. regulations, or orders of any public authority having jurisdiction:

c. Repeated failure of the Contractor to pay subcontractors from monies it has received from the Owner for subcontractors' work: and

d. Any material breach of the Contract.

The below constitutes an event of default by the Owner ("Owner Event of Default"). Upon an Owner Event of Default, the Contractor may give Contractor ten (10) days written notice of the Owner Event of Default and the Owner shall cure the default. If the Owner fails to cure the default, then the Contractor may terminate this Agreement . A Contractor Event of Default includes:

a. Work is stopped for a period of sixty (60) business days by the Owner, under an Order of any court or public authority having jurisdiction. or as a result of an act of the Government, and such stoppage is not the fault of the Contractor;

b. The Owner fails to make payment due under this Agreement for a period over thirty (30) business days;

c. The Owner fails to make timely material. equipment, finish, or other selections that cause a material delay to the progress of the Work and the Project;

d. The Owner fails to provide adequate assurances and documentation required;

e. Any material breach of the Agreement by the Owner.

In the event or a termination of this Agreement by either party under this Article, the Parties shall have the rights and recourse provided for under this Agreement and at law, except to the extent that such rights and recourse are specifically limited or waived hereunder.

**Dispute Resolution.** Any dispute regarding the interpretation of or performance under this Agreement shall be submitted to mediation in Maryland, pursuant to the construction rules of the Judicial Arbitration Mediation Services (JAMS). If the parties cannot resolve their dispute, then the remaining disputed issues may be resolved through litigation. The legal fees and costs incurred by the prevailing party shall be assessed as part of the damages award in favor of the prevailing party and against the losing party

## ARTICLE 11 – REMEDIES

In addition to any and all other rights a party may have available according to the laws of Maryland, if a party defaults by failing to substantially perform any provision, term or condition of this Agreement (including without limitation the failure to make a monetary payment when

due), the other party may terminate the Agreement by providing written notice to the defaulting party. This notice shall describe in sufficient detail the nature of the default. The party receiving the said notice shall have thirty (30) business days from the date of said notice to cure the default(s) or begin substantial completion if completion cannot be made in thirty (30) business days. Unless waived by a party providing notice, the failure to cure or begin curing, the default(s) within such time period shall result in the automatic termination of this Contract.

## ARTICLE 12 – FORCE MAJEURE

If performance of this Agreement or any obligation thereunder is prevented, restricted, or interfered with by causes beyond either party's reasonable control ("Force Majeure"), and if the party unable to carry out its obligations gives the other party prompt written notice of such event, then the obligations of the party invoking this provision shall be suspended to the extent necessary by such event.

The term Force Majeure shall include, but not be limited to, acts of God, plague, epidemics, pandemic, outbreaks of infectious disease, or any other public health crisis, including quarantine or other employee restrictions, fire, explosion, vandalism, storm, casualty, illness, injury, general unavailability of materials or other similar occurrence, orders or acts of military or civil authority, national emergencies, insurrections, riots, wars, strikes, lock-outs, work stoppages, other labor disputes, or supplier failures.

The excused party shall use reasonable efforts under the circumstances to avoid or remove such causes of non-performance and shall proceed to perform with reasonable dispatch whenever such causes are removed or ceased. An act or omission shall be deemed within the reasonable control of a party if committed, omitted, or caused by such party, or its employees, officers, agents, or affiliates.

## ARTICLE 13 – DISPUTE RESOLUTION

The parties will attempt to resolve any dispute arising out of or relating to this Agreement through friendly negotiations among the parties. If the matter is not resolved by negotiation, the parties will resolve the dispute using the Alternative Dispute Resolution (ADR) procedure below.

Any controversies or disputes arising out of or relating to this Agreement will be submitted to mediation in accordance with any statutory rules of mediation. If mediation is not successful in resolving the entire dispute or is unavailable, any outstanding issues will be submitted to final and binding arbitration under the rules of the American Arbitration Association. The arbitrator's award will be final, and judgment may be entered upon it by any court having proper jurisdiction.

## ARTICLE 14 – SEVERABILITY

If any provision of this Agreement will be held to be invalid or unenforceable for any reason, the remaining provisions will continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable but that by limiting such provision, it will

become valid and enforceable, then such provision will be deemed to be written, construed, and enforced as so limited.

