# EXHIBIT 3

Case 1:23-cv-00828-JRR  Document 10-2  Filed 04/18/23  Page 2 of 97



# CUSTOM HOME CONSTRUCTION CONTRACT (COST PLUS FEE)

THIS CONTRACT (the "Contract") is entered into this **13th** day of January, 2020.

BETWEEN **Buyer**:

Name(s): CTLC, Inc.

Address: 8115 Maple Lawn Blvd. Suite 350

Fulton, MD 20759

and **Builder**:

J. Paul Builders, L.L.C.
**Maryland Home Builder Registration No. 1757**
1 Reservoir Circle, Suite 100
Pikesville, MD 21208
Telephone:  (410) 602-8070
Facsimile:  (410) 602-8069
Email:  paul@jpaulbuilders.com
 steven@jpaulbuilders.com

Mailing Address:
J. Paul Builders, LLC
PO Box 169
Stevenson, Maryland 21153

for the construction of **the Project**:

The Project generally consists of the construction of a single family dwelling on certain real property commonly referred to as: 15195 Devlin Drive, Glenelg, Maryland 21737 (the "Property"), in accordance with the terms of this Contract and the Contract Documents identified herein.

Buyer and Builder hereby agree as follows:

Buyer's Initials
Builder's Initial

Page 1

## TABLE OF ARTICLES

1. The Work
2. Changes
3. Contract Time
4. Contract Sum
5. Payments
6. Builder
7. Buyer
8. Legal Disclosures
9. Insurance
10. Termination
11. Dispute Resolution
12. General Provisions

Buyer's Initials
Builder's Initials

## ARTICLE 1 – THE WORK

§ 1.1 The contract documents (the "Contract Documents") consist of this Contract, the following Exhibits and the documents identified therein:

| Exhibit A | The Scope of Work/Plans and Specifications |
|---|---|
| Exhibit B | Exclusions |
| Exhibit C | Form Change Order |
| Exhibit D | Preliminary Budget |
| Exhibit E | Costs to be Reimbursed |
| Exhibit F | Draw Schedule |
| Exhibit G | Buyer's Risk Under Mechanic's Lien Laws |
| Exhibit H | Escrow Requirement |
| Exhibit I | List of Subcontractors |
| Exhibit J | Certification by Builder |
| Exhibit K | Disclosure and Acknowledgement that Builder Does Not Participate in a New Home Warranty Security Plan |
| Exhibit L | Buyer Information |
| Exhibit M | Schedule |
| Exhibit N | Notice of Cancellation |

§ 1.2 The Builder shall execute the work described in the Contract Documents and **Exhibit A** (the "Work"), except to the extent that any item of the Work is excluded under **Exhibit B**.

§ 1.3 In the process of negotiating the Contract Documents, Buyer may have seen or been shown various blueprints, sketches of floor plans, specification lists, brochures, exterior and interior designs, finishes, model dwellings and other dwellings. Buyer was given the opportunity to customize their dwelling to their particular needs, to alter the size and layout of the dwelling, to shift partitions and room sizes, to arrange exterior and interior designs, to inspect and revise The Scope of Work/Plans and Specifications, Exhibit A, and to make other changes and/or modifications. Buyer and Builder expressly acknowledge that the Project shall be constructed in accordance with Exhibit A, except to the extent otherwise provided in the Contract Documents. In the event Exhibit A includes both Specifications and Plans, the Specifications shall take priority over the Plans in the event of any conflict.

## ARTICLE 2 – CHANGES

§ 2.1 Any changes to the Contract shall be recorded as "Change Orders" that specify the change in the Work ordered and the effect of the change on the Builder's Fee and the Contract Time, if any. All Change Orders must be written and signed by Buyer and Builder. Unless mutually agreed by

Buyer's Initials
Builder's Initials

Builder and Buyer. Change Orders will be executed on a form substantially similar to **Exhibit C**.

§ 2.2 Payment for Change Orders shall be made with monthly progress payment invoices or draw requests.

§ 2.3 Builder shall notify Buyer of any unforeseen or unanticipated work, or any additional work outside the scope of the Work, which is necessary to complete the Project within a reasonable amount of time after Builder discovers or otherwise becomes aware of the necessity of such work. Builder shall provide Buyer with an estimate of the anticipated effect of the work on the Preliminary Budget, **Exhibit D, and Contract Time**.

