# EXHIBIT 4

### ADDENDUM TO CUSTOM HOME CONSTRUCTION CONTRACT (COST PLUS FEE)

This Contract Addendum (the "Addendum") is made and entered into by and between CTLC, Inc. ("Owner") and J. Paul Builders, L.L.C. ("Contractor") on this **13**th day of January 2020. This Addendum is an addendum to the Custom Home Construction Contract of even date herewith (the "Agreement") related to the construction of single family residence at 15195 Devlin Dr. Glenelg, MD 21737 (the "Project"). For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Owner and Contractor hereby enter into this Addendum. The parties hereto agree as follows:

1.      CONTROLLING AGREEMENT. In the event of any conflict between the terms of this Addendum and the terms of the Agreement, the terms of this Addendum shall control. The absence of terms or silence in this Addendum with respect to matters addressed in the Agreement shall not be construed to constitute a conflict between the Addendum and the Agreement. Except as otherwise specified herein, all terms defined in the Agreement shall have the same meaning when used in this Addendum.

2.      SCOPE OF THE WORK. Contractor shall provide all labor, materials, equipment, machinery, supplies, tools, transportation, fuel, supervision, security and other services necessary for the construction of the Project in accordance with the Contract Documents as defined in Section 3, excluding items identified in Exhibit B to the Agreement (the "Work").

3.      CONTRACT DOCUMENTS. "Contract Documents" means the Agreement, the Exhibits and other documents specified therein, this Addendum, the initial architectural drawings (the "Initial Architectural Drawings") prepared by A Perry Homes (the "Initial Architect") as supplemented and completed by the architectural drawings (the "Final Architectural Drawings") prepared by Levin/Brown & Associates, Inc., an architect employed by the Owner (the " Architect"), and including any written modifications thereto and all exhibits referenced herein and attached hereto; and any executed Change Orders or Construction Change Directives (both as described below).

3.1     Intent of Contract Documents. The intent of the Contract Documents is to include all items necessary for proper execution of the Work. The Contract Documents are complementary and what is required by one shall be as binding as if required by all. Words which have well-known technical or trade meanings are used in the Contract Documents in accordance with such recognized meanings. The Work shall be performed in a manner consistent with the Contract Documents and reasonably inferable from them and from manufacturer's recommendations as being necessary to produce the intended results.

3.2     Conflicts in Contract Documents. If the Contract Documents conflict with one another, Contractor shall immediately notify Owner in writing upon discovery thereof and, unless otherwise specified by Owner in writing, the more stringent



provisions, affording Owner a better quality Project, shall control. Where conflicting provisions do not differ in stringency, the terms of this Addendum shall govern.

    4.    CONTRACT SUM

        4.1    The Contract Sum is the Cost of the Work plus the Builder's Fee specified in Section 34 (a) below. There is no guaranteed maximum price with respect to the Project.

    5.    PAYMENT

        5.1    Applications for Payment.

            5.1.1    Contractor's Application for Payment shall be submitted to Owner with a copy to the Owner' Representative on the first day after the end of each calendar month for the Work completed in such calendar month. Each Application for Payment shall be made using the form attached as Exhibit 1 hereto.

            5.1.2    As a condition precedent to payment, each Application for Payment shall be in such detail and form as Owner and Owner's Representative may reasonably require, and shall be accompanied and supported by data substantiating Contractor's right to payment, including but not limited to receipts, payrolls, invoices, requisitions or payment applications by Subcontractors (as defined in Section 22.1 hereof), and such other data as Owner or Owner's Representative may reasonably require.

            5.1.3    As a condition precedent to payment, commencing with the second Application for Payment, each Application for Payment shall be accompanied by unconditional waivers and releases of mechanics liens and other Claims (as defined in Section 15.1 hereof) ,excluding unresolved Claims timely asserted in accordance with Section 15.1. from Contractor and all Material Subcontractors (as defined below) for whom payment was made, in a form which complies with Maryland law, acknowledging payment for all labor, services, equipment and materials supplied to the Project through the date of most recent previous draw request for which application for payment was made and funded by Owner. Unresolved Claims timely asserted in accordance with Section 15.1 are excluded from any waivers and releases provided by Contractor or any Material Subcontractor under this Addendum. The waivers and releases required by this Addendum supersede and are in lieu of any requirements for waivers and releases in the Agreement.

            5.1.4    Each Application for Payment shall be accompanied by a Project Schedule, as defined in Section 6.3 hereof.



5.2    Progress Payments.

5.2.1    During performance of the Work, Owner shall pay Contractor all undisputed sums, within five (5) business days after receipt of a Certificate for Payment by the Owner's Representative The Owner shall require Owner's Representative to review each Application for Payment within five (5) business days after it is submitted by the Contractor. The Owner's Representative shall review Contractor's Application for Payment for the purpose of confirming that the quantity of Work reflected in Application for Payment has actually been performed or that Contractor has properly expended costs in furtherance of the Work.

5.3    Final Payment.

5.3.1    Owner's final payment to Contractor ("Final Payment") shall be conditioned upon the below:

(a)    Delivery to Owner of a final Application for Payment ("Final Application for Payment");

(b)    Contractor's achievement of Final Completion (as defined in Section 6.2.3 hereof);

(c)    Delivery to Owner of all manufacturers' warranties and original operating, maintenance and servicing manuals/materials;

(d)    The Architect certifies to Owner that the Work is sufficiently complete to qualify for any certificates of occupancy or other requisite governmental approvals of the Work, except that Architect's failure to evaluate the Work as provided herein within a reasonable amount of time (i.e. up to ten (10) business days), after Contractor has notified Owner or Owner's Representative that Final Completion has been achieved shall not delay final payment;

(e)    Delivery to Owner of a set of the Contractor's construction drawings marked to reflect any clarifications or notations made by Contractor incident to its performance of the Work; however, Contractor shall not be required to prepare "As-Built" drawings;

(f)    Delivery to Owner of unconditional waivers and releases of mechanics liens and other Claims excluding unresolved Claims timely asserted in accordance with Section 15.1 from Contractor and all Material Subcontractors for whom payment was made, in a form which complies with Maryland law, acknowledging payment for all labor, services, equipment and materials supplied to the Project and covered by any prior draw request;

(g)    Delivery to Owner of Contractor's affidavit certifying that other than unresolved Claims timely asserted in accordance with Section 15.1 and any disputes with any Subcontractors identified in the affidavit, all claims and

3



other amounts owing all Subcontractors have been paid, and that Contractor itself has no remaining, unresolved disputes or claims.

5.3.2   Within five (5) business days after (i) Final Completion and (ii) receipt of a final Application for Payment and (iii) receipt of all other deliverables identified immediately above (whichever occurs last), Owner shall pay Contractor the Final Payment.

5.3.3   Acceptance of Final Payment by Contractor shall constitute a waiver of claims by it, except for unresolved Claims previously asserted in accordance with Section 15. that are identified in the Contractor's affidavit specified in Section 5.3(g).

5.3.4   Within fifteen (15) business days of Contractor receiving Final Payment. Contractor shall furnish Owner with unconditional waivers and releases upon final payment, in a form which complies with Maryland law, completed and signed by Contractor, and by every Material Subcontractor for which Contractor has not previously provided a final unconditional waiver and release upon final payment.

5.3.5   Neither Final Payment nor any provision in this Agreement shall relieve Contractor of responsibility for Work which is deficient, incomplete. defective or otherwise not in compliance with the Contract Documents.

5.4   Right to Withhold Payment.  Owner may withhold from any payment such amounts as Owner, after consulting with the Architect, determines in good faith would be necessary for protection against loss or prospective loss relating to Contractor's Work, for any of the following reasons:

5.4.1   circumstances in which the Work in question has not received all necessary approvals from any governmental authority for any reason which is Contractor's responsibility;

5.4.2   defective Work not remedied;

5.4.3   claims made against Owner related to the Work. or reasonable evidence indicating the probable making of claims against Owner;

5.4.4   mechanics liens actions filed against the Project or the site where the Project is located ("Property") to the extent Owner has paid Contractor for the subject matter of the lien claim;

5.4.5   failure of Contractor to properly and timely pay Subcontractors (as defined below) or laborers from amounts paid to Contractor by Owner;

5.4.6   Contractor's failure to pay, on behalf of any employee, tax withholding, FICA, employee benefits (including but not limited to union dues,

4



union trust fund or cooperative committee payments, if applicable), or any other required payments on behalf of any employee to a union or governmental agency;

5.4.7 penalties assessed against Owner for failure of Contractor to comply with state, county, federal or agency laws, statutes, regulations, rules, ordinances or codes, including applicable building codes (the "Applicable Laws") in the performance of the Work and not as a result of a design error or omission undiscovered by Contractor;

5.4.8 Owner's reasonable doubt arising more than 20 months after the date of commencement, certified by the Architect, that the Work can be completed within the Contract Time (as defined in Section 6.2.2 hereof);

5.4.9 any material breach of this Agreement; and/or

5.4.10 as otherwise provided in the Contract Documents.

5.5 Interest on Unpaid Sums. Payments due and unpaid under this Agreement shall bear four and one half percent (4.5%) annual interest from the date payment is due.

5.6 Contractor's Payment of Subcontractors. Unless otherwise agreed with Owner, Contractor shall promptly pay each Subcontractor and laborer out of the amount paid to Contractor by Owner on account of such Subcontractor's or laborer's portion of the Work.

    5.6.1 Creation of Escrow for Subcontractors. Within three (3) business days after the date of full execution of this Addendum, the Owner shall advance to Contractor $500,000 (the "Escrow Balance") which will be promptly deposited by Contactor in a segregated bank account (the "Escrow Account") to be held for the benefit of Owner and applied only as permitted by this Addendum. The Contractor shall permit the Owner and the Owner's Representative to verify at any time the balance in the Escrow Account and the payments made from the Escrow Account.

    5.6.2 Distribution from Escrow Account. In the event the Contractor determines in its commercially reasonable judgment that payments need to be made to a Subcontractor earlier than the payment schedule contemplated in Section 5.1.1 above, the Contractor shall be permitted to distribute such payment from the Escrow Account provided that the Contractor satisfies all the conditions precedent to payment under Sections 5.1.2 and 5.1.3 that would be applicable to such payment if it had been pursuant to an Application for Payment.

    5.6.3 Restoration of Escrow Account. Any amounts distributed from the Escrow Account under Section 5.6.2 shall be included in the first Application for Payment submitted by Contractor following the distribution. with payments made by Owner pursuant to such Application

5



for Payment related to such distribution being used by Contractor to fully restore the Escrow Account.

5.6.4   Return of Escrow. Contractor shall return to Owner $250,000 from the Escrow Account 12 months from the Date of Commencement. 24 months from the Date of Commencement Contractor and Owner or Owner's Representative shall analyze and determine whether it is feasible for Contractor to return to Owner the balance of the Escrow Account or some portion thereof based upon the Material Subcontractors performing and to perform Work on the Project. If Contractor and Owner or Owner's Representative cannot agree on the disposition of the Escrow Account, Contractor shall follow the direction given by Owner or Owner's Representative: however, Owner shall bear the risk of delays caused by any inability of Contractor to utilize the balance of the Escrow Account to pay Material Subcontractors provided that Contractor has provided to Owner and the Owner's Representative not less than five (5) days advance notice of the required payment due to the Subcontractor. Any Escrow Account balance remaining at Substantial Completion shall be remitted to Owner. In addition upon termination of the Agreement as modified by this Addendum any balance in the Escrow Account shall be promptly distributed to Owner.

5.6.5   Owner and Contractor agree that the Escrow Account provided for in Sections 5.6.1 through 5.6.4 of this Addendum is not subject to or governed by Section 10-504 of the Real Property Article of the Annotated Code of Maryland as the amount to be deposited into the Escrow Account is less than five percent (5%) of the anticipated Cost of the Work and the Contractor's Fee.

## 6.   TIME AND SCHEDULE/LIQUIDATED DAMAGES

6.1   Time of Essence. Time is of the essence for all Work included in the Contract Documents and payments required by the Contract Documents.

6.2   Contract Time.

6.2.1   Commencement of Work. The excavation of the foundation for the Project shall commence upon issuance of a Notice to Proceed by Owner , which shall be issued no earlier than January 15, 2020. Upon issuance of the Notice to Proceed by Owner, Contractor shall diligently pursue excavation of the foundation of the Project to the extent permitted by the weather conditions. The commencement date (the "Commencement Date") shall be the date upon which the Contractor completes the excavation for the foundation for the Project.

6.2.2   Substantial Completion. Contractor shall use its commercially reasonable efforts to achieve Substantial Completion of the Work, as defined in this section, not later than twenty four (24) months from the

6



Commencement Date, and Contractor must achieve Substantial Completion of the Work not later than thirty six (36) months from the Commencement Date. "Substantial Completion" shall be deemed to have occurred when (i) all of the Work has been performed except for minor punch list items and (ii) Contractor has obtained all required approvals for its Work from the requisite governmental authorities, including any required certificate of occupancy. The period between the Commencement Date and the date specified herein for achievement of Substantial Completion shall be referred to herein as the "Contract Time." It is recognized that the Contract Time may need to be extended if long lead time materials specified by the Owner are not timely provided by the supplier without the fault of the Contractor or its Subcontractors and the Owner is not willing to accept reasonable alternative materials proposed by the Contractor.

      6.2.3   Final Completion. Contractor shall achieve Final Completion, as defined in this section, within sixty (60) days of Substantial Completion excluding only punch list items that Contractor can show could not be completed for causes beyond Contractor's reasonable control. "Final Completion" of the Work shall be deemed to have occurred when Contractor has completed all punch list items remaining at Substantial Completion, excluding low voltage lighting systems. Should Contractor fail to complete all punch list items within the time stated herein for Final Completion, Owner, in its sole and absolute discretion, may elect to complete the remaining punch list items, may withhold Final Payment until such items have been completed, and may apply amounts otherwise owed Contractor as Final Payment to the cost of completing the punch list items. Owner's completion of punch list items shall not void any Contractor warranty or guaranty or other obligations expressed or implied under this Agreement.

      6.3     Project Schedule. Contractor shall submit with each Application for Payment a basic updated schedule (a "Project Schedule"). The Project Schedule shall provide for the orderly progression of the Work to completion and shall not exceed time limits current under the Contract Documents. The Owner's Representative may convert the Contractor's Project Schedule into a detailed critical path method schedule for review by Contractor and mutual agreement between Contractor and Owner's Representative. The initial schedule is attached to the Agreement as Exhibit M.

      6.4     Delay/Acceleration/Force Majeure

      6.4.1   If the Project Schedule is delayed such that the Contractor should reasonably anticipate that it may not achieve Substantial Completion within the Contract Time, as may be amended hereunder, Contractor shall promptly notify Owner and Owner's Representative. Following consultation with Owner and Owner's Representative, Contractor shall take all commercially feasible action(s) necessary to return the Project to the originally scheduled date for Substantial Completion. Such actions may include, but shall not be limited to (i) re-sequencing the Work, (ii) employing additional manpower, (iii) adding additional shifts, (iv) adding overtime and weekend shifts, and (v) adding additional

7



supervisory personnel, all to be at Contractor's sole cost except under the circumstances set forth immediately below.

   6.4.2 To the extent that the Project Schedule is delayed by causes beyond the reasonable control of Contractor or a Subcontractor, or anyone directly or indirectly employed by any of them, including but not limited to (i) acts or omissions of the Owner, (ii) acts or omissions of governmental authorities that could not have been reasonably anticipated by the Contractor and that are not the fault or responsibility of Contractor, including, but not limited to, any requirement that a new building permit be issued due to modifications to the permit set of plans, or (iii) acts of God such as fire or earthquake, or by abnormal adverse weather conditions not reasonably anticipated, acts of the public enemy, riot, civil commotion, war, police or hostile actions, epidemics or quarantine restrictions, or expropriation of facilities, then the date of Substantial Completion shall be equitably extended by Change Order provided that Contractor furnishes Owner with timely notice of the delay as provided herein. Such adjustment shall account for the loss of time and additional costs directly incurred in connection therewith.

   6.5 No Early Completion. Contractor has not planned or scheduled the Work to achieve Substantial Completion earlier than the date provided for herein, and waives any right to claim additional compensation for being prevented from achieving Substantial Completion early, regardless of whether such early completion is precluded by force majeure, Owner action or inaction, or by any cause whatsoever.

   6.6 Liquidated Damages. Contractor shall pay Owner $165 for each day of delay in achieving Substantial Completion as liquidated damages and not as a penalty.

## 7. CONTRACTOR'S REPRESENTATIONS

   7.1 Licensing. Contractor represents and covenants that it is properly licensed to perform the Work in the State of Maryland, and will remain so throughout the performance of the Work. Contractor will ensure that all of its Subcontractors are properly licensed throughout performance of the Work.

   7.2 Experience. In order to induce Owner to enter into this Agreement, Contractor represents that it is highly experienced in the construction of projects similar to this Project and is capable of performing all Work in a professional, competent, expeditious and economical manner consistent with the best interests of the Project and Owner. No fiduciary or confidential relationship exists between Owner and Contractor.

   7.3 Project Review.

   7.3.1 As of the execution of this Addendum and the Agreement, Contractor has received and reviewed a schematic design and renderings for the Project. Contractor has not received final construction drawings, designer drawings and finishes, structural engineering drawings, landscape architect drawings and finishes, or the building permit Owner's Representative has advised Contractor



has been issued   Contractor represents and acknowledges that prior to entering into this Addendum it visited the Property and carefully examined its nature, location, layout and character, and familiarized itself with generally prevailing weather conditions, local work conditions. and with all other matters which can reasonably be expected to affect the Work.

                7.3.2   Upon receiving final drawings, plans and specifications for the Project and before starting each portion of the Work, Contractor shall carefully study and compare the various Contract Documents relative to that portion of the Work, shall take field measurements of any existing conditions related to that portion of the Work, and shall observe any conditions at the site affecting it. These obligations are for the purpose of facilitating coordination and construction by the Contractor and are not for the purpose of discovering errors, omissions, or inconsistencies in the Contract Documents; however, the Contractor shall promptly report to the Architect and the Owner's Representative any errors, inconsistencies or omissions discovered by or made known to the Contractor as a request for information in such form as the Architect or Owner's Representative may require. It is recognized that the Contractor's review is made in the Contractor's capacity as a contractor and not as a licensed design professional. The Contractor is not required to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, but the Contractor shall promptly report to the Architect any nonconformity discovered by or made known to the Contractor as a request for information in such form as the Architect may require. If during construction, Contractor discovers any errors, inconsistencies, ambiguities, omissions or discrepancies in the Contract Documents or any discrepancies between the Contract Documents and the physical conditions of the Property, it shall promptly inform Owner and Owner's Representative in writing before incurring additional cost or delay resulting from such error. inconsistency. ambiguity, omission or discrepancy. Contractor shall not receive any payment for such additional cost or an increase in the Contract Time for changed or additional work resulting from such error, inconsistency, omission or discrepancy if such additional work is performed prior to giving Owner written notice thereof and without receipt of a written Change Order authorizing such additional work.

                7.3.3   After the delivery to the Contractor of the final construction drawings. if during construction. Contractor discovers any materials, systems. procedures or methods of construction shown on the drawings or specified, that it believes or knows are incorrect, inadequate, obsolete, contrary to Applicable Law, unconstructible, or unsuitable for the purpose intended (collectively, "Errors"), it shall promptly inform Owner and Owner's Representative in writing before incurring additional cost resulting from such Errors. Contractor shall not receive any payment for costs resulting from Errors or an increase in the Contract Time for changed or additional work resulting from such Errors if such work is performed prior to giving Owner written notice thereof and without receipt of a written Change Order authorizing such additional work.

9



7.4     Title. Contractor represents and agrees that title to the Work, materials and equipment covered by any Application for Payment will pass to Owner free and clear of all liens, claims, security interests or encumbrances upon payment therefor.

8.     CONTRACTOR'S WARRANTY

8.1     Warranty. Contractor represents and warrants that materials and equipment furnished under the Contract Documents will be new, of good quality, and carrying all available manufacturers' and installers' warranties; that construction will be of workmanlike quality; and that all of the Work shall be performed in conformance with the requirements of the Contract Documents, Applicable Laws, industry standards and manufacturers' recommendations. Work not conforming to these requirements shall be considered defective ("Defective Work"). Contractor's warranty excludes remedy for damage caused by modifications not executed by Contractor, improper or insufficient maintenance, improper operation, and normal wear and tear.

8.2     Duration. Contractor's warranty obligations set forth in Section 8.1 shall commence upon Final Completion and shall run for a period of one (1) year, or longer if so stated in the terms and conditions of any specific warranty furnished by an installer.

8.3     Assignment. All warranties received by Contractor shall be assignable to Owner, and upon abandonment, termination or completion of this Agreement shall be deemed, and are hereby, assigned to Owner.

8.4     Survival. All warranty obligations on the part of Contractor shall survive completion of the Project. Additionally, to the extent that Contractor has fully completed any portion or component of the Work and has been paid for such portion or component of the Work, Contractor's warranty obligations shall survive the abandonment or termination of the Contract. Neither Final Payment nor any provision in the Contract Documents shall constitute an acceptance of Work not performed in accordance with the Contract Documents nor relieve Contractor of liability with respect to any warranty obligations or for Defective Work.

9.     CONTRACTOR'S OBLIGATIONS

9.1     Supervision. Contractor shall supervise and direct the Work using Contractor's best skill and attention. Paul Lichter, the owner of Contractor shall be directly involved in monitoring the Work. Contractor shall enforce strict discipline and good order among Contractor's employees, Subcontractors and other persons who carry out the Work. Contractor shall not permit employment of any unfit persons not skilled in tasks assigned to them.

9.2     Project Superintendent. Contractor shall maintain at least one competent Project Superintendent at the Property, and possibly two as needed, and shall not reassign any Project Superintendent without the Owner's consent. The initial Project Superintendent shall be _____.

10



9.3      <u>Means and Methods</u>. Contractor shall be solely responsible for and have sole control over all construction means, methods, techniques, sequences and procedures. including without limitation safety, and for supervising and coordinating all portions of the Work, and all of its Subcontractors and all of their submittals. subject to the terms of Section 9.5.2 below addressing Owner's Representative's review and approval of submittals.

9.4      <u>Substitutions</u>. Contractor may make substitutions of material only (i) with material that is at least equivalent to the specified item in quality, appearance, maintenance and service, longevity, ease of operation or installation, and suitability to the intended use, and (ii) with the written consent of Owner and Owner's Representative. Work performed with unauthorized substitutions or with substituted material that does not comply with the terms of this section shall be deemed Defective Work and Contractor shall replace such Defective Work at its sole expense.

9.5      <u>Submittals</u>

9.5.1      Contractor shall perform no portion of the Work for which the Contract Documents require submittals until the applicable submittal has been reviewed and approved by Owner's Representative.

9.5.2      Owner's Representative will review and approve submittals as soon as reasonably practicable (but in no event later than five (5) business days after receipt) and will return them to Contractor with a written confirmation indicating the appropriate action applied thereto. Notations by Owner's Representative that Contractor deems may increase the cost of performing the Work or the time of completion shall be brought to the attention of Owner and Owner's Representative in writing before proceeding with the Work.

9.6      <u>Permits</u>. Contractor shall procure, pay for and deliver to Owner all trade permits and/or licenses that the general contractor and subcontractor are required to obtain in the State of Maryland to perform the Work. Owner has obtained a building permit for the Project. Any required modifications to the existing building permit or the procurement of a new building permit for the Project is the sole responsibility of Owner.

9.7      <u>Employee Taxes</u>. With respect to its employees, Contractor shall pay all taxes or contributions relating to unemployment. social security, income. and all other similar taxes or contributions.

9.8      <u>Sales and Use Taxes</u>. Contractor shall pay all sales, consumer, use and other similar taxes for the Work or portions thereof provided by Contractor which are legally enacted at the time this Agreement is executed, whether or not yet effective, and such taxes shall constitute Cost of the Work

9.9      <u>Compliance with Law</u>. As respects to the performance of all of the Work, Contractor will comply with all Applicable Laws.

11



9.10    Site Maintenance.  Contractor shall keep the Property and surrounding area neat and free from accumulation of waste materials caused by performance of the Work.  Such waste material shall be reasonably cleaned up at the end of each work day.  At the completion of the Work and as a condition precedent to Final Payment, Contractor shall remove from and about the Property waste materials, tools, construction equipment, machinery and surplus materials, and shall leave the Project reasonably broom-clean.  If Contractor fails at any time to comply with this provision, Owner may undertake such clean-up and the cost thereof shall be charged to Contractor.

9.11    Security.  Contractor shall provide storage and safekeeping for all materials and equipment prior to their installation and shall provide security for the entire Property throughout construction.  Storage of materials and equipment at the property shall be at the Contractor's sole risk of loss. Contractor may obtain a separate insurance policy to cover this risk and treat the insurance expense as a Cost of the Work.

## 10.    OWNER'S OBLIGATIONS

10.1    Access.  Owner shall provide access to the Property.

10.2    Prompt Response.  Owner shall furnish information, services and material, equipment and finish selections required of Owner by the Contract Documents with reasonable promptness so as not to delay the orderly and timely progress of the Work.

10.3    The Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a legal description of the site. The Contractor shall be entitled to rely on the accuracy of information furnished by the Owner but shall exercise proper precautions relating to the safe performance of the Work.

10.4    The Owner represents to Contractor that it knows of no Hazardous Substances at the Project site, the Contract Documents will not require Contractor to use Hazardous Substances in the performance of the Work, and the Owner will not require Contractor to use Hazardous Substances by way of its material, equipment or finish selections.

11.    OWNERSHIP AND USE OF DOCUMENTS.  All Plans (including computer-aided design discs and electronic media versions thereof) and copies thereof furnished by Architect or by any of Owner's consultants are and shall remain the property of Owner.  Plans and other project-related materials are not to be used for marketing, advertising or any purpose other than performing the Work.

## 12.    PROTECTION OF PERSONS AND PROPERTY

12.1    Responsibility for Safety.  Contractor shall be solely responsible for initiating, maintaining, and supervising all safety precautions and programs in connection with the Work, and Owner shall have no liability in connection therewith.

12



12.2    Safety Precautions. Contractor shall take all reasonable and/or legally-required precautions to ensure the safety of, and to prevent damage, injury or loss to:

Property;

12.2.1 its employees and all other persons at and around the

12.2.2 all the Work and materials and equipment incorporated or to be incorporated therein, whether installed or in storage on or off the Property;

12.2.3 all of the work, materials, equipment and personal property of other persons at the Property;

12.2.4 all other real and personal property at or adjacent to the Property, such as trees, shrubs, pavements, walkways, roadways, utilities, common areas and structures.

12.3    Compliance with Law. Contractor shall give all notices and comply with all Applicable Laws, including the lawful orders of any public authority, bearing on the safety of persons or property for their protection from damage, injury or loss.

12.4    Dangerous Methods. When the use of unusual or inherently dangerous methods are necessary for execution of the Work, Contractor shall exercise the utmost care and shall carry on such activities under the supervision of properly qualified personnel.

12.5    Nuisance. Contractor shall not allow any condition to exist on the Property that violates Applicable Laws or is inconsistent with community standards.

12.6    Utilities. If utility service to any properties adjacent to the Property is interrupted as a direct result of construction by Contractor or any of its Subcontractors, Contractor shall restore such utility service immediately.

12.7    Damage Repair. Contractor, at its sole expense, shall promptly remedy any damage to or loss of property caused in whole or in part by Contractor, a Subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable or for which Contractor is responsible, and Contractor shall not be entitled to any payment or to an adjustment in the Contract Time on account thereof.

12.8    Emergency. In any emergency threatening the life or health of persons or posing a threat to real or personal property or the environment, Contractor shall act expeditiously to prevent or, if prevention is not possible, to mitigate such threatened damage, injury or loss. To the extent such emergency was caused by Contractor, a Subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable or for which Contractor is responsible,

13



Contractor shall bear the expense therefor, and shall not be entitled to any payment or adjustment in the Contract Time on account thereof.

12.9    Accidents. Contractor shall prepare a written report setting forth the circumstances and details related to any accident or occurrences involving death, bodily injury, sickness, disease, personal injury, and/or loss or injury to or destruction of real or personal property. Such reports shall be forwarded promptly to all applicable insurance carriers and to Owner.

13.    HAZARDOUS SUBSTANCES

13.1    Definition. For purposes of this Addendum, the term "Hazardous Substance" means any "hazardous substance" as defined in Section 101(14) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (42 U.S.C. § 9601(14)) ("CERCLA"), or any other contaminants, pollutants, toxic substances or related materials which pose a hazard to health or the environment, or as defined by other Applicable Law.

13.2    Utmost Care. When use or storage of permitted Hazardous Substances (if any), Contractor shall exercise utmost care and shall carry on such activities under supervision of properly qualified personnel.

13.3    No Release/Notice of Release. Contractor shall not engage in operations that involve the release (as defined by Applicable Law) of any Hazardous Substances. In the event of any such release or in the event of any threat of such release, Contractor shall immediately (but not later than 24 hours of the release or discovery of a threatened release) notify Owner orally and in writing, and shall take all such steps to mitigate and remediate such release as may be prudent and/or required by Applicable Law.

13.4    Cooperation Following Release. Contractor shall provide all relevant information regarding any Hazardous Substances used, stored or generated at the Property, including, without limitation, Material Safety Data Sheets, to Owner and to emergency personnel, such as firemen and hazardous materials teams, immediately upon the occurrence of a release (or fire, casualty or other similar occurrence) on or about the Property.

13.5    Encounter with Hazardous Substances. In the event Contractor encounters material reasonably believed to be a Hazardous Substance on the Property, Contractor shall immediately stop Work in the area affected and immediately report the condition to Owner orally, to be followed promptly by notice in writing. Contractor shall not report environmental conditions to governmental agencies without prior consultation with Owner, except as required by Applicable Law. If in fact the material is a Hazardous Substance, work in the affected area shall not thereafter be resumed until reasonable measures have been implemented to prevent foreseeable bodily injury or until such material has been properly removed or rendered harmless. In such event the Contract

14



Time shall be equitably increased as mutually agreed between Contractor and Owner or Owner's Representative.

### 13.6 Responsibility for Hazardous Substances

13.6.1 With respect to Hazardous Substances already existing on the Property prior to Contractor's commencement of the Work, Owner, at its sole expense, shall have responsibility for the handling, disposal or remediation thereof in accordance with Applicable Law and prudent industry practices. Notwithstanding the foregoing, Contractor shall not thereby be relieved from liability, and shall be liable, for any mishandling of such Hazardous Substances by it or anyone performing Work on its behalf.

13.6.2 With respect to Hazardous Substances brought to the Property by Contractor not required by the Contract Documents or Owner's or Owner's Representative's selections, Contractor, at its sole expense and without any right to received reimbursement, shall have responsibility for the handling, disposal or remediation thereof in accordance with Applicable Law and prudent industry practices.

### 13.7 Indemnity for Hazardous Substances

With respect to Hazardous Substances introduced to, or mishandled at, the Property by Contractor or its employees, Subcontractors or anyone else performing the Work, except to the extent such Hazardous Substances are required by the Contract Documents or a selection of the Owner or Owner's Representative, Contractor shall indemnify and hold harmless Owner and Owner's successors and assigns from and against claims, liens, lawsuits, arbitration proceedings, administrative or agency proceedings, actions, debts, damages, costs, losses, liabilities, obligations, judgments, and expenses, including, without limitation, court costs, expert and consultant fees, attorneys' fees, arising out of or resulting from the introduction or mishandling of Hazardous Substances as set forth in this Section 13.

13.8 With respect to Hazardous Substances already existing on the Property or required by the Contract Documents or a selection of Owner or Owner's Representative, Owner shall indemnify and hold harmless Contractor from and against claims, liens, lawsuits, arbitration proceedings, administrative or agency proceedings, actions, debts, damages, costs, losses, liabilities, obligations, judgments, and expenses, including, without limitation, court costs, expert and consultant fees, attorneys' fees, arising out of or resulting from the presence of Hazardous Substances or any requirement to use Hazardous Substances contained in the Contract Documents or any selection of Owner or Owner's Representative.

### 14. CHANGES IN THE WORK

14.1 Owner's Right to Order Changed Work. Owner, without invalidating the Agreement, may order changes in the Work within the general scope of the Contract Documents consisting of additions, deletions or other modifications and the

15



Contract Time shall be increased or decreased as provided herein. The Contractor shall provide Owner or Owner's Representative with an estimate of the Cost of the Work impact associated with any proposed Change Order within a commercially reasonable amount of time and the Contractor shall promptly advise Owner or Owner's Representative if it appears at any time that the Cost of the Work impact will materially vary from such estimate and the reasons therefor.

14.2    Change Orders. A Change Order is a written instrument signed by both parties stating their agreement upon (i) a change in the scope of the Work, and (ii) the extent of the adjustment, if any, in the Contract Time.

14.3    Construction Change Directives. A Construction Change Directive ("CCD") is a written order prepared by and signed by Owner, directing a change in the Work within the general scope of the Contract Documents prior to agreement on adjustment, if any, in the Contract Time. The Contractor shall provide Owner or Owner's Representative with an estimate of the Cost of the Work impact associated with any CCD within a commercially reasonable amount of time and the Contractor shall promptly advise Owner or Owner's Representative if it appears at any time that the Cost of the Work impact for such CCD will materially vary from such estimate and the reasons therefor.

14.3.1  Upon receipt of a CCD, Contractor shall advise Owner in writing of any disagreement with the method provided in the CCD for determining the proposed adjustment in the Contract Time.

14.3.2  Contractor's signature on a CCD indicates its agreement therewith, including any adjustment in the Contract Time. Such agreement shall be immediately effective and the CCD shall be transformed into a Change Order.

14.3.3  If Contractor disagrees with the adjustment in the Contract Time contained in a CCD, it shall proceed with the changed Work, and maintain records regarding the effect of the directed work on the Contract Time.

14.4    Change Order Requests. All requests by Contractor for an adjustment of the Contract Time arising out of change to the Work shall be submitted to Owner for prior approval on a Change Order Request ("COR") form approved by Owner. Contractor shall submit with the COR an itemized and reasonable estimate of all costs of the proposed change, together with documentation supporting such estimate and any anticipated delay to the substantial completion date associated with such change. Contractor shall not perform changed work which is the subject of a COR until and unless the COR has been transformed into a CCD or Change Order executed by Owner.

14.5    Condition Precedent to Contractor Recovery for Changed Work. No change in the Work, whether by way of additions, deletions or modifications, shall be the basis of an addition to the Contractor's Fee unless such changed work was authorized by a written Change Order or CCD executed by Owner in advance of the changed work

16



being performed, describing the changed work authorized. No change in the Work, whether by way of additions, deletions or modifications, shall be the basis of an extension of the Contract Time unless such changed work was authorized by a written Change Order or CCD executed by Owner in advance of the changed work being performed, describing the changed work authorized and, in the case of a Change Order only, stating the adjustment to the Contract Time, if any, or providing a method for such adjustment. This requirement is of the essence of the Contract Documents and oral change directives are not sufficient. Contractor waives the right to recover, whether in contract or quasi-contract, compensation for any changed work performed in advance of or without having received a Change Order or CCD issued in strict accordance with this Section. No course of conduct or dealings between the parties, nor express or implied acceptance of changes to the Work nor any claim that Owner has been unjustly enriched by such change, whether or not there is in fact unjust enrichment, shall alter this requirement, or be deemed to constitute a waiver or estoppel, or be the basis for any claim to an increase in the Contractor's Fee or to an extension of the Contract Time. Owner shall not unreasonable withhold or delay approval of any Change Order or CCD submitted in accordance with the terms of this Addendum.

14.6     Minor Changes. Contractor may make minor changes in the Work so long as such changes (i) are consistent with the intent of the Contract Documents, (ii) do not impact the anticipated Cost of the Work or require an adjustment in the Contract Time, and (iii) do not materially and adversely affect the Project. Contractor shall promptly inform Owner and Owner's Representative in writing of any such minor changes.

15.    CLAIMS

15.1     Definition. A Claim is a demand or assertion by one of the parties seeking, as a matter of right, payment of money, a change in the Contract Time, or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. The responsibility to substantiate Claims shall rest with the party making the Claim. This Section 15.1 does not require the Owner to file a Claim in order to impose liquidated damages in accordance with the Contract Documents.

15.2     Notice of Claim. Claims by either the Owner or Contractor, where the condition giving rise to the Claim is first discovered prior to expiration of the period for correction of the Work set forth in Section 8.2, shall be initiated by notice to the other party with a copy sent to Owner's Representative. Claims by either party under this Section 15.2 shall be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later.

15.3     Presentation of Claim. Within thirty (30) days of giving notice of a Claim, the party asserting the claim shall provide the other party with documentation and any relevant analysis supporting the Claim.

17



15.4    Work to Proceed Pending Claim Resolution. Pending resolution of a Claim, Contractor shall proceed diligently with performance of the Project and Owner shall continue to make payments in accordance with the Contract Documents.

15.5    Condition Precedent. The Claims procedures set forth in this Section 15 are a condition precedent to undertaking any legal proceeding with respect to any Claim. No arbitration, lawsuit or other legal proceeding may ensue on a Claim until and unless all requirements of this section regarding Claims have been satisfied.

16.    DISPUTE RESOLUTION

16.1    Good Faith Efforts. The parties agree to use good faith efforts to reach resolution of any and all Claim(s) and other disputes ("Disputes").

16.2    Judicial Remedy. Disputes shall be resolved solely by litigation in Howard County, Maryland. EACH PARTY HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT THAT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION OF A DISPUTE. Each party hereby (i) certifies that no representative, agent or attorney of the other has represented, expressly or otherwise, that the other would not, in the event of litigation of a dispute, seek to enforce the foregoing waiver and (ii) acknowledges that it has been induced to enter into this Agreement by, among other things, the mutual waivers and certifications in this subsection.

16.3    Governing Law. This Agreement and any disputes arising out of it shall be governed by the laws of the State of Maryland applicable to contracts made in such jurisdiction.

16.4    Statutes of Limitation. Nothing in this Agreement is intended to or does alter any statute of limitation or of repose provided by law.

17.    UNFORESEEN SITE CONDITIONS. Notwithstanding any other provisions of this Agreement, Contractor shall notify Owner and Owner's Representative in writing immediately, and before such conditions are disturbed, of (i) latent physical conditions at the Property differing materially from those indicated in the Contract Documents or (ii) previously unknown physical or other conditions at the Property of an unusual nature, differing materially from those ordinarily encountered and generally recognized as inherent in work of the character provided for in this Agreement. Owner shall investigate the alleged conditions. If Owner determines that such conditions do so materially differ in a manner which Contractor could not have anticipated notwithstanding its obligation as set forth herein to diligently review and/or inspect the Contract Documents and the Property and all other available information regarding the Property, and such conditions cause an increase or decrease in the time of performance of this Agreement, Owner shall make an equitable and commercially reasonable adjustment in the Contract Time in accordance with the provisions herein relating to changed Work.

18



18.    RISK OF LOSS. Contractor assumes all risk of loss from damage and destruction to materials and equipment to be incorporated into the Project until Final Completion except as may be paid under any insurance policy.

19.    INDEMNITY

19.1    General Liability. To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses, and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss, or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them, or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss, or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity that would otherwise exist as to a party or person described in this Section 19.1.

Mechanics Liens. Contractor shall defend, indemnify and hold harmless Owner from and against any mechanic's lien action commenced against the Property and Project in connection with the Work to the extent that Owner is not in default of its payment obligations under the Contract Documents and has paid Contractor for the subject matter of the mechanic's lien action. Upon receiving written notice from Owner of a mechanic's lien action that Contractor is obligated under this Section to defend, indemnify and hold Owner harmless from, Contractor shall within five (5) business days cause the mechanic's lien action to be dismissed with prejudice or file a motion to post court approved security to release the Property and Project from the mechanic's lien and diligently pursue such motion until the Property and Project have been released from the mechanic's lien claim. Until the time that all such liens for which Contractor is responsible under this Section are removed from title, Owner shall be entitled to withhold from payment otherwise due to Contractor an amount equal to one hundred twenty-five percent (125%) of the aggregate amount of such liens.

19.2    Survival of Terms. Contractor's defense and indemnity obligations hereunder shall survive the abandonment, completion or termination of this Agreement.

20.    INSURANCE Contractor shall provide and maintain the insurance set forth on the Certificate of Insurance attached as Exhibit 2 hereto.

21.    BONDS. No bonds shall be required from the Contractor.

22.    SUBCONTRACTS

22.1    Definition. "Subcontractor" means a person or entity having a direct contract with Contractor to furnish services, labor, materials or equipment to the

19



Project, including but not limited to, subcontractors, suppliers or vendors. "Material Subcontractor" means a Subcontractor that has provided goods or services to the Project with an aggregate value in excess of \$5,000.00.

22.2    Third Party Beneficiary. Nothing contained in the Contract Documents shall create a contractual relationship between Owner and any Subcontractor.

## 23.    SURVEYS AND INSPECTION

23.1    Access. Owner, Owner's Representative, and public authorities shall have access to the Work at all times, and Contractor shall facilitate such access.

23.2    Tests, Inspections, Etc. Surveys, inspections and approvals of portions of the Work required by the Contract Documents or by Applicable Laws shall be procured by Contractor, and made at an appropriate time so as to avoid delay in the Work. Contractor shall give Owner and Owner's Representative timely written notice of its readiness for inspection and of when and where such inspection shall be made, and shall generally coordinate such testing and inspection with Owner and Architect.

23.3    Uncovering of Work. If a portion of the Work requiring inspection is covered prior to such inspection, it must be uncovered for inspection and covered thereafter at Contractor's sole expense.

23.4    Noncompliance of Work. Notwithstanding any other provision herein, if inspection by any governmental authority reveals failure of a portion of the Work to comply with the Contract Documents, all costs to remedy such noncompliance and for any reinspections made necessary by such failure shall be at Contractor's sole expense.

23.5    Certificates. Required certificates of inspection, completion and occupancy shall, unless otherwise required by the Contract Documents, be secured by Contractor and promptly delivered to Owner and Owner's Representative.

24.    CORRECTION OF WORK Upon receipt of written notice from Owner given within the applicable warranty period set forth in Section 8.2, Contractor shall promptly correct Work which does not conform to the Contract Documents, or which constitutes Defective Work or other breach of warranty, or which is otherwise rejected by Owner or governmental authorities, except as noted in Section 6.10 of the Agreement as modified by Section 34(i) of this Addendum. All costs thereof, including but not limited to additional testing and inspection and compensation for engineering or other design consultants' services and expenses made necessary thereby, shall be borne by Contractor. Should Contractor fail to commence corrections within a reasonable amount of time following receipt of written notice from Owner but in no event to exceed ten (10) working days or, in the event of an emergency, within twenty-four (24) hours, or should it fail to diligently pursue such correction of Work, Owner may correct it and Contractor shall reimburse Owner, as applicable, for all reasonably necessary reasonable expenses incurred thereby, including but not limited to additional testing and inspection and compensation for engineering and other design consultants' services and expenses made

20



necessary thereby. Owner shall be entitled to withhold the total of all such expenses from any payment otherwise due Contractor. Where the remaining contract balance is not sufficient to pay all such expenses, Contractor shall reimburse Owner for any sum owed within thirty (30) days of written demand therefor.

Nothing contained in this Section 24 shall be construed to establish a period of limitation with respect to other obligations which Contractor might have under the Contract Documents or Applicable Laws.

### 25. RIGHT TO STOP WORK

25.1 Contractor's Right to Stop Work. If Owner fails to pay undisputed sums owing Contractor within five (5) days of when such payment is due, Contractor may stop Work following five (5) days written notice to Owner if payment is not made within such five (5) day cure period.

25.2 Owner's Right to Stop Work. If the Contractor fails to correct Work that is not in accordance with the requirements of the Contract Documents as required by Section 24 or repeatedly fails to carry out Work in accordance with the Contract Documents, the Owner may issue a written order to the Contractor to stop the Work, or any portion thereof, until the cause for such order has been eliminated. The right of Owner to stop the Work shall not give rise to a duty on the part of Owner to exercise this right for the benefit of Contractor or any other person or entity.

### 26. TEMPORARY SUSPENSION OF WORK

26.1 Temporary Suspension of Work. Twelve (12) months after the date of commencement of the Work, not more than twice in any consecutive twelve (12) month period, Owner may, upon written notice, order Contractor to suspend or delay performance of the Work for such period of time as Owner may require, but not to exceed sixty (60) days.

26.2 Response to Suspension of Work. Upon receipt of written notice from Owner of such suspension or delay, Contractor shall cease operations as directed by Owner in the notice and take actions necessary, or as Owner directs, for the protection and preservation of the Work.

26.3 Payment. In case of such suspension or delay, Contractor shall be entitled to an equitable adjustment of the Contractor's Fee and the Contract Time unless Contractor is or otherwise would have been responsible for the suspension or delay, or Contractor would be denied such equitable adjustment under another provision of this Agreement.

21



26.4    Impact on Subcontractors. Contractor has advised Owner that suspension of the Work by Owner may result in loss of availability of specific Subcontractors causing increased costs and delays.

27.    TERMINATION

27.1    Termination for Cause

27.1.1  Owner may, upon ten (10) days written notice and Contractor's failure to cure within that time period to Owner's reasonable satisfaction, terminate this Agreement for cause if Contractor:

(a)    repeatedly refuses or fails to supply enough properly skilled workers or equipment or materials to the Project;

(b)    fails to timely make payments to Subcontractors or laborers for their services from amounts paid to Contractor by Owner for such services;

(c)    disregards Applicable Law for which Contractor is responsible;

(d)    On or after 24 months from the Date of Commencement, it reasonably appears to Owner to be unable to achieve Substantial Completion within the Contract Time

(e)    is otherwise in material breach of the Contract Documents; or

(f)    makes any general arrangement or assignment for the benefit of creditors; files a petition (or a petition is filed against it) to have it adjudged a bankrupt or for reorganization or arrangement under any law relating to bankruptcy; has a trustee or receiver appointed to take possession of substantially all of its assets; suffers the attachment, execution or other judicial seizure of substantially all of its assets; or fails to pay, or admits it is unable to pay, its debts as they become due.

27.1.2  Upon receipt of written notice from Owner of such termination for cause, Contractor shall cease operations as directed by Owner in the notice, and take all actions necessary, or as Owner directs, for the protection and preservation of the Work.

27.1.3  Upon termination for cause, Owner may complete the Work by whatever reasonable means it deems expedient, including accepting assignment of subcontracts, and Contractor shall not be entitled to receive any further payment which may be otherwise due until such services are complete.

22



### 27.2 Termination for Convenience

27.2.1 Owner may upon ten (10) days written notice, (i) in the event of the death or serious disability of Paul Lichter or (ii) at any time on or after eighteen (18) months from the Date of Commencement for any reason, terminate this Agreement for convenience and not for cause.

27.2.2 Upon receipt of written notice from Owner of such termination for convenience, Contractor shall cease operations as directed by Owner in the notice. take all actions necessary, or as Owner directs, for the protection and preservation of the Work, and except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing subcontracts and purchase orders and enter into no further subcontracts or purchase orders.

27.2.3 In case of such termination for convenience, Contractor shall be entitled to recover payment for all Work performed to the date of termination and any actual costs incurred directly relating to termination. In no event shall the sum paid Contractor under this provision include profit or overhead for Work not performed.

27.2.4 In the event Owner assigns the Agreement other than in accordance with paragraph 34(s) of this Addendum, Contractor shall have the right to terminate the Agreement for its convenience and without cause upon ten (10) days' written notice to the Owner and assignee. In such event, Contractor shall be entitled to be paid for all Work performed through the effective date of the termination.

27.3 No Waiver. By exercising its right to terminate, Owner does not waive any of its rights. remedies or damages against Contractor arising out of any Work performed prior to termination or under this Agreement or by law.

### 28. ASSIGNMENT

28.1 Assignment of Contract. Except in the event of the death or serious disability of Paul Lichter, Contractor shall not, without the prior written consent of Owner. assign, sell, trade or transfer, in whole or part, the performance of this Agreement or any monies due to become due Contractor hereunder. At the option of the Owner, a transfer of control of the Contractor occurring after the date hereof shall be treated as an assignment of this Agreement without the Owner's consent.

### 29. MISCELLANEOUS PROVISIONS

29.1 Survival. Contractor's representations. warranties and covenants. including but not limited to its obligations with respect to insurance. defense and indemnity, warranty. bonds, and document preservation shall continue in full force and effect throughout the performance of the Work, and will survive completion of the Work or abandonment or termination of the Agreement.

23



29.2   Entire Agreement. The Contract Documents represent the entire and integrated agreement between the parties hereto and supersedes prior or contemporaneous communications, negotiations, representations or agreements, either written or oral. This Addendum may not be modified except by an instrument in writing signed by the party against whom enforcement of the modification is sought.

29.3   Successors and Assigns. Owner and Contractor each binds itself, and its successors and permitted assigns to the other party hereto and to the successors and permitted assigns of such other party with respect to all covenants, agreements and obligations contained in the Contract Documents.

29.4   Rights and Obligations. The duties and obligations imposed by the Contract Documents and the rights and remedies available thereunder shall be in addition to and not in limitation of any duties, obligations, rights and remedies otherwise imposed or available by law.

29.5   Waiver. Waiver by one party of the performance of any right, covenant, condition or promise of the other party shall not invalidate this Agreement, nor shall it be considered to be a waiver by such party of any other right, covenant, condition or promise contained herein.

29.6   Joint Drafting. The parties acknowledge that each party has participated in the negotiating and drafting of the Contract Documents. The Contract Documents shall not be deemed to have been drafted by any one party, and shall not be construed more strongly against any party by reason of having drafted it.

29.7   No Third Party Beneficiaries. The agreement reflected in The Contract Documents, is made solely for the benefit of the parties hereto, and is not intended to be, and is not, made for the benefit of any third parties, except as expressly stated herein.

29.8   Counterparts. This Addendum may be executed in counterparts and the counterparts may be exchanged in PDF or other electronic format.

29.9   Owner's Representative. Drew Padgett shall act as the initial Owner's representative with respect to the Project (the "Owner's Representative") and shall be authorized to make decisions on behalf of Owner except as otherwise specified by Owner in written notice to the Contractor. Any limitation on the Owner's Representative's authority set forth in a written notice from Owner to Contractor shall be prospective and shall be effective as of the date the notice is received by Contractor. Owner may replace the Owner's Representative at any time by notice to the Contractor.

29.10   Architect.   In the event Owner terminates the services of Levin/Brown & Associates, Inc., any withholding of payment by Owner from Contractor pursuant to Section 5.4 of this Addendum must be mutually agreed upon between Contractor and Owner's Representative.

24



30. NOTICES. All formal notices required or permitted to be given under this Addendum shall be given in writing and shall be deemed to have been given if delivered by hand or by certified mail. postage prepaid, or via a reputable overnight delivery service to the following:

If to Owner:

CTLC, Inc. **8115 Maple Lawn Blvd Suite 356 Fulton MD 20759**

With a copy (which will constitute part of the notice) provided to the Owner's Representative

If to Contractor:

J. Paul Builders, L.L.C.
P.O. Box 169
Stevenson. Maryland 21153

## 31. SUBCONTRACTORS.

31.1 Selection of Subcontractors. The Contractor shall deliver to the Owner and the Owner's Representative all bids from any potential subcontractors and suppliers with an in indication of which bids the Contractor recommends be accepted. The Owner has the right to review the Contractor's list of proposed subcontractors and suppliers and to object to any subcontractor or supplier. If Owner compels Contractor to use a Subcontractor that is not satisfactory to Contractor, the Owner will have no claim against the Contractor for any deficiency in performance by such Subcontractor.

31.2 Subcontract Terms. Subcontractor proposals shall conform to the Applicable Payment provisions of the Contract Documents and shall not be awarded on the basis of cost plus a fee without Owner's prior written approval. Contractor shall provide to the Owner an electronic copy of the fully executed proposal with each Subcontractor.

32. ACCOUNTING RECORDS. Contractor shall perform the Work on an "open book" basis allowing Owner to audit and copy the Contractor's records documenting the Cost of the Work. Contractor shall keep full and detailed records related to the Cost of the Work. and exercise such controls, as may be necessary for the proper financial management under the Contract Documents and to substantiate all costs incurred included in the Cost of the Work.

33. INDEMNIFY OF CONTRACTOR. The Owner shall indemnify and hold harmless Contractor from any claim. damage or experience (including reasonable attorney's fees) arising out of a claim by the Initial Architect that the use of the Initial



Architectural Drawings (as originally prepared or modified by Architect)by Contractor with respect to the Project violates any intellectual property rights of the Initial Architect.

34.    EDITS TO AGREEMENT. In addition to the modifications to the Agreement made by the foregoing terms of this Addendum, the sections of and the Exhibits to the Agreement referenced below are modified as follows.

a) In §4.2, the Builder's Fee shall be calculated as a percentage of the Cost of the Work, excluding Builder supervision charges identified Exhibit E, 1.(b) and Builder insurance premiums. The Builder's Fee shall be twelve percent (12%) of the Cost of the Work up to Twelve Million Five Hundred Thousand Dollars ($12,500,000) of Cost of the Work (excluding the Builder's Fee). The Builder's Fee on Cost of the Work exceeding $12,500,000, shall be ten percent (10%).

b) In §5.1, in lieu of an earnest money deposit Owner shall fund the Escrow Account as specified in Section 5.6 of this Addendum.

c) In §5.5. the period to dispute any invoice or draw request shall be thirty (30) days from the date of Buyer's receipt of the invoice or draw request with required supporting documentation.

d) In §5.6, in the event of any dispute regarding the value of the disputed Work such value will be determined by an independent construction estimator jointly selected by Owner and Contractor. In the event they cannot agree on an independent construction estimator, the independent construction estimator shall be selected by the American Arbitration Association.

e) In §5.9, if Buyer believes that there are items of Work that need to be completed that the Builder does not agree to put on the Punch list, Buyer may withhold from the final payment an amount equal to 1.5 times the value of the disputed items, as mutually agreed or as determined using the procedures set forth in Section 5.6 of the Agreement as modified by this Addendum, until the dispute is resolved.

f) In §6.6, no deviations from the Scope of Work/the Plans and specifications shall be made without prior written consent from Owner or Owner's representative.

g) In §6.7, Builder (and not Buyer) shall be responsible for dealing with subcontractors or suppliers to arrange for required services.

h) In §6.9, except as noted in Section 25.1 of this Addendum, Builder shall not be permitted to stop the Work unless Buyer is in material breach of the Agreement and such breach has not been cured within five (5) business days after written notice specifying the breach.

26    

i) In §6.10, Builder shall be obligated at its cost to remedy up to $7,500 of any cosmetic issues not caused by Buyer during the first year after final completion.

j) Section 7.6 is modified to provide that Buyer shall not occupy the Property until a certificate of occupancy for the Project has been issued, Buyer has agreed upon a punchlist with Contractor (except as noted in paragraph 34(e) of this Addendum) and all amounts due to Contractor under the Contract Documents, except those disputed in accordance with the terms of the Contract Documents, have been paid to Contractor.

k) Section 7.5 will not limit Buyer's ability to transfer the Buyer's Property after twenty four (24) months from the date of commencement of the Work, such period to be increased on a day for day basis for Buyer delays and for Buyer suspensions of the Work. Section 7.5 will not limit Buyer's ability to encumber the Buyer's Property at any time.

l) In §7.7, the Buyer indemnity for third party claims "occurring during a Project site visit" shall not apply to the extent such claims are covered by insurance the Builder is obligated to maintain by the Contract Documents or is due to the negligence of Builder, its subcontractors or agents, or breach of the Contract Documents by Builder.

m) Section 7.9 requiring that Buyer provide evidence of construction financing is deleted recognizing that §7.11 obligates Buyer to provide Builder evidence of financial ability to pay.

n) In §7.10, the time period to provide evidence of financial ability is increased from five (5) to ten (10) business days from Builder's written request.

o) In §7.12, the Buyer's indemnification obligation shall not apply to the extent the suit or action commercial against Builder is covered by insurance the Builder is obligated to maintain under the Contract Documents or arises out of the negligent act of Builder, its subcontractors or agents or breach of the Contract Documents by Builder.

p) In §9.3, Builder not Buyer assumes the risk of loss for equipment and materials stored offsite by Builder, except to the extent that the specific vendor is required by the Contract Documents or because there is only a single source for the selection made by Owner or Owner's Representative and the loss is not covered by applicable insurance

q) In §11.2, the venue for any litigation under the Contract Documents shall be Howard County Maryland not Baltimore County, Maryland.

r) Nothing in Exhibit B (Exclusions) shall limit Builder's obligations to correct Work that constitutes Defective Work during any warranty period.

27



s) In §12.6, after twenty four (24) months from the date of commencement of the Work, such period to be increased on a day for day basis for Owner caused delays or Owner suspensions of the Work, Buyer shall be permitted to assign the Contract Documents to any purchaser of the Property provided Buyer remains liable to Builder under the Contract Documents and Contractor is permitted to recover from the assignee\purchaser additional expenses arising out of any increased administrative burdens imposed on the Contractor by the assignee\purchaser.

t) In determining costs to be reimbursed under Exhibit E, costs related to the following items shall not be included in the Cost of the Work and therefore will be excluded:

1. Salaries and other compensation of the Builder's personnel stationed at the Builder's principal office or offices other than the site office.

2. Bonuses, profit sharing, incentive compensation, and any other discretionary payments, paid to anyone hired by the Builder or paid to any subcontractor or vendor, unless the Buyer has provided prior approval;

3. Expenses of the Contractor's principal office and offices other than the site office;

4. Overhead and general expenses, except as may be expressly included in Exhibit E;

5. The Builder's capital expenses, including interest on the Builder's capital employed for the Work;

6. Costs due to the negligence of, or failure to fulfill a specific responsibility of the Contract Documents by, the Builder, its subcontractors, and suppliers, or anyone directly or indirectly employed by any of them or for whose acts any of them may be liable;

7. Overtime wages or salaries (and fringe benefits related thereto) incurred by the Builder as a result of the Builder's failure to performed the Work in a timely manner in accordant with the Construction Schedule, unless the Builder has received Buyer's prior written consent to incur such overtime;

8. All moving costs associated with the relocation of Builder personnel for the purpose of staffing the Project;

9. Any of Builder's federal, state, or local income taxes or franchise, personal or real property taxes or the cost of any licenses obtained for the general conduct of Builder's business and not specifically for the Project;

10. The cost of performing warranty or corrective Work provided under the Contract Documents that does not exceed $7,500;

11. Cost relating to the default of any subcontractor or supplier, unless the default results from death or disability of the majority owner of the subcontractor or supplier, and in such event Contractor shall use good faith efforts to minimize such costs;

12. Replacement or payment for lost or stolen machinery and equipment except for the deductibles associated with insurance for such losses, provided, however, such deductible shall be a reimbursable cost only if the loss is not

28



due to the fault or neglect of the Builder, a subcontractor reimbursable cost or someone for who either may be responsible and Builder; and

13  Any cost not specifically and expressly described in Exhibit E.

IN WITNESS WHEREOF, this Addendum has been executed effective as of the date first above written.

Owner:                                  Contractor:
CTLC, Inc.                              J. PAUL BUILDERS, L.L.C.

By: _Sandra Gner_          By: _____ (member)
Name                                   Name

ENUMERATION OF EXHIBITS.  The following are exhibits to this Addendum:

Exhibit 1     (Section 5.1) Application for Payment Form.

Exhibit 2     (Section 20) Contractor's Certificate of Insurance.