**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(BALTIMORE DIVISION)**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CTLC, LLC, | ) | Case No. 23-15444 (DER) |
| | ) | Chapter 11 |
| Debtor. | ) | |
| _____ | ) | |

**OBJECTION OF A. PERRY BUILDS & DESIGN, P.C. TO
DEBTOR'S CHAPTER 11 PLAN**

A. Perry Builds & Design, P.C. ("**A. Perry**"), by and through its undersigned counsel, hereby files this objection (the "**Objection**") to the *Chapter 11 Plan* [Docket No. 75] (as amended, the "**Plan**") filed by the above-captioned debtor (the "**Debtor**"). In support of this Objection, A. Perry respectfully states as follows:

**PRELIMINARY STATEMENT**

The Debtor's Plan is a disguised plan of liquidation that is based entirely on its success on the speculative "as is, where is" sale or contingent refinancing of an unfinished 25,000 square foot mansion. As discussed herein, *Debtor cannot meet its burden of establishing its likelihood of success by a preponderance of the evidence of its ability to sell or refinance the Residence (defined below). In fact, Debtor will not be able to proffer any evidence to show it is likely to succeed in its sale or refinance efforts.* Rather, Debtor wants to force its creditors to wait for up to two years while it decides what to do with the Residence. Debtor also has not, and cannot, make any showing as to how it will afford the necessary repairs to maximize the sale of the Residence, let alone unanticipated repairs or damages caused by the Residence sitting vacant for an extended period of time, or tax obligations for the next several years.

In addition, Debtor's reorganization is highly unlikely because the Plan is not economically feasible. A. Perry does not believe that the Plan could meet the "cramdown" requirements of

section 1129(b) of the Bankruptcy Code because it fails to meet the requirements of section 1129(a)(10) – making 1129(b) unavailable. Based on the foregoing, the proposed Plan is not feasible and is patently unconfirmable. Accordingly, the Court should deny confirmation of the Plan.

## FACTUAL BACKGROUND

### A.  A. Perry Was Contractually Retained Prepetition to Design the Residence

1. Prior to the bankruptcy filing, the Debtor's business operations were focused on the sale of multiple lots of real property owned by the Debtor, including but not limited to the real property known as 15125 Devlin Drive, Glenelg, Maryland 21737 (the "**Residence**"). The Residence was being developed by the Debtor for the purpose of building a substantial residence for the Debtor's sole member, Sandra Grier ("**Sandra**"), and her husband, Michael Grier ("**Michael**" and collectively with Sandra, the "**Griers**" or "**Plan Proponents**").

2. On or about August 2, 2023 (the "**Petition Date**"), facing a foreclosure action on the Residence, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code to stop the foreclosure action. In its schedules, Debtor listed A. Perry as a creditor with a nonpriority unsecured claim in its schedules. *See* Docket No. 13; pg. 12 of 23.

3. Prior to the Petition Date, on or about July 2, 2014, the Griers entered into a contract with Arrisbrook, LLC ("**Arrisbrook**"), a Maryland builder, to provide design build services for a new home located in Glenelg, Maryland on Lot #6, consisting of approximately 38.162 acres, in the Howard County subdivision known as "Cattail Overlook" (the "**Arrisbrook/Grier Contract**"). A true and accurate copy of the Arrisbrook/Grier Contract is attached to A. Perry's proof of claim as Exhibit "3".[1]

---

[1] A. Perry's proof of claim (the "**Proof of Claim**") was filed in connection with this Objection. A. Perry believes it has an agreement with the Debtor regarding the timely filing of A. Perry's proof of claim, but it is waiting for the

4. The Arrisbrook/Grier Contract identified A. Perry as the architect for the project. Arrisbrook, Grier, and A. Perry were all parties and signatories to the Arrisbrook/Grier Contract. A. Perry's scope of work under the Arrisbrook/Grier Contract included, among other things, the creation of construction documents, drawings, and design (the "**Architectural Services**").

5. In 2014, A. Perry created an original design which it designated "Proposed Residence 15125 Devlin Drive, Glenelg, Maryland 21737". A copy of "Proposed Residence 15125 Devlin Drive, Glenelg, Maryland 21737" Certificate of Registration is attached to A. Perry's proof of claim as Exhibit "4". The "Proposed Residence 15125 Devlin Drive, Glenelg, Maryland 21737" is a wholly original work of architecture and copyrightable subject matter under the laws of the United States. A. Perry has duly complied in all respects with the provisions of the Copyright Laws of the United States and has secured the exclusive rights and privileges in and to said design, and A. Perry requested and has received from the Register of Copyrights a Certificate of Registration. At all relevant times, A. Perry has been, and is now, the sole proprietor of all rights, title, and interest in the copyright and is the sole owner of the right to exploit the copyright of the exclusive design "Proposed Residence 15125 Devlin Drive, Glenelg, Maryland 21737". A copy of "Proposed Residence 15125 Devlin Drive, Glenelg, Maryland 21737" Certificate of Registration is attached to A. Perry's proof of claim as Exhibit "5".

B. **Subsequently, Griers Created the Debtor to Hold Title to the Residence**

6. Sometime after the execution of the Arrisbrook/Grier Contract, the Griers formed the Debtor entity for the purpose of holding title to the Residence and to manage the development

---

Debtor's counsel to review the proposed language of a joint motion. Notwithstanding its agreement with Debtor's counsel, it Debtor's counsel does not respond with comments to the proposed joint motion, A. Perry unilaterally will seek an order of this Court deeming its Proof of Claim to be timely filed.

of the Cattail Overlook subdivision. To date, neither the Griers nor Debtor has paid A. Perry all of the fees owed for the Architectural Services.

7. On or about January 18, 2019, A. Perry terminated the Arrisbrook/Grier Contract.

**C.   Debtor Retained J. Paul and Levin/Brown to Complete Construction of the Residence**

8. On or about January 13, 2020, Debtor entered into a separate contract with J. Paul Builders, LLC ("**J. Paul**") to complete the construction of the Grier residence (the "**CTLC/J. Pual Contract**"). A copy of the CTLC/J. Paul Contract is attached to the A. Perry proof of claim as **Exhibit "6"**. Under the CTLC/J. Paul Contract, J. Paul was to act as the general contractor and Levin/Brown Associates, Inc. ("**Levin/Brown**") was hired as the architect.

9. A. Perry contends the Debtor made unauthorized copies of A. Perry's copyrighted work and provided J. Paul and with access to A. Perry's copyright protected design to complete the project. Upon information and belief, J. Paul made additional copies of A. Perry's copyright protected design and/or created derivative work based of the protected design.

**D.   A. Perry Commenced the Copyright Action to Determine Whether Parties Violated A. Perry's Federally Protected Copyright Rights Regarding Its Architectural Services Relating to the Residence**

10. On March 2, 2023, A. Perry filed a prepetition civil case pending in the United States District Court for the District of Maryland, captioned *A. Perry Designs & Builds, P.C. v. J. Paul Builders, LLC*, Civil Action No.: 1:23-cv-00828-JRR (the "**Copyright Action**"), in which A. Perry asserts claims against J. Paul alleging copyright infringement.

11. On April 18, 2023, J. Paul filed its third-party complaint and counterclaim against the Debtor in the Copyright Action alleging Debtor is required to indemnify and hold J. Paul harmless against A. Perry's copyright infringement claim.

12. On May 26, 2023, the Debtor filed its answer to J. Paul's third-party complaint and counterclaim.

13. On the Petition Date, Debtor filed this bankruptcy case, effectively staying the Copyright Action.

**E.  J. Paul's Efforts to Lift the Automatic Stay to Allow the Copyright Action to Proceed**

14. On September 25, 2023, J. Paul filed its motion for relief from the automatic stay with this Court ("**J. Paul's Lift Stay Motion**"). [*See*, Doc. No. 21]. On November 16, 2023, the District Court suspended all deadlines previously set forth pending J. Paul's Lift Stay Motion. The hearing on J. Paul' Lift Stay Motion was originally set for January 22, 2024 [Doc. 59], then continued to February 15, 2024 [Doc. 64], and finally continued J. Paul's Lift Stay Motion until May 9, 2024.

15. J. Paul alleged the Debtor has a contractual duty to indemnify J. Paul for any damages to A. Perry.  Thus, according to J. Paul, any liability incurred by J. Paul as a result of the Copyright Action shall result in an allowed unliquidated claim against the Debtor's estate. In addition to the potential indemnification liability, A. Perry seeks relief from the automatic stay to file an amended complaint naming Debtor as a defendant and bring claims of copyright infringement and derivative use. By agreement with Debtor's counsel, the treatment of A. Perry's claim will be addressed in this Bankruptcy Case.

16. Prior to the May 9, 2024 hearing on J. Paul's Lift Stay Motion, J. Paul, the Debtor, and A. Perry signed off on a consent order (the "**Consent Order**") resolving the J. Paul Lift Stay Motion. Specifically, the Consent Order modified the automatic stay "to permit the resumption and completion of litigation in the civil case pending in the United States District Court for the District of Maryland captioned *A. Perry Designs & Builds, P.C. v. J. Paul Builders, LLC*, Civil

Action No. 1:23-cv-00828-JRR [the Copyright Action] as to all parties to that case, including the Debtor."

17. In addition, the Consent Order provides that "the resolution of the claims against the Debtor in the Federal District Case shall be binding and determinative of (i) any allowed claim of J. Paul Builders, LLC against the Debtor with respect to the alleged indemnification obligations asserted against the Debtor set forth in the Proof of Claim No. 5, so as to resolve the Debtor's objection to such portions of the claim of J. Paul Builders, LLC, and (ii) any allowed claim of any other party against the Debtor with respect to the claims asserted in the [Copyright Action]…."

18. As of filing this Objection, the Consent Order has not yet been entered.

**F.     Debtor's Proposed Plan Contemplates Sale or Refinancing**

19. On February 2, 2024, the Debtor filed its initial Disclosure Statement [Docket No. 76] and the Plan.

20. On April 12, 2024, the Debtor agreed to amend the Disclosure Statement to provide specified further information in response to an objection filed by J. Paul.

21. On April 3, 2024, the Court entered an *Order Approving Stipulation Resolving Objections to Disclosure Statement* [Docket No. 95]. The Debtor thereafter filed an Amended Disclosure Statement on April 12, 2024.

22. On April 15, 2024, the Court entered an *Order Approving Disclosure Statement and Setting Hearing on Confirmation of Plan* [Docket No. 98]. Hearing on confirmation of the Plan is scheduled for June 5, 2024.

23. By the Plan, the Debtor seeks to enjoin creditors from taking legal action against the Residence for as long as an additional two (2) years while the Debtor potentially sells or refinances the Residence. For the reasons set forth below, the Court should deny confirmation of

the Plan and convert this case to Chapter 7 so that a trustee can promptly and responsibly sell the Residence and pay creditors "as soon as possible".

## PLAN OBJECTIONS

### A. The Plan Is Not Feasible under Section 1129(a)(11) of the Bankruptcy Code Because Its Success Hinges upon Too Many Speculative Contingencies.

24. As a threshold consideration, the Plan is unconfirmable because its success relies upon the speculative sale or contingent refinancing for which Debtor has not and cannot show any reasonable likelihood of success. Section 1129(a)(11) of the Bankruptcy Code requires that a plan of reorganization be feasible ("confirmation of the plan is not likely to be followed by the liquidation or need for further financial reorganization, of the debtor or a successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan"). *Id.*

25. The feasibility requirement is a critical factor for every proposed chapter 11 plan. *See In re Travelstead*, 227 B.R. 638, 650-51 (D. Md. 1998); *In re Bashas' Inc.*, 437 B.R. 874, 915 (Bankr. D. Ariz. 2010) (stating that feasibility "is the most important element of § 1129(a)"). The court "should 'scrutinize the plan carefully to determine whether it offers a reasonable prospect of success and is workable.'" *See In re Travelstead*, 227 B.R. at 651 (quoting *In re Monnier Bros.*, 755 F.2d 1336, 1341 (8th Cir. 1985)). "The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." *Matter of Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1382 (9th Cir. 1985) (quoting 5 *Collier on Bankruptcy* ¶ 1129.02[11] at 1129-34 (15th ed. 1984)); *see also In re Pikes Peak Water Co.*, 779 F.2d 1456, 1460 (01th Cir. 1985). "Success need not be guaranteed," however – the Plan must offer "a reasonable assurance of success." *In re Travelstead*, 227 B.R. at 651 (quoting *In re Johns-Manville Corp.*, 843 F.2d 656, 649 (2d Cir. 1988)); *see also In re Om Shivai, Inc.*, 447 B.R. 459, 463 (Bankr. D.S.C.

2011)("[S]heer optimism and hopefulness, without more, is not sufficient to support a finding of feasibility.").

26. While success of a plan need not be guaranteed, the proposed plan must be present "a realistic and workable framework" with a reasonable likelihood of succeeding on its own. *In re Am. Capital Equip., LLC*, 688 F.3d 145, 156 (3rd Cir. 2012) (citations omitted).

27. Here, the proposed Plan fails under Section 1129(a)(11) because the Plan projections do not demonstrate Plan feasibility. As a threshold matter, the only documents that may construe "projections" attached to the Amended Disclosure Statement are a project schedule dating from August 2023 through July 2024, which has an estimated cost/budget of $925,000. These costs, along with *any* other costs associated with the Residence, are to be borne by the Plan Proponents, including but not limited to the Griers and the Grier Revocable Trust. There is zero documentation or insight whatsoever regarding whether the Plan Proponents have the financial wherewithal to cover the $925,000 budgeted expenses or the likely cost overruns associated with *any* construction project of this magnitude. Nor does the Plan include any documentation (expert reports, work estimates, etc.) which could support the proposed timing for completion of the scheduled work. Failure to account for this meaningful cash outlay is a critical omission, especially considering that by Debtor's own estimate, the budgeted costs will be $925,000.

28. Further, if the Debtor expects creditors to sit by idly, the Debtor should be required to escrow these budgeted expenses, as well as any amounts due for real estate taxes, and some additional expenses to pay for potential mechanics' liens. Yet, the Plan does not provide for any escrowing mechanism.

29. Rather than making a good faith effort to estimate the universe of potential costs, Debtor simply waives its hands and prevaricates saying, alternatively that it will sell or refinance the Residence.

30. The Plan is nothing more than a hope to sell the Residence. While Debtor identifies a broker, it could have retained a broker months ago, and could have been actively marketing the Residence for the past eight months.

31. The same analysis holds true for potential refinancing partners. The Debtor has an obligation to provide more information regarding the parties it has contacted regarding any potential refinancing and the current status of any negotiations with potential refinancing sources, including rejections.

32. Debtor does not propose to reorganize any ongoing business, but instead seeks to advance a plan based solely on its ability to sell an unfinished mansion in the highest housing costs of all time. The average 30-year mortgage rate in the U.S., which was below 3% until late 2021, peaked at 7.79% in late October 2023. That rate represented the highest mortgage rate since November 2000. The result is more costly borrowing, which can dampen housing market activity. Rates declined from October's peaks, down to 6.60% in February, but are now back above 7%. The upturn in mortgage rates may reflect expectation that the environment will not accommodate meaningful Federal interest rate cuts anytime soon. In other words, it remains more expensive than any time in the last 24 years for a buyer to purchase a home, especially a mansion of this size, or for the Plan Proponents to refinance the Residence, which in its current status may not qualify for financing since there is not any party living there.

33. The Plan, a "long shot" in the kindest of terms, is premised entirely upon Debtor's "roll of the dice" that it will find a buyer and that the sale proceeds will cover all administrative

expense claims at the expense of time and creditor recovery. After all, if Debtor ultimately fails to prevail, it can simply turn the Residence over to a chapter 7 trustee and leave the creditors holding the bag, with absolutely no accountability for Debtor's management's actions. This is not a goal Congress had in mind for the "honest but unfortunate" debtor.

**B. Debtor Has No Ability to Cramdown Its Creditors Because It Does Not Have an Impaired Class Voting in Favor of the Plan**

34. Section 1129(b)(1) requires all of the applicable requirements of section 1129(a) to be met, except 1129(a)(8) (requiring that all impaired classes accept the Plan, which cannot occur in this case because on information and belief, Classes 4, 5, and 6 have rejected the Plan)[2].

35. A debtor only may attempt to cram down a plan of reorganization *if* at least one (1) impaired class of creditors has accepted the plan. *See* 11 U.S.C. § 1129(a)(10). The policy underlying this requirement is that before "embarking upon the tortuous path of cramdown, and compelling the target of the cramdown to shoulder the risks of error (and related expenses) necessarily associated with forced confirmation, there must be some other properly classified group that is also hurt and nonetheless favors the plan." *In re Philadelphia Rittenhouse Developer, L.P.*, 2011 WL 13043475, at *21 (Bankr. E.D. Pa. May 25, 2011) (citations omitted).

36. In the instant case, classes 4, 5, and 6 are the only impaired classes under the Plan. On information and belief, Classes 4 and 5 are voting to reject the Plan. Accordingly, Class 6 must vote in favor of the Plan for it to be confirmed. Yet, Class 6 cannot accept the Plan because A. Perry has voted its $550,000 claim to reject the Plan; J. Paul has voted its $1.17 million unsecured claim to reject the Plan; and the Grier Revocable Trust's $4.58 million claim is an insider claim

---

[2] Plan objections were due on the same day as voting ended, but based on communications with other creditors, A. Perry believes that each of Classes 4, 5, and 6 will vote to reject the Plan.

pursuant to 11 U.S.C. § 101(31)(B) and therefore cannot be considered under Section 1129(a)(10). Accordingly, cramdown under Bankruptcy Code Section 1129(b) is not available to the Debtor.

## **CONCLUSION**

Based on the foregoing, the Plan fails to satisfy the requirements of section 1129 and should not be confirmed. This Plan is not in the best interests of creditors and is not feasible. Accordingly, A. Perry respectfully requests that the Court deny confirmation of the Plan.

Dated: May 20, 2024  /s/ *Robert H. Kline*
Robert H. Kline

Robert H. Kline, Bar No. 20802
White and Williams, LLP
600 Washington Ave., Ste. 303
Towson, Maryland, 21204
443-761-6500
443-461-6519 (fax)
kliner@whiteandwilliams.com

Ryan T. Johnson (*pro hac vice*)
Andrés Gallegos II (*pro hac vice*)
Hahn Loeser & Park, LLP
200 W. Madison, Ste. 2700
Chicago, IL 60606
(312) 637-3000
rjohnson@hahnlaw.com
agallegosii@hahnlaw.com
*Counsel for A. Perry Builds & Design P.C.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of May 2024, a true and accurate copy of the foregoing disclosure was served upon those parties listed below via the Court's CM/ECF System.

/s/ *Robert H. Kline*
Robert H. Kline

## CM/ECF List

Richard L. Costella rcostella@tydings.com, jmurphy@tydings.com
Katherine A. (UST) Levin Katherine.A.Levin@usdoj.gov, amy.busch@usdoj.gov
Joseph Michael Selba JSelba@tydingslaw.com, jselba@tydings.com
Dennis J. Shaffer dshaffer@wtplaw.com, kmccruden@wtplaw.com;pbowling@wtplaw.com
US Trustee - Baltimore USTPRegion04.BA.ECF@USDOJ.GOV
Maurice Belmont VerStandig mac@mbvesq.com, lisa@mbvesq.com; mahlon@dcbankruptcy.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com