IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: | ) | Case No. 23-15444-DER |
| | ) | (Chapter 11) |
| CTLC, LLC | ) | |
| | ) | |
|     Debtor. | ) | |
| | ) | |

## OBJECTION TO CONFIRMATION OF CHAPTER 11 PLAN

Comes now WCP Fund I LLC as servicer for Pacific RBLF Funding Trust ("WCP"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 3020, and objects to confirmation of the Chapter 11 Plan (the "Plan," as found at DE #75), and in support thereof states as follows:

### I. Introduction

Ten months have now elapsed in what is substantively – albeit not technically – a single asset real estate case. CTLC, LLC ("CTLC" or the "Debtor") owns one property and has a variety of debts attendants to ownership and development of that one property. The Debtor promises the property will be sold, just as the Debtor has promised since this case's incipiency. But ten months in, the asset is not listed on the open market, work apparently still needs to be done to render the property marketable, and the Debtor is asking for another two years.

These are not the building blocks of a good faith plan. These are the elements of a plan aimed at keeping creditors at bay from their collateral while years tick by and the status quo persists. The Debtor's obligations under the Plan are simply too vague and ill-defined to survive the barest of scrutiny, while the payment obligations thereunder strike as being more aspirational than pragmatic. Title 11 of the United States Code (the "Bankruptcy Code") no doubt affords some

1

latitude in the contours of Chapter 11 plans, but this Plan is too wayward and overtly hostile to creditors to merit judicial imprimatur.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged confirmation be denied.

## II. Argument

### a. The Plan Does Not Comply with 11 U.S.C. § 1129(a)(11)

Different creditors find their way to this case through different means, but most share the common bond of being financially harmed by the Debtor's broken promises. CTLC borrowed money from WCP and promised to repay the funds – with interest – within one year, by August 24, 2022. That one year has now become nearly three, as the Debtor suggests the true due date should be closer to five years. And in support of this promise of an egregiously belated payment, CTLC offers nothing more than amorphous conjecture and vague speculation.

To confirm a Chapter 11 plan, the Bankruptcy Code requires, *inter alia*, "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). As explained by one leading treatise:

> Particularly important in this regard is that the plan proponent demonstrate that any necessary financing has been obtained, or is likely to be obtained. With or without such financing, "section 1129(a)(11) requires the plan proponent to show concrete evidence of a sufficient cash flow to fund and maintain both its operations and obligations under the plan."

7 Collier on Bankruptcy P 1129.02 (citing *S & P, Inc. v. Pfeifer*, 189 B.R. 173, 183 (N.D. Ind. 1995) (quoting *In re SM 104 Ltd.*, 160 B.R. 202, 234 (Bankr. S.D. Fla. 1993)); *In re Claar Cellars LLC*, 623 B.R. 578, 595–96 (Bankr. E.D. Wash. 2021); *In re Biz as Usual, LLC*, 627 B.R. 122, 130–31 (Bankr. E.D. Pa. 2021)).

Indeed, "[c]ourts have declined to confirm plans in which the plan proponent has not adequately demonstrated that necessary exit financing will be available." 7 Collier on Bankruptcy P 1129.02 n. 192 (citing *In re Made in Detroit, Inc.*, 299 B.R. 170. 179-80 (Bankr. E.D. Mich. 2003); *In re Thurmon*, 87 B.R. 190 (Bankr. M.D. Fla. 1988)).

Here, the Debtor is promising to sell a house that is still very much under construction. There remains more than $900,000.00 of work to be done. *See* Disclosure Statement, DE #96, at pp. 39-40. And this work will, apparently, "be funded by the Debtor's cash reserves" and "contributions from the Plan Proponents." Plan, DE #75, at § 4.1, p. 8. But the "Debtor's cash reserves" total a scant $4,161.00. *See* February 2024 Monthly Operating Report, DE #92, at p. 2. And there is no reason to believe the other proponents of the Plan have the financial resources to make such lofty contributions (especially when one of the proponents is indebted to WCP on a judgment that is as-yet unpaid).

So it is not merely that the plan proponents have "not adequately demonstrated that necessary exit financing will be available," 7 Collier on Bankruptcy P 1129.02 n. 192, but it is, too, that the plan proponents have given creditors every reason to believe such necessary exit financing will *not* be available. There is no loan commitment letter appended to the Plan or Disclosure Statement, nor is there any proof of funds appended to either such document. There is only the word of the Debtor – a word that carries little currency.

This tension is only exacerbated by the length of the proposed marketing process. On one hand, the Debtor is committing to list the property for sale "[n]o later than June 1, 2024." Plan, DE #96, at § 4.1(a), p. 8. On the other hand, the Debtor is seeking a two year time horizon to pay creditors through a sale of the property. *Id.* at §§ 3.4-3.5, pp. 6-7. This is an astonishingly lengthy

3

marketing period given that the property in question is a residential home. *See* Disclosure Statement, DE #96, at p. 2.

This temporal arc is even more problematic, however, because of the innate tension it reveals. On one hand, the Debtor acknowledges nearly $1 million in work that remains to be completed on the property. On the other hand, the Debtor is committing to marketing the property in just days. This creates a paradigm whereby the Debtor either intends to (i) allow an unfinished property to languish on the open market while work is still being done; or (ii) not sincerely follow through in financing the completion of work. Given that this case has been pending for some 10 months without either marketing or notable improvements, there is some difficulty in surmising which reality is actually manifest. But neither such reality bodes well for feasibility or good faith.

### b. The Plan Does Not Comply with 11 U.S.C. § 1129(a)(8) or 11 U.S.C. § 1129(a)(10)

Of even date herewith, WCP has voted against confirmation of the Plan. Insofar as WCP is the sole member of Class 4, which is an impaired class, compliance with the rigors of Section 1129(a)(8) of the Bankruptcy Code is not possible. And while a cramdown under Section 1129(b) may allow the Debtor to skirt the foregoing rigors, such does not relieve CTLC of the obligation of amassing accepting votes from at least one impaired class. The Debtor does not appear to be able to do so.

The Bankruptcy Code requires, *inter alia*, "[i]f a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider." 11 U.S.C.A. § 1129(a)(10).

The only impaired classes are Class 4, Class 5 and Class 6. *See* Plan, DE #75, at §§ 3.1-3.6, pp. 6-7. As noted *supra*, Class 4 has voted to reject the Plan. It appears that Class 5 has, too, voted to reject the Plan. *See* Objection to Chapter 11 Plan, DE #104, at ¶ 12. And, as noted in a

fellow creditor's well-written objection, Class 6 is also mathematically certain to be a rejecting class, insofar as the non-insider composition of that class is controlled by another creditor that has, too, voted against confirmation. *Id.*

### c. The Plan Does Not Comply with 11 U.S.C. § 1129(a)(3)

It is not a coincidence that non-insider creditors are voting against the Plan and objecting to confirmation. This is not a proposed reorganizational blueprint that favors creditors or offers much to creditors; this is a Plan that allows the Debtor to stay in control of its singular asset for a protracted period of time, as creditors are made to wait and hope one of the Debtor's principals pays $2 for the right Powerball ticket.

The Bankruptcy Code requires, *inter alia*, "[t]he plan has been proposed in good faith. . ." 11 U.S.C. § 1129(a)(3). And while "good faith" is not an expressly defined term, 11 U.S.C. § 101, *et. seq.*, "[g]ood faith requires a fundamental fairness in dealing with one's creditors," *In re Jorgensen*, 66 B.R. 104, 109 (B.A.P. 9th Cir. 1986). *See also In re First Conn. Consulting Grp.*, 579 B.R. 673, 687 (Bankr. D. Conn. 2018) (discussing rigor of "fundamental fairness").

The Debtor has had years to market and sell its singular asset. The Debtor has, too, enjoyed ten months of bankruptcy protection, during which that asset could have been marketed and sold. Yet the Debtor, seemingly determined to prolong the economic detriment of its creditors, in vague hopes of securing a payday for equity holders should the real estate market rebound, has failed and refused to do so. This is not good faith; this is gambling with the funds – and labors – borrowed from others. And such assuredly does not comport with the rigors of Section 1129(a)(3) of the Bankruptcy Code.

**III.     Conclusion**

WHEREFORE, WCP respectfully prays this Honorable Court (i) sustain this objection and deny confirmation of the Plan; (ii) convert this case to a proceeding under Chapter 7, so a trustee may efficiently liquidate the Debtor's real estate asset and investigate claims against the Debtor's insiders; and (iii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: May 20, 2024

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for WCP Fund I LLC*

*[Certificate of Service on Following Page]*

6

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of May, 2024, a copy of the foregoing was served electronically upon filing via the ECF system, with copies to:

- Richard L. Costella     rcostella@tydings.com, jmurphy@tydings.com
- Jeffrey Louis Forman     forman@comcast.net, forman3@yahoo.com;jeff.forman@gmail.com
- Patricia B. Jefferson     pjefferson@milesstockbridge.com
- Robert H. Kline     kliner@whiteandwilliams.com
- Katherine A. (UST) Levin     Katherine.A.Levin@usdoj.gov, amy.busch@usdoj.gov
- Joseph Michael Selba     JSelba@tydingslaw.com, jselba@tydings.com
- Brent C. Strickland     bstrickland@wtplaw.com, mbaum@wtplaw.com;brent-strickland-3227@ecf.pacerpro.com
- US Trustee - Baltimore     USTPRegion04.BA.ECF@USDOJ.GOV
- Maurice Belmont VerStandig     mac@mbvesq.com, lisa@mbvesq.com;mahlon@dcbankruptcy.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

/s/ Maurice B. VerStandig
Maurice B. VerStandig