**Consequential Damages.** Except as otherwise provided for in this Agreement , each of the Owner and the Contractor hereby waives any and all claims against the other party, for damages arising from any breach of this Agreement to the extent such claims are for incidental, consequential, special, indirect, exemplary or punitive damages or loss of profits or cost of capital, related to this Agreement . The foregoing waiver shall apply irrespective of whether the Owner or the Contractor asserts a theory of liability in contract, tort or otherwise. This is a mutual waiver and is applicable to all such consequential damages not expressly provided.

## ARTICLE 15 – PERMITS

The Owner  shall obtain all necessary building permits. The Contractor shall apply for and obtain any other necessary permits and licenses required by the local municipal/county government to do the Work; the cost thereof shall be included as part of the Payment to The Contractor under this Contract.

## ARTICLE 16 – WORK PRODUCT OWNERSHIP

Any copyrightable works, ideas, discoveries, inventions, patents, products, or other information (collectively, "Work Product") developed in whole or in part by The Contractor in connection with the Services will be the exclusive property of the Owner . Upon request, The Contractor will execute all documents necessary to confirm or perfect the exclusive ownership of The Owner  to the Work Product.

## ARTICLE 17 – CONFIDENTIALITY

The Parties will not disclose or publicize in any way the terms of this Agreement to any person or entity, except as necessary to enforce the terms of the Agreement , or as may be required by law, by the order of a court of competent jurisdiction, and as may be appropriate to accountants, auditors, attorneys, reinsurers, lenders or regulators.

The Contractor and its employees, agents, or representatives will not at any time or in any manner, either directly or indirectly, use for the personal benefit of the Contractor or divulge, disclose, or communicate in any manner, any information that is proprietary to the Owner. The Contractor and its employees, agents, and representatives will protect such information and treat it as strictly confidential. This provision will continue to be effective after the termination of this Agreement for up to five (5) years.

Upon termination of this Contract, the Contractor will return to the Owner all records, notes, documentation, and other items that were used, created, or controlled by the Contractor during the term of this Contract.

## ARTICLE 18 – AMENDMENT

This Agreement may be modified if the amendment is in writing and signed by each party.

## ARTICLE 19 – GOVERNING LAW

This Agreement shall be interpreted in accordance with the laws of the State of Maryland. If any provision of this Agreement is invalidated in whole or in part, the remainder of this Agreement shall not be affected thereby but shall remain in effect to the extent permitted by law. This Agreement shall be binding upon and shall inure to the benefit of both parties and their respective heirs, personal representatives, executors, successors, and assigns.

## ARTICLE 20 – DISCLOSURES

The Contractor shall construct the project and perform the work in a good and skillful manner, according to industry and sound engineering standards and in accordance with all applicable laws, rules, regulations, ordinances, and codes in effect at the time of the construction of the Project and performance of the Work. The Contractor shall comply with the standards and guidelines for home construction which are adopted at the time of the execution of the agreement by the National Association of Home Contractors (NAHB) in its publication, "Residential Construction Performance Guidelines." These performance standards and guidelines will prevail in any litigation or administrative proceeding arising out of or related to this contract.

Contractors of new homes in the State of Maryland are required to be registered with the Consumer Protection Division of the Office of the Attorney General. The Contractor is registered with the Maryland Home Contractor Registration Unit of The Consumer Protection Division of the Office of the Attorney General. The Contractor's registration number is [132021].

The Contractor advises and the Owner acknowledges the Owner's right to receive a consumer information pamphlet prepared by the Consumer Protection Division of the Office of the Attorney General prior to the execution of this contract.

## ARTICLE 21 – NOTICES

All notices required shall be in writing and shall be served on the parties at the addresses following their signatures. A courtesy copy of all notices shall be sent to the Owner's attorney by facsimile transmission or e-mail at the attorney's fax number or e-mail address to be provided to the Contractor by the Owner's attorney. The mailing of a notice by certified mail, return receipt requested to the parties at the address provided in the Agreement Documents, or by email to the address provided, or by facsimile to the facsimile number so provided shall be sufficient service, and shall be effective as of the date of mailing or, in the case of facsimile notice, as of the date and time which appears on the transmittal receipt generated by the sending facsimile machine.

## ARTICLE 22 – WAIVER OF CONTRACTUAL RIGHT

The failure of either party to enforce any provision of this Agreement shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Contract.

IN WITNESS WHEREOF, each of the parties hereto has signed this Agreement or has caused this Agreement to be duly executed and delivered by one of its duly authorized representatives all as of the date first above written.

**CONTRACTOR:**

**Makeover Construction LLC**
11620 Reisterstown Road, Suite 440
Reisterstown, MD 21136-3702

By:

Printed Name: [Julio Cabrera]
Title: President
Dated: 02/02/2024

**OWNER:**

**CTLC LLC**
6101 Tilghman Drive
Laurel, MD 20707

By:

Printed Name: Sandra Grier
Title: Managing Member, President
Dated: 02/02/2024

## EXHIBIT A: STATEMENT OF WORK

The Contractor r will provide all services, materials, and labor for the construction – build, repair, and improve – of the Property. The Owner may have seen or been shown various blueprints, sketches of floor plans, specification lists, brochures, exterior and interior designs, finishes, model dwellings and other dwellings. The Owner and the Contractor expressly acknowledge that the Project shall be constructed in accordance with Agreement Documents, except to the extent otherwise provided in the Agreement. In the event the Agreement Documents includes both Specifications and Plans, the Specifications shall take priority over the Plans in the event of any conflict. The scope and costs associated with any conflicts – and related changes – will be included in a Change Order at a later date. This includes building and construction materials, necessary labor and site security, and all required tools and machinery needed for the completion of the Project.

The Contractor will secure all permits and/or licenses for construction and will arrange for all appropriate inspections. The cost of permits and fees related to the performance of this Agreement will be a separate charge to the Owner. The Owner shall also pay for any Certificate of Occupancy requirements that are outside the scope of this Agreement by separate Change Order.

The Contractor agrees that the Project shall be completed in compliance with all building line requirements, covenants, zoning ordinances, and written building code requirements of any governmental authority having jurisdiction over the Project.

**Materials and Labor.** Except as otherwise noted, the Contractor shall provide and pay for all materials, labor, tools, equipment, light, power, and other items necessary to complete the Project. Unless otherwise specified, all materials shall be new and of excellent quality. In the event it becomes necessary at any time due to conditions beyond the control of the Contractor to substitute any materials set forth in the Architectural Plans or Specifications, the Contractor shall, upon prior notification to the Owner, and after reasonable efforts to obtain Owner's consent to any proposed substitution, have the right to substitute such material provided the substituted material is of equal or better quality to that set forth in the Specifications, which are a part of this Agreement.

All materials and supplies furnished by the Contractor and not incorporated into the Work hereunder, although in the Owner's custody at the worksite are and remain the property of the Contractor. The Contractor has the continuing permission of the owner to remove it. In no event will such a removal result in adjustment of the contract price. All materials not specified shall be selected by the Contractor from standard materials. Deviation from standard selections and installation is not included herein and will create an additional charge.

Handling of regulated or hazardous building materials (i.e., asbestos, lead-based paint, etc.) is not included in this Agreement. The Contractor shall supervise and direct the Work, using its best skill and attention, and shall be solely responsible for all construction means, methods, techniques, sequences, and procedures, and for coordinating all portions of the Work under the Agreement. All workmanship shall conform to the guidelines found in the book Residential Construction Performance Guidelines for Professional Builders & Remodelers, current edition, published by the National Association of Home Builders. If an item is not covered in that publication, local standard industry practice shall govern.

While a reasonable effort will be made to match existing materials, textures, colors, and planes, due to the many variables associated with building with custom materials on site, exact duplication is not assured, nor should it be expected.

The Contractor shall provide a list of each of Subcontractor and/or labor to the Owner as part of the Project, and the dollar amounts due or expected to be due with regards to provision of the Services herein described.

**Utilities.** The Owner shall provide and maintain water and electrical service, connect permanent electrical service, gas service, or oil service, whichever is applicable, and tanks and lines to the building constructed under this Agreement after an acceptable cover inspection has been completed, and prior to the installation of any inside wall cover. The Owner shall, at its expense, connect sewage disposal and water lines to said building prior to the start of construction, and at all times maintain sewage disposal and water lines during construction as applicable. The Owner shall permit the Contractor to use, at no cost, any electrical power and water necessary to carry out and complete the work.

**Inspection.** The Owner shall have the right to inspect all work performed under this Contract. All defects and uncompleted items shall be reported immediately. All work that needs to be inspected or tested and certified by an engineer as a condition of any government department or other state agency, or inspected and certified by the local health officer, shall be done at each necessary stage of construction and before further construction can continue. All inspection and certification will be done at The Owner 's expense.

**Warranty.** The Contractor shall provide its services and meet its obligations under this Agreement in a timely and workmanlike manner, using knowledge and recommendations for performing the Services which meet generally acceptable standards in the Contractor's community and region and will provide a standard of care equal to, or superior to, care used by service providers similar to The Contractor on similar projects. The Contractor shall construct the structure in conformance with the plans, specifications, and any breakdown and binder receipt signed by The Contractor and The Owner .

# EXHIBIT 2

# CTLC Overlook (Lot 6) Project Plan

| Phase | Task/Item Description | Start Date | Duration (Days) | Finish Date (Estimated) | Vendor \| Trade Name | % Complete | Cost \| Budget (Estimated) | Cost \| Budget (Actual) |
|---|---|---|---|---|---|---|---|---|
| Pre-Repair | Project Assessment | 08/01/2023 | 90 | 10/30/2023 | Makeover Construction | 100% | $ - | $ - |
| Pre-Repair | Site Review | 09/01/2023 | 90 | 11/30/2023 | Makeover Construction | 100% | $ - | $ - |
| Pre-Repair | Site Security (Shore Up) | 09/01/2023 | 90 | 11/30/2023 | Makeover Construction | 100% | $ - | $ - |
| Pre-Repair | Site Cleanup | 12/01/2023 | 120 | 03/30/2024 | Makeover Construction | 100% | $ - | $ - |
| Pre-Repair | Site Inventory | 12/01/2023 | 120 | 03/30/2024 | Makeover Construction | 100% | $ - | $ - |
| Pre-Repair | Planning - Warranty Research | 01/01/2024 | 90 | 03/31/2024 | Makeover Construction | 100% | $ - | $ - |
| Pre-Repair | Planning - Trade Research | 01/01/2024 | 90 | 03/31/2024 | Makeover Construction | 100% | $ - | $ - |
| **PRE-REPAIR PHASE** | | **08/01/2023** | **243** | **03/31/2024** | | **Subtotal Costs:** | **$ -** | **$ -** |
| Repair | Water Damage - Roof | 02/01/2024 | 90 | 05/01/2024 | Makeover Construction | 25% | $ 20,000.00 | $ - |
| Repair | Water Damage - Foundation | 02/01/2024 | 90 | 05/01/2024 | Modern Foundation | 25% | $ 20,000.00 | $ - |
| Repair | Water Damage - Frame | 02/01/2024 | 90 | 05/01/2024 | Makeover Construction | 25% | $ 15,000.00 | $ - |
| Repair | Water Damage - Mold Mediation | 02/01/2024 | 90 | 05/01/2024 | MD Mold & Waterproofing | 0% | $ 10,000.00 | $ |
| Repair | Electrical - Design Repair | 02/01/2024 | 90 | 05/01/2024 | INJ/HS Technology | 50% | $ - | $ - |
| Repair | Electrical - Rough In Missing | 02/01/2024 | 90 | 05/01/2024 | INJ/HS Technology | 25% | $ 25,000.00 | $ - |
| Repair | Electrical - Code Repair | 02/01/2024 | 90 | 05/01/2024 | INJ/HS Technology | 25% | $ 20,000.00 | $ - |
| Repair | Electrical - Builders Account | 02/01/2024 | 90 | 05/01/2024 | Makeover Construction | 100% | $ - | $ - |
| Repair | HVAC Install Repair | 02/01/2024 | 90 | 05/01/2024 | Sila | 25% | $ 25,000.00 | $ - |
| Repair | GeoThermal Install Repair | 02/01/2024 | 90 | 05/01/2024 | Sila | 25% | $ 25,000.00 | $ - |
| Repair | Masonry (waterproofing and install) | 02/01/2024 | 90 | 05/01/2024 | Makeover Construction | 25% | $ 50,000.00 | $ - |
| Repair | Plumbing - Design Repair | 02/01/2024 | 90 | 05/01/2024 | Mahon Plumbing | 0% | $ - | $ - |
| Repair | Plumbing - Rough In Missing | 02/01/2024 | 90 | 05/01/2024 | Mahon Plumbing | 0% | $ 25,000.00 | $ - |
| Repair | Plumbing - Code Repair | 02/01/2024 | 90 | 05/01/2024 | Mahon Plumbing | 0% | $ 20,000.00 | $ - |
| Repair | Windows - Installation Issues | 02/01/2024 | 90 | 05/01/2024 | Makeover Construction | 25% | $ 10,000.00 | $ - |
| Repair | Windows - Broken | 02/01/2024 | 90 | 05/01/2024 | Makeover Construction | 25% | $ - | $ - |
| Repair | Landscaping - Rough | 02/01/2024 | 90 | 05/01/2024 | Makeover Construction | 50% | $ 5,000.00 | $ - |
| Repair | Permitting | 02/01/2024 | 90 | 05/01/2024 | Makeover Construction | 25% | $ - | $ - |
| **REPAIR PHASE** | | **02/01/2024** | **90** | **05/01/2024** | | **Subtotal Costs:** | **$ 275,000.00** | **$ -** |
| Improve | **Interior** | | | | | | | |
| Improve | Install/Finish GeoThermal | 05/01/2024 | 60 | 06/30/2024 | Sila | 0% | $ 25,000.00 | $ - |
| Improve | Install/Finish HVAC | 05/01/2024 | 60 | 06/30/2024 | Sila | 0% | $ 25,000.00 | $ - |
| Improve | Install/Finish Plumbing & Gas | 05/01/2024 | 60 | 06/30/2024 | Mahon Plumbing | 0% | $ 25,000.00 | $ - |
| Improve | Install/Finish Electrical | 05/01/2024 | 30 | 05/31/2024 | INJ/HS Technology | 0% | $ 50,000.00 | $ - |
| Improve | Install/Finish AV | 05/01/2024 | 30 | 05/31/2024 | INJ/HS Technology | 0% | $ 50,000.00 | $ - |
| Improve | Install/Finish Windows | 05/01/2024 | 30 | 05/31/2024 | Makeover Construction | 0% | $ 25,000.00 | $ - |
| Improve | Install/Finish Sprinkler Systems | 06/01/2024 | 30 | 07/01/2024 | Metropolitan Fire | 0% | $ 50,000.00 | $ - |

## CTLC Overlook (Lot 6) Project Plan

| Phase | Task/Item Description | Start Date | Duration (Days) | Finish Date (Estimated) | Vendor \| Trade Name | % Complete | Cost \| Budget (Estimated) | Cost \| Budget (Actual) |
|---|---|---|---|---|---|---|---|---|
| Improve | Install/Finish Framing and Carpentry | 06/15/2024 | 15 | 06/30/2024 | Makeover Construction | 0% | $ 25,000.00 | $ - |
| Improve | Install/Finish Insulation | 06/15/2024 | 15 | 06/30/2024 | Makeover Construction | 0% | $ 125,000.00 | $ - |
| Improve | Install/Finish Drywall | 06/15/2024 | 45 | 07/30/2024 | Makeover Construction | 0% | $ 125,000.00 | $ - |
| | | | | | subtotal - Interior: | | $ 525,000.00 | $ - |
| | | | | | | | | |
| | **Exterior** | | | | | | | |
| Improve | Install/Finish Stucco | 05/01/2024 | 90 | 07/30/2024 | Makeover Construction | 0% | $ 50,000.00 | $ - |
| Improve | Install/Finish Masonry | 05/01/2024 | 90 | 07/30/2024 | Makeover Construction | 0% | $ 220,000.00 | $ - |
| Improve | Install/Finish Roofing | 05/01/2024 | 30 | 05/31/2024 | Makeover Construction | 0% | $ 25,000.00 | $ - |
| Improve | Install/Finish Gutters | 06/01/2024 | 30 | 07/01/2024 | Makeover Construction | 0% | $ 25,000.00 | $ - |
| Improve | Install/Finish Chimneys | 07/01/2024 | 30 | 07/31/2024 | Makeover Construction | 0% | $ 20,000.00 | $ - |
| Improve | Landscaping - Fine | 05/01/2024 | 60 | 06/30/2024 | AE Landscaping | 0% | $ 50,000.00 | $ - |
| Improve | Site Cleanup (curb appeal) | 07/15/2024 | 15 | 07/30/2024 | AE Landscaping | 0% | $ 10,000.00 | |
| | | | | | subtotal - exterior: | | $ 400,000.00 | $ - |
| | | | | | | | | |
| | **IMPROVE PHASE** | **05/01/2024** | **60** | **06/30/2024** | | **Subtotal Costs:** | **$ 925,000.00** | **$ -** |

**Footnotes:**
1. Project is hindered without materals already paid for but not delivered by J. Paul Builders
2. Project is hindered without plans already paid for but not delivered by J. Paul Builders
3. Original architect is are onboard to finish project but need plans from trades that were not provided by J. Paul Builders
4. Above prices are estimates subject to change based on trades. MC is reviewing not less than three (3) trade quotes
5. Several original trades are not available to continue or complete their work
6. A significant portion of the repair work and material is being covered by manufacturer warranties
7. Sales and marketing can commence near drywall phase albeit house has been secured and cleaned for pre-marketing efforts
8. MC contract needs approval

# EXHIBIT 3