## ARTICLE 3 – THE CONTRACT TIME

§ 3.1 The Builder shall achieve Substantial Completion of the Work within two (2) calendar years of the date upon which the Builder commences excavation of the foundation of the Project (the "Contract Time"). Substantial Completion shall mean the date upon which a use and occupancy permit is issued for the Project.

§ 3.2 Time is of the essence of this Contract. A preliminary schedule (the "Schedule") with milestones for the performance of the Work is attached hereto as **Exhibit M**. Buyer acknowledges that in order for Builder to complete the Work within the Contract Time, Buyer must make timely material and equipment selections and other decisions so as to allow Builder to achieve the milestones and otherwise adhere to the Schedule.

§ 3.3 If the Builder is delayed at any time in the commencement or progress of the Work by: changes to the Work; Buyer's failure to timely make material, equipment or other necessary selections or decisions; Buyer's failure to make timely payments under this Contract; other contractors directly retained by Buyer; acts or omissions of governmental authorities or homeowners associations; labor disputes, fire, unusual delay in deliveries, abnormal adverse weather conditions, unavoidable casualties; and/or, any causes beyond the Builder's control, the Contract Time shall be equitably adjusted and extended. If the delay is the fault or responsibility of Buyer, the Builder's Fee shall also be equitably adjusted and Buyer shall be responsible for any additional costs incurred by Builder as a result of such delay.

§ 3.4 Unless otherwise stated, the word days shall refer to calendar days.

## ARTICLE 4 – THE CONTRACT SUM

§ 4.1 In consideration of Builder constructing the Project in accordance with the Contract Documents, Buyer shall compensate Builder the costs of the Work (the "Costs of the Work") and the fee identified in Section 4.2. The Costs of the Work shall mean costs necessarily incurred by the Builder in the proper performance of the Work and shall include those costs identified in **Exhibit E** and any other costs approved by Buyer.

§ 4.2 Builder's fee (the "Builder's Fee") shall be: _____cost plus 12 percent_____. If the Builder's Fee is a lump sum amount and Change Orders are issued that increase the scope of Work or add additional work to this Contract, the Builder's Fee shall be equitably adjusted.

Buyer's Initials _____
Builder's Initial _____

§ 4.3 Builder shall maintain reasonable records and evidence of the Costs of the Work. Buyer may review the records at Builder's principal office upon five (5) business days' written notice. Builder shall maintain the records and evidence for a period of nine (9) months after Buyer makes its final payment to Builder under this Contract.

§ 4.4 The Preliminary Budget, Exhibit D, is a good faith estimate of the anticipated Cost of the Work; however, the actual costs incurred by Builder may vary from the Preliminary Budget and Buyer acknowledges and agrees that Builder shall be compensated in accordance with Sections 4.1 and 4.2 and Builder's compensation shall not be limited by the Preliminary Budget.

## ARTICLE 5 – PAYMENTS

§ 5.1 The Contract Sum shall be paid to Builder by Buyer by:
   .1   an earnest money deposit in the amount of $___n/a___;
   .2   monthly progress payments;
   .3   final payment; and
   .4   Punchlist Retention (if any).

All payments under this Contract shall be made payable to J. Paul Builders, L.L.C. and no other individual or entity.

§ 5.2 Builder shall submit to Buyer monthly progress payment invoices. The invoices shall include the Costs of the Work incurred by Builder to the date of the invoice for completed Work, materials and equipment delivered and stored at the Property for subsequently incorporation into the Project, and the applicable portion of the Builder's Fee. If approved in advance by the Buyer in writing, a monthly progress payment invoice may include the costs of materials and equipment stored at a location other than the Property. If the Builder's Fee is a lump sum amount, the portion of the Builder's Fee to be billed in a monthly progress payment invoice will be calculated based upon the percentage of the Builder's Fee equal to the percentage of the total estimated Cost of the Work in the Preliminary Budget, Exhibit D, invoiced for during the monthly period (e.g. if 20% of the estimated Cost of the Work is invoiced for during a monthly period, Builder shall invoice 20% of its lump sum fee in that monthly period).

§ 5.3 Except as provided in Section 5.5, Buyer shall pay Builder within five (5) business days of the date Builder submits its monthly progress payment invoice to Buyer or requests a draw under any draw schedule. Payments due but unpaid to Builder shall bear interest at the legal post-judgment rate of ten percent (10%) per annum.

§ 5.4 Within thirty (30) days after each progress payment, Builder shall provide Buyer with a list of subcontractors, suppliers and materialmen who have provided more than $500 of goods or services to date and indicate which of them have been paid by the Builder. Builder shall provide a waiver of mechanic's lien for payments received during the progress of the Project if required and requested by Buyer's lender, if any. Within sixty days (60) days after final payment to any subcontractor, supplier or materialman that has been identified as a result of the language of this provision, such amount of time being deemed by the parties to be a reasonable amount of time, Builder shall provide Buyer with waivers of liens from such subcontractors, suppliers and materialmen.

Page 5

Buyer's Initials
Builder's Initial

§ 5.5 In the event Buyer disputes any invoice or draw request submitted by Builder, Buyer shall provide Builder with written notice of the dispute within three (3) days of Buyer's receipt of such monthly progress payment invoice or draw request. Buyer shall timely pay Builder all amounts contained in Builder's monthly progress payment invoice or draw request that do not relate to the dispute set forth in Buyer's written notice and Buyer shall not withhold amounts unrelated to the dispute from Builder.

§ 5.6 In the event Builder and Buyer are unable to resolve any disagreement regarding a Buyer written notice of dispute under Section 5.5, Buyer may withhold no more than an amount equal to 1.5 times the value of the disputed Work as determined by Builder.

§ 5.7 The withholding procedure provided for in Section 5.6 is without prejudice to and does not waive any rights Builder has under this Contract, including, but not limited to, its right to interest on the withheld amounts, to stop work and to terminate this Contract if the Buyer's withholding is determined to be improper. The propriety of any withholding under this Section, if not resolved by the parties, shall be determined in accordance with Article 11.

§ 5.8 Final payment (less any Punchlist Retention) shall be made to Builder by Buyer upon issuance of a use and occupancy permit, final inspection of the Work by Builder and Buyer and deliver to Buyer by Builder of any applicable equipment warranties and manuals and any documents reasonably required by any lender of Buyer. Builder shall notify Buyer of the date of final inspection.

§ 5.9 During the final inspection, Buyer and Builder shall mutually agree upon and identify any items of Work that need to be completed, altered or remedied (the "Punchlist") under the Contract Documents and the value of such items (the "Punchlist Retention"). Buyer's final payment to Contract shall be reduced by the amount of the Punchlist Retention. Buyer shall sign the Punchlist at the conclusion of the final inspection. Buyer and Builder shall agree upon a reasonable amount of time within which Builder shall complete the items noted on the Punchlist. When such items have been completed by Builder, Builder shall deliver a final mechanic's lien release (contingent upon receiving the Punchlist Retention") to Buyer and Buyer shall pay Builder the Punchlist Retention. If no Punchlist work is identified during the final inspection, no Punchlist Retention shall be withheld from the final payment and Builder shall deliver its final mechanic's lien release (contingent upon receiving final payment) to Buyer promptly after the final inspection.

§ 5.10 Title to the Work, including all materials and equipment, shall pass to Buyer upon Builder's receipt of payment pursuant to Sections 5.8 and 5.9. During the performance of the Work, Buyer shall bear the risk of loss associated with the Work, including any materials and equipment stored offsite.

## ARTICLE 6 – BUILDER

§ 6.1 Builder warrants to Buyer that the materials and equipment furnished under this Contract will be of good quality and new, unless the Contract Documents allow or indicate otherwise, and that the Work will be free from defects not inherent in the quality required or permitted, and that the Work will conform to the requirements of the Contract Documents.

Page 6

Buyer's Initials
Builder's Initial

§ 6.2 Builder represents and warrants to Buyer that Builder is financially solvent, able to pay its debts as they mature, and possesses sufficient working capital to complete timely the Work.

§ 6.3 Builder, not Buyer, shall be responsible for and have the right to determine the means, methods and techniques of the construction of the Project and the performance of the Work. The Project will be constructed and the Work will be performed on the Property.

§ 6.4 Builder shall keep the Property and surrounding area free from the accumulation of waste, materials and rubbish caused or created by the performance of the Work.

§ 6.5 Builder represents that it has visited and become generally familiar with the Project site and any special conditions disclosed by a visual inspection of the site. Builder further represents that it has reviewed and become familiar with any information provided to it by the Buyer ("Buyer Information"), such as plats, surveys, geotechnical reports, etc., and attached hereto as **Exhibit L** – Buyer Information. Builder is entitled to rely upon Buyer Information. Work associated with remedying any natural or manmade adverse subsurface conditions is not within the scope of the Work, unless such condition is fully disclosed to Builder in the Buyer Information and the estimated costs associated with such work are identified in the Preliminary Budget.

§ 6.6 Builder reserves the right to make such changes or substitutions in the construction, materials, and equipment, as may be required, provided the changes or substitutions are of equal quality or grade, together with such other reasonable changes as Builder may deem necessary by reason of unavailability of certain material or equipment or by reason of peculiar engineering and construction requirements or topography of the Property. No such change shall be made without Buyer's knowledge and consent, provided that such consent shall not be unreasonably withheld or delayed. In the event of material shortages or if Buyer's selections are not available, Buyer shall have the right to select other materials or colors, provided said selections are made without delay. It is further agreed that the location of the driveway, walkways, patio, grading, planting and landscaping, including the disposition of existing trees and the control of water flow and other site details are subject to change upon written agreement of Buyer and Builder depending upon site or job conditions encountered. Buyer shall not unreasonably withhold consent for such changes. This provision allows, but does not obligate, Builder to deviate from The Scope of Work/The Plans and Specifications, Exhibit A. Any and all changes to this Contract shall be recorded as Change Orders under Section 2.1.

§ 6.7 Within one (1) year of the date Buyer is entitled to occupy the Property in accordance with the terms of this Contract, Buyer shall give Builder (or its appropriate subcontractor or supplier) timely written notice of any items of Work that Buyer asserts require changes, repairs, adjustments and/or service. Builder (or its appropriate subcontractor or supplier) shall make reasonable and necessary changes, repairs and/or adjustments to the Work upon timely written request from Buyer and to the extent that such Work is not in conformance with the terms of this Contract and/or is under warranty provided by law. The Builder's (or its appropriate subcontractor's or supplier's) obligations under this Section exclude remedy for damage or defect caused by abuse, alterations to the Work not executed by the Builder (or its subcontractors or suppliers), improper or insufficient maintenance, improper operation or normal wear and tear under normal usage. Upon receipt of written notice from Buyer under this Section and determination by Builder (or its appropriate subcontractor or supplier) that an obligation to correct, repair and/or adjust any of the Work exists, Builder (or its appropriate subcontractor or supplier) shall make such corrections, repairs and/or adjustments in a good and workmanlike manner and in a reasonably timely manner. In all events, Builder (or its appropriate

Buyer's Initials ____

Builder's Initials ____

Page 7

subcontractor or supplier) shall endeavor to make any changes, repairs and/or adjustments to the Work within thirty (30) days of receipt of Buyer's written notice. Changes, repairs and/or adjustments for items such as plumbing, electrical, HVAC and appliances shall be made by the subcontractor or supplier that installed the particular Work. Upon occupancy Builder shall provide Buyer with a list of such subcontractors or suppliers and their contact information and Buyer shall contact such subcontractors or suppliers directly to arrange for service. In the event any subcontractor or supplier fails to provide any changes, repairs and/or adjustments to any Work requested by Buyer in accordance with this Section, Buyer shall promptly notify Builder in writing and Builder shall undertake to have such Work changed, repaired and/or remedied if required by this Section.

§ 6.8 Builder is an independent contractor of Buyer. Builder and Buyer do not have a confidential or fiduciary relationship and none is created by this Contract or the performance of the Work by Builder.

§ 6.9 Builder shall have the right to stop the Work upon three (3) days' written notice to Buyer if (i) any payment under this Contract is overdue; (ii) Builder and Buyer have a disagreement regarding the Project or the Work, which the Builder in good faith believes to be irreconcilable, (iii) Buyer interferes with Builder's good faith and proper performance of the Work; (iv) Buyer fails to give Builder adequate assurances of Buyer's financial ability to pay Builder or documents and evidence pursuant to Section 7.11; or (v) Buyer otherwise materially breaches this Contract. In the event Builder stops the Work and the Contract is ultimately not terminated, Buyer shall be responsible for any additional costs incurred by Builder as a result of its ceasing and recommencing the Work and Builder's Fee shall be equitable adjusted.

§ 6.10 If, within one (1) year after final inspection, cosmetic issues such as shrinking caulk, nail pops, etc., arise, Builder shall remedy such issues upon request of Buyer; however, Builder's responsibility therefor shall be limited to actual costs zero dollars ($0). Any costs in excess of $0 incurred by Builder to remedy cosmetic issues shall be the responsibility of Buyer and Builder shall invoice Buyer for such costs.

## ARTICLE 7 – BUYER

§7.1 To the extent necessary for the performance of the Work and the Project, Buyer shall: (i) furnish all surveys and legal descriptions of the Property and the improvements thereon relevant to the Work, as well as all soil and subsurface tests; (ii) furnish the plans and specifications for the Project; (iii) hire all architects and engineers to perform any necessary architectural and engineering services; (iv) obtain all necessary variances, licenses, special exceptions and/or zoning approvals; (v) provide Builder and its subcontractors, suppliers and vendors with access to the Property and the improvements thereon during normal work hours and cooperate in all respects with Builder's coordination of the Work; (vi) make timely payments as required hereunder; and, (vii) follow any guidelines for safety around the site of the Work, which are adopted by Builder and delivered to Buyer or posted at the Property.

§ 7.2 In order to allow Builder to complete the Work in an orderly and professional manner, Buyer, and Buyer's agents, contractors, employees, licensees and invitees, shall not instruct, direct, order or interfere with Builder's subcontractors, suppliers and/or vendors performing any portion of the Work. All communications by Buyer, and Buyer's agents, contractors, employees, licensees and invitees, regarding the Work shall be through and with Builder.

Page 8

Buyer's Initials
Builder's Initial

§ 7.3  Buyer may perform construction or operations related to the Work but not already provided for within The Scope of Work/Plans and Specifications with separate contractors ("Separate Contractors"). Builder will coordinate and sequence the activities of each Separate Contractor with the Work of Builder. Builder will make reasonable revisions to the construction schedule necessary to coordinate the schedule of any Separate Contractor, to the extent that such revisions do not interfere with Builder's ability to complete the Work in an efficient and timely manner or as required by this Contract. Costs caused by delays to the Work or by improperly timed activities or defective construction due to any Separate Contractor shall be the responsibility of Buyer and shall entitle Builder to an equitable adjustment of Builder's Fee. Buyer shall ensure that any Separate Contractor that causes damage or delay to the Work shall promptly remedy or repair that damage. Buyer shall require that any Separate Contractor have all appropriate licenses to perform their work and adequate liability insurance. Buyer and/or its Separate Contractors shall not alter, modify, damage or endanger any portion of the Work. Buyer may not unreasonably withhold from Builder Buyer's consent to cutting or otherwise altering the work of any Separate Contractor necessary to perform the Work.

§7.4  Buyer warrants and represents that Buyer is the sole owner of the Property. Buyer warrants and represents that Buyer has received any and all approvals from any homeowners association, architectural committee, developer, etc. necessary and/or required for Builder to perform the Contract and the Work. Buyer further warrants and represents that Buyer has delivered all such necessary and required approvals to Builder.

§7.5  Buyer warrants, represents and agrees that it shall not contract, assign, convey or otherwise transfer the Property upon which the Project is to be constructed, except to the extent necessary to procure construction and permanent financing, and Buyer shall keep the Property free of mechanic's liens to the extent that such mechanic's liens arise from Buyer non-payment to any contractor, including contractors other than Builder.

§7.6  Buyer agrees that Buyer shall not occupy the Project or the Project site or store any personal property within the dwelling or on the Property site until a final use and occupancy permit has been issued by the appropriate jurisdiction and Builder has received full and final payment under the Contract, including payment for any Change Orders and any Punchlist Retention. Occupancy of the Project or Project site prior to the satisfaction of the foregoing conditions shall constitute a material breach of this Contract and shall obligate Buyer to pay Builder a liquidated damage in the amount of $250 per day for each day the Project,Project site or Property is occupied by the Buyer without satisfaction of both conditions. Contractor may specifically enforce the prohibition of Buyer's occupancy of the Project, Project site and Property.

§7.7  With prior consent of Builder, Buyer shall have access to the Property during work hours for the purpose of inspecting the construction of the Project. Buyer, and anyone accompanying Buyer, must wear appropriate safety attire when visiting the improvements during the performance of this Contract, and they may not store any of their possessions in or about the improvements or the construction site prior to final payment under this Contract, including any Change Orders and Punchlist Retention. Builder shall not be liable for any personal injury, death or damage to property suffered by Buyer or Buyer's agents, Separate Contractors, invitees or licensees while visiting the Project site during the performance of this Contract. Buyer shall defend, indemnify and hold Builder harmless from any claims asserted by any non-party to this Contract arising from or related to injury, death or damage to property occurring during any Project site visits.

Page 9

Buyer's Initials _____
Builder's Initials _____

§7.8 Buyer authorizes Builder to make arrangements, as may be needed, for an electric meter, poles, sewer and/or water line, which shall be at Buyer's expense and shall be an Allowance under this Contract. Buyer shall pay any gas or electric bills incurred during the performance of this Contract and prior to occupancy of the Project and Property.

§7.9 Buyer agrees that is has secured, or will promptly apply for, any necessary construction financing to satisfy Buyer's obligations under this Contract and that such financing will specifically provide for the progress and final payments required by this Contract. Buyer shall promptly provide Builder with a fully executed copy of any construction loan commitment. Buyer agrees to comply with all of the terms and conditions of the any construction lender. In order to obtain construction financing, Buyer understands and acknowledges that Buyer may be required, among other things, to:

.1 execute and deliver unto the construction lender, a construction mortgage, note, and construction loan agreement, and all other legal documents required to perfect the lien of such mortgage;
.2 pay all settlement costs, state and local recordation and transfer taxes, points, taxes, and recording charges in connection with the transaction and the cost of all surveys, permits (excluding the grading and building permit, which are the Builder's responsibility under this Contract), as may be required, together with all other costs involved in perfecting title and clearing of any and all liens or encumbrances;
.3 provide insurance required by the lender prior to construction;
.4 warrant that Buyer is the fee simple owner of the Property and is free and clear of all liens and encumbrances, and that Buyer will promptly remove or resolve any liens, encumbrances or clouds on Buyer's title so that the construction mortgage will be a first lien thereon; and
.5 secure a long-term loan within the time period required by the construction lender.

Buyer agrees to comply with any long-term lender's conditions and requirements, and to pay long-term lender all closing costs, record costs, recordation and transfer taxes, tax escrow, points and all other costs and expenses as may be required by such lender.

§7.10 The terms of any construction financing procured by the Buyer to purchase the Property, construct the Project and/or pay for the Work under this Contract, and any subsequent long-term or permanent financing procured by the Buyer, including, but not limited to, interest rate, loan term, length of the loan commitment, points, settlement costs, expiration of the loans, conversion of the loans, etc., are strictly between Buyer and its lender(s), if any, and Builder has no responsibility or liability to any party in connection with such financing and loans.

§7.11 At any time, Builder shall have the right, upon five (5) business days' written notice to Buyer, to demand and receive from Buyer adequate assurances from Buyer of Buyer's financial ability to pay Builder fully and timely under the Contract and financial and other documentation supporting such representation and assurances. Failure of Buyer to provide such adequate assurances and documentation shall constitute a material breach of this Contract.

§7.12 Buyer shall defend, indemnify and hold Builder harmless, including attorney's fees, from any suit or action commenced against Builder by any architect arising out of Builder utilizing any plans and specifications in the performance of the Work procured by Buyer. Buyer shall defend, indemnify and hold Builder harmless, including attorney's fees, for any suit or action commenced against Builder by any homeowners association, adjacent property owner and/or Separate Builder

Buyer's Initials
Builder's Initials

Page 10

arising out of Builder performing the Work under the Contract, except to the extent that such suit or action results from the negligent performance of the Work or breach of the Contract by Builder.

## ARTICLE 8 – LEGAL DISCLOSURES

§ 8.1 BUILDER SHALL CONSTRUCT THE PROJECT AND PERFORM THE WORK IN A GOOD AND WORKMANLIKE MANNER, ACCORDING TO INDUSTRY AND SOUND ENGINEERING STANDARDS AND IN ACCORDANCE WITH ALL APPLICABLE LAWS, RULES, REGULATIONS, ORDINANCES AND CODES IN EFFECT AT THE TIME OF THE CONSTRUCTION OF THE PROJECT AND PERFORMANCE OF THE WORK. THE BUILDER SHALL COMPLY WITH THE STANDARDS AND GUIDELINES FOR HOME CONSTRUCTION WHICH ARE ADOPTED AT THE TIME OF THE EXECUTION OF THE CONTRACT BY THE NATIONAL ASSOCIATION OF HOME BUILDERS IN ITS PUBLICATION, "RESIDENTIAL CONSTRUCTION PERFORMANCE GUIDELINES." THESE PERFORMANCE STANDARDS AND GUIDELINES WILL PREVAIL IN ANY LITIGATION OR ADMINISTRATIVE PROCEEDING ARISING OUT OF OR RELATED TO THIS CONTRACT.

§ 8.2 BUILDERS OF NEW HOMES IN THE STATE OF MARYLAND ARE REQUIRED TO BE REGISTERED WITH THE CONSUMER PROTECTION DIVISION OF THE OFFICE OF THE ATTORNEY GENERAL. BUILDER IS REGISTERED WITH THE MARYLAND HOME BUILDER REGISTRATION UNIT OF THE CONSUMER PROTECTION DIVISION OF THE OFFICE OF THE ATTORNEY GENERAL. BUILDER'S REGISTRATION NUMBER IS 1757.

§ 8.3 BUILDER ADVISES AND BUYER ACKNOWLEDGES BUYER'S RIGHT TO RECEIVE A CONSUMER INFORMATION PHAMPHLET PREPARED BY THE CONSUMER PROTECTION DIVISION OF THE OFFICE OF THE ATTORNEY GENERAL PRIOR TO THE EXECUTION OF THIS CONTRACT.

§ 8.4 ADDITIONAL LEGAL DISCLOSURES ARE FOUND IN EXHIBITS G, H, I, J AND K.

## ARTICLE 9 – INSURANCE

§ 9.1 Builder shall purchase from and maintain in a company lawfully authorized and licensed to do business in the jurisdiction in which the Project is located Builder's Risk and/or installation floater insurance coverage in an amount sufficient to cover the entire Work on a replacement cost basis, with a deductible reasonably approved by Buyer. Property insurance shall be on an all-risk policy basis. Builder shall purchase and maintain liability insurance in amounts and with deductibles reasonably acceptable to Buyer and its lender, but in no event less than $100,000 or the amount statutorily required to be maintained by Builder at the time of the execution of this Contract. All such insurance (including worker's compensation) shall be in form and substance reasonably acceptable to Buyer and its lender.

§ 9.2 Builder's insurance coverage for the Project shall include coverage for theft and vandalism/hazard insurance until such time as Buyer is entitled to take possession of the Project under this Contract.

Buyer's Initials
Builder's Initial

11

§ 9.3   If equipment and/or materials are store offsite, Buyer shall be responsible for procuring any desired insurance coverage for such equipment and/or materials.

## ARTICLE 10 – TERMINATION & DISPUTE RESOLUTION

§10.1   The below constitute an event of default by Builder ("Builder Event of Default"). Upon a Builder Event of Default, Buyer may give Builder seven (7) days written notice of the Builder Event of Default and Builder shall commence curing the default. If Builder fails to do so, Buyer may terminate this Contract. A Builder Event of Default includes:

  .1 persistent or repeated failure of Builder to supply enough properly skilled workers or proper materials for the Work;
  .2 repeated failure of Builder to abide by the laws, ordinances, rules, regulations, or orders of any public authority having jurisdiction;
  .3 repeated failure of Builder to pay subcontractors from monies it has received from Buyer for subcontractors work; and
  .4 any material breach of the Contract.

§ 10.2   The below constitute an event of default by Buyer ("Buyer Event of Default"). Upon a Buyer Event of Default, Builder may give Builder seven (7) days written notice of the Buyer Event of Default and Buyer shall cure the default. If Buyer fails to do so, Builder may terminate this Contract. A Builder Event of Default includes:

  .1 Work is stopped for a period of ten (10) business days by Buyer, under an Order of any court or public authority having jurisdiction, or as a result of an act of government, and such stoppage is not the fault of Builder;
  .2 Buyer fails to make payment due under this Contract for a period of ten (10) business days;
  .3 Buyer fails to make timely material, equipment, finish or other selections that cause a material delay to the progress of the Work and the Project;
  .4 Buyer fails to provide adequate assurances and documentation required by Section 7.11 and,
  .5 any material breach of the Contract by Buyer.

§10.3   In the event of a termination of this Contract by either party under this Article, the parties shall have the rights and recourse provided for under this Contract and at law, except to the extent that such rights and recourse are specifically limited or waived hereunder.

## ARTICLE 11 – DISPUTE RESOLUTION

§11.1   As a condition precedent to litigation, any claim, cause of action or dispute arising out of or related in any way to this Contract shall be mediated in accordance with the American Arbitration Association Home Construction Mediation Procedures.

§11.2   Any claim, cause of action or dispute arising out of or related in any way to this Contract, not resolved by mediation under Section 11.1, shall be litigated in a court of competent jurisdiction located within Baltimore County, Maryland. Buyer may take any action necessary to preserve

Buyer's Initials
Builder's Initials

Page 12

any applicable guaranty fund claim; however, Buyer and Builder agree that a court of competent jurisdiction shall have primary jurisdiction over any claim, cause of action or dispute arising out of or related to this Contract, and therefore, any guaranty fund claim asserted or intended to be asserted by Buyer shall be stayed or action upon it shall be deferred unless and until the disputes between the parties have been resolved by a final, non-appealable judgment of a court of competent jurisdiction located within Baltimore County, Maryland.

§11.3 Because of the specialized nature of construction, **BUYER AND BUILDER HEREBY IRREVOCABLY WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT.** Buyer acknowledges that the waiver provided for in this Section was taken into consideration by Builder in establishing and agreeing to the Builder's Fee.

§ 11.4 Builder and Buyer waive claims against each other for consequential damages arising out of or relating to this Contract. This mutual waiver includes, but is not limited to:

.1 losses of financing, business and reputation, and for loss of profit except anticipated profit arising directly from the Work; and

.2 damages incurred by the Buyer for or as a result of rental expenses, losses of use, increased interest rates, contracts for the sale of real property and improvements, and conversion of its construction loan to a standard mortgage.

This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with this Article 10. Nothing contained in this Section 11.4 shall be deemed to preclude an award of liquidated damages pursuant to Section 7.6.

§ 11.5 If either party hereto initiates litigation arising out of or related in any way to this Agreement, the prevailing party shall be entitled to recover all reasonable attorney's fees, costs and expenses, incurred in the prosecution and/or defense of the claims raised, including any appeals.

## ARTICLE 12 – GENERAL PROVISIONS

§ 12.1 No action or failure to act by Buyer or Builder shall constitute a waiver of any right or duty afforded to either of them under the Contract, nor shall any such action or failure to act constitute an approval of, or acquiescence in, any breach thereunder, except as may be specifically agreed in writing. This provision cannot be waived, except by a writing signed by both of the parties to this Contract.

§ 12.2 If any provision or part of any provision of this Contract shall for any reason be held invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision of this Contract and this Contract shall be construed as if such invalid, illegal, or unenforceable provision or part thereof had never been contained herein, but only to the extent of its invalidity, illegality, or unenforceability.

§ 12.3 This Contract shall be governed by the laws of the State of Maryland, excluding its conflicts of laws rules.

§ 12.4 Buyer and Builder agree that this Contract, and any and all terms and provisions contained herein, shall not be presumptively construed against either of the parties hereto as the drafter of the

Page 13

Buyer's Initials
Builder's Initial

Contract or promoter of the form Contract. This Contract is deemed jointly drafted and fully negotiated.

§ 12.5 This Contract is solely for the benefit of the signatories hereto and represents the entire and integrated Agreement between the parties hereto and supersedes all prior negotiations, representations, or agreements, either written or verbal. This Contract may not be orally modified. Any changes to this Contract was must be in writing and signed by both parties in accordance with Article 2 of this Contract.

§ 12.6 Neither party to this Contract shall assign the Contract without written consent of the other, except that Buyer may assign the Contract to a lender providing construction financing for the Project if the lender assumes Buyer's rights and obligations under the Contract Documents, including promptly paying any outstanding amounts owed to Builder under the Contract Documents as well as paying the remainder of the Contract Sum in accordance with the terms of this Contract. In the event of such assignment, Buyer shall remain liable to Builder under the terms of the Contract Documents.

§ 12.7 This Contract may be executed in counterparts and as so executed shall constitute an agreement that is binding upon the parties, notwithstanding that the signature of all parties and/or their designated representatives do not appear on the same page.

§ 12.8 If there is more than one individual and/or entity that owns the Property, the individuals and/or entities that own the Property shall be jointly and severally liable for the obligations of the Buyer.

§ 12.9 Notices required under this Contract shall be sent via certified mail, return receipt requested, by a national carrier, signature required or by hand delivery to the addresses identified on page 1 of this Contract.

[Signatures appear on next page]

Page 14

Buyer's Initials
Builder's Initial

Buyer may cancel this transaction at any time prior to midnight of the 3rd business day after the date of this transaction. See the attached **Exhibit N** – Notice of Cancellation for an explanation of this right.

| J. PAUL BUILDERS, L.L.C. | CTLC, INC. |
|---|---|
| By: _[signature]_ | By: _[signature]_ |
| Printed Name: Paul Lichter | Printed Name: Sandra Grier |
| Title: (member) | Title: CEO |
| Dated: 1/13/2020 | Dated: 1/13/2020 |

Buyer's Initials _[initials]_
Builder's Initials _[initials]_