**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

In re:                                    *

CTLC, LLC                                 *      Case No. 23-15444-DER
                                                 (Chapter 11)
         Debtor.                          *

*     *     *     *     *     *     *     *     *     *     *     *     *

**DEBTOR'S EXHIBIT AND WITNESS LISTS FOR JANUARY 15, 2025 HEARING**

- *Motion to Extend Sale Deadline [ECF 159]*

- *Opposition of WCP Fund I LLC [ECF 160]*

- *Opposition of Bravas, LLC [ECF 163]*

**Debtor's Exhibits**

| Exhibit | Description | Offered | Objection | Admitted |
|---------|-------------|---------|-----------|----------|
| D01 | Amended Chapter 11 Plan [ECF 126] | | | |
| D02 | Broker's Status Report [ECF 159-1] | | | |
| D03 | Picture of Property | | | |
| D04 | Published Article in Baltimore Business Journal | | | |
| D05 | Property Brochure | | | |
| D06 | Property Mailer | | | |
| | | | | |

**Debtor's Witnesses**

(i)   Sandra Grier, Debtor's Owner/Member
(ii)  Michael Grier, Grier Revocable Trust
(iii) TTR Sotheby's International Realty – Lydia Travelstead or Alex Lerner

6291974.1

Date: <u>January 8, 2025</u>

Respectfully Submitted,

<u>/s/ Joseph M. Selba</u>
Joseph M. Selba, Fed. Bar No. 29181
Tydings & Rosenberg LLP
One East Pratt Street, Suite 901
Baltimore, Maryland 21202
Tel.: 410-752-9753
Email: jselba@tydings.com
*Attorneys for Debtor*

6291974.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of January 2025, I verified that a copy of the foregoing electronically filed *EXHIBIT AND WITNESS LISTS* will be electronically served upon the following ECF recipients:

**Notice Parties:**

- Office of the United States Trustee, c/o Katherine A. Levin, Esq., Katherine.A.Levin@usdoj.gov
- J. Paul Builders, LLC, c/o Brent C. Strickland, Esq., bstrickland@whitefordlaw.com
- WCP Fund I, LLC, c/o Maurice Belmont VerStandig, Esq., mac@mbvesq.com
- A. Perry Builders, LLC, c/o Robert H. Kline, Esq., kliner@whiteandwilliams.com
- Miles & Stockbridge, P.C., c/o Patricia B. Jefferson, Esq. pjefferson@milesstockbridge.com
- Bravas, LLC, c/o Jeffrey Louis Forman, Esq., forman@comcast.net,

I HEREBY FURTHER CERTIFY that on this 8th day of January 2025, a copy of the electronically filed Exhibit List with Exhibits is being served to:

United States Bankruptcy Court
ATTN: The Honorable David E. Rice
c/o Clerk of the Court
101 W Lombard St
Baltimore, MD 21201
Main Tel: 410-962-2688
**Three (3) Exhibit Binders**
VIA HAND-DELIVERY

/s/ Joseph Selba
Joseph M. Selba

6291974.1

EXHIBIT 1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | | |
|---|---|---|
| **In re:** | * | |
| **CTLC, LLC** | * | **Case No. 23-15444-DER** |
| | | **(Chapter 11)** |
| **Debtor.** | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## AMENDED CHAPTER 11 PLAN

CTLC, LLC, Debtor and Debtor-in-Possession (the "Debtor") hereby proposes this Amended Chapter 11 Plan pursuant to the provisions of the Bankruptcy Code (as defined in Article I below).

## ARTICLE I - DEFINITIONS

For purposes of this Plan, the following terms shall have the meanings hereinafter set forth:

1.1     "Administrative Bar Date" means forty-five (45) days after the Effective Date and is the date by which applications for allowance of Administrative Expense Claims incurred through the Confirmation Date must be filed with the Court or be forever barred and discharged. Notice of confirmation of the Plan shall be deemed sufficient and adequate notice of the Administrative Bar Date.

1.2     "Administrative Expense(s)" means a Claim for costs and expenses of administration of the Chapter 11 case allowed under section 503(b) or, if applicable, 1114(e)(2) of the Bankruptcy Code, including: (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Debtor's Estate and operating the business of the Debtor (such as wages, salaries, commissions for services and payments for inventories, lease equipment and premises) and Claims of governmental units for taxes (including Claims related to taxes which accrued after the Petition Date, but excluding Claims related to taxes which accrued on or before the Petition Date); (b)

compensation for legal, financial, advisory, accounting and other services and reimbursement of

expenses allowed by the Bankruptcy Court under sections 330, 331 or 503(b) of the Bankruptcy

Code to the extent incurred prior to the Effective Date; and (c) all fees and charges assessed against

the Debtor's Estate under 28 U.S.C. §1930.

    1.3    "Allowed Claim(s)" means any Claim:

        (a)    in respect of which a proof of claim has been filed with the Bankruptcy Court within the applicable period of limitations fixed by Bankruptcy Rule 3003; or

        (b)    which is listed in Schedules D, E or F filed by the Debtor with the Court, including any amendments thereto, and is not listed as disputed, contingent, or unliquidated as to amount; or

        (c)    for which an application has been filed pursuant to sections 329 and 330 of the Bankruptcy Code;

and further, as to any such Claim, (i) either no objection to the allowance thereof has been filed, or

if an objection to the allowance thereof has been filed, the objection has been overruled or the

amount of such Claim fixed by a Final Order; or (ii) such Claim has not been paid, settled, waived

or withdrawn.

    1.4    "Bankruptcy Code" means Title 11 of the United States Code ("U.S.C.") as enacted

by the Bankruptcy Reform Act of 1978, Public Law No. 95-598 and subsequently amended, and

such portions of Title 28 of the United States Code as are applicable to bankruptcy cases.

    1.5    "Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the

District of Maryland.

    1.6    "Bankruptcy Rules" means (a) the Federal Rules of Bankruptcy Procedure, and (b)

the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Maryland,

both as now in effect or hereafter amended.

1.7    "Causes of Action" means any action, claim, cause of action, controversy, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law, including but not limited to any action to recover any transfer that may be avoided under any provision of the Bankruptcy Code including, but not limited to, sections 544, 547, 548 or 549; or any action, cause of action, claim, power, right and/or and remedy arising under sections 544, 545, 546, 547, 548, 549, 550, 553 or 558 of the Bankruptcy Code.  Causes of Action also include: (a) any right of setoff, counterclaim or recoupment and any claim for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to sections 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

1.8    "Claim(s)" means any claim against the Estate or as defined in § 101(5) of the Bankruptcy Code, including, but not limited to, all claims arising from the rejection of unexpired leases and/or executory contracts.

1.9    "Claims Bar Deadline" means October 21, 2023 for all creditors except for a governmental unit; and January 29, 2024 for a governmental unit.

1.10    "Claim Objection Deadline" means the date that occurs thirty (30) days following the closing of the sale of the Debtor's Real Property.

1.11    "Confirmation Date" means the date on which the Court enters the Confirmation Order.

1.12    "Confirmation Order" means the order of the Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.13    "Disputed Claim(s)" means any Claim or a portion of any Claim as to which the Debtor, or any other party in interest has filed an objection or motion to estimate claim in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection has not been withdrawn or adjudicated pursuant to a Final Order.

1.14    "Effective Date" means the day after the Confirmation Order becomes final by expiration of the time for appeal therefrom.

1.15    "Estate" means the Debtor's bankruptcy estate created pursuant to section 541 of the Bankruptcy Code upon commencement of the Debtor's bankruptcy case.

1.16    "Final Order" means an order that has not been reversed, stayed, modified or amended and the time to appeal from or to seek review of or rehearing on such order has expired, and which order has become final.

1.17    "Petition Date" means August 2, 2023.

1.18    "Plan" means the Debtor's Amended Chapter 11 Plan, or as hereafter amended or modified.

1.19    "Plan Proponents" shall mean Sandra Grier, Michael Grier, and the Grier Revocable Trust.

1.20    "Professional Person(s)" means an attorney, accountant, appraiser, consultant or other professional retained or to be compensated pursuant to an order of the Court entered under sections 327, 328, 330, 503(b), or 1103 of the Bankruptcy Code.

1.21    "Proof of Claim" means a proof of claim filed pursuant to section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.22    "Real Property" means the real estate known as 15125 Devlin Drive, Glenelg, MD 21737 in Howard County, Maryland, generally described as a custom home site, consisting of approximately 38.25 acres, improved by a partially constructed two story, approximately 25,000 square-foot single family residence.

1.23    "Sale Deadline" means the date certain agreed to by the Debtor, Class 4 claimants, and Class 5 claimants, subject to extension (i) by written consent of both Class 4 claimants and Class 5 claimants, or (ii) by Court order for good cause upon Debtor's motion filed at least fifteen (15) days prior to such date (any such motion being subject to the timely opposition or objection of any party in interest).  The Sale Deadline is to be kept confidential and any pleading or paper filed with respect to the Sale Deadline shall be filed under seal (or such portions under seal or redacted), so as to maintain the confidentiality of the Sale Deadline, as provided at Article IX.

1.24    "Schedules" means the schedules of assets and liabilities and statement of financial affairs filed by the Debtor with the Bankruptcy Court in accordance with section 521(1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules, and any amendments thereto.

1.25    "Secured" shall be consistent with section 506 of the Bankruptcy Code, and shall mean an allowed Claim in an amount equal to the present value of the applicable creditor's interest in the Debtor's interest in the property, or in the amount subject to setoff, as may be established by this Plan, the Confirmation Order, or separate Order of the Court.  Debtor reserves the right to challenge whether a Claim is fully secured or secured at all.

## ARTICLE II - CLASSIFICATION OF CLAIMS

Claims against the Estate shall be classified as follows:

6173535.2

2.1 <u>Class 1</u>. Class 1 consists of (i) Allowed Claims for costs and expenses of administration of the Estate, as defined above as Administrative Expenses, including fees of Professional Persons approved by the Court and other post-petition operating expenses and (ii) fees payable to the United States Trustee by the Debtor under 28 U.S.C. § 1930(a)(6).

2.2 <u>Class 2</u>. Class 2 consists of all Allowed Claims that are entitled to priority under section 507 of the Bankruptcy Code excluding 11 U.S.C. § 507(a)(2) administrative claims and § 507(a)(8) unsecured tax claims.

2.3 <u>Class 3</u>. Class 3 consists of all Allowed Claims for unsecured taxes of government units entitled to priority under section 507(a)(8).

2.4 <u>Class 4</u>. Class 4 consists of the Secured Claim of WCP Fund I LLC as Servicer for Pacific RBLF Funding Trust, as claimed against the Debtor's Estate at Claim No. 1 filed with the Bankruptcy Court. The Debtor acknowledges the validity and priority of the lien held by the Class 4 claimant, and stipulates that the outstanding principal balance of the Class 4 claim is $350,000, with accrued interest and accruing default interest subject to calculation based on verified payments. The parties reserve their rights as to the other portions of the claim balance.

2.5 <u>Class 5</u>. Class 5 consists of the Secured Claim of J Paul Builders, LLC, as claimed against the Debtor's Estate at Claim No. 5 filed with the Bankruptcy Court.

2.6 <u>Class 6</u>. Class 6 is comprised of all general unsecured Claims.

<b><u>ARTICLE III - TREATMENT OF CLAIMS AND INTERESTS</u></b>

3.1 <u>Class 1</u>. The Debtor shall pay each Class 1 claimants in full, in cash, on the latest of (a) the Effective Date, (b) the thirtieth (30th) day after such claimant's claim has become an Allowed Claim, or (c) a date agreed upon by the Debtor and the particular claimant. Class 1 is not a class of claims impaired under the Plan.

3.2     Class 2. The Debtor shall pay each Class 2 claimants in full, in cash, but only to the extent each is entitled to priority under section 507, on the latest of (a) the Effective Date, (b) the thirtieth (30th) day after such claimant's claim has become an Allowed Claim, or (c) a date agreed upon by the Debtor and the particular claimant. Class 2 is not a class of claims impaired under the Plan.

3.3     Class 3. The Debtor shall pay each Class 3 claimants in full, in cash, but only to the extent each is entitled to priority under section 507, on the latest of (a) the Effective Date, (b) the thirtieth (30th) day after such claimant's claim has become an Allowed Claim, or (c) a date agreed upon by the Debtor and the particular claimant. Class 3 is not a class of claims impaired under the Plan.

3.4     Class 4. Class 4 asserts a lien against the Debtor's Real Property by way of a Deed of Trust recorded at Book 21365, page 438 among the Land Records for Howard County, Maryland. The Debtor shall pay the Class 4 claimants their Allowed Secured Claim in full no later than the Sale Deadline, and after such date the automatic stay provided by 11 U.S.C. § 362 shall be immediately terminated as to Class 4 claimants, and such claimants shall then be entitled, without further order of the Court, to immediately exercise and enforce all rights and remedies afforded their Secured interest(s) in the Debtor's Real Property under applicable state law. Class 4 is a class of Claims impaired under the Plan.

(a)     Right of Inspection: Claim 4 claimants shall have the right to inspect the Debtor's Real Property at mutually agreed upon time for the limited purpose of verifying the condition of the property.

(b)     Equitable Servitude: With respect to the stay relief provided to Class 4 claimants, the stay shall be terminated in all respects and in the event that the Debtor or any party

claiming an interest in the Debtor's Real Property files a subsequent petition for relief under Title 11 of the United States Code for a period of one year after the Sale Deadline, the automatic stay shall not attach to the Debtor's Real Property and will be deemed void ab initio and annulled upon the filing with respect to Class 4 claimants, their successors, agents or assigns, and/or their Allowed Secured Claim.

3.5     Class 5. Class 5 asserts a lien against the Debtor's Real Property by way of a Final Mechanic's Lien Order entered in the Circuit Court for Howard County, Case No. C-13-Cv-22-000026. The Debtor shall pay the Class 5 claimants their Allowed Secured Claim in full no later than the Sale Deadline, and after such date the automatic stay provided by 11 U.S.C. § 362 shall be immediately terminated as to Class 5 claimants, and such claimants shall then be entitled, without further order of the Court, to immediately exercise and enforce all rights and remedies afforded their Secured interest(s) in the Debtor's Real Property under applicable state law. Class 5 is a class of Claims impaired under the Plan.

3.6     Class 6. Class 6 claims shall be paid pro rata from (i) any surplus net sale proceeds from the sale of the Debtor's Real Property after the payment of all closing costs, real estate taxes and all amounts required to satisfy the Allowed Secured Claims, and (ii) any remaining cash of the Debtor, within sixty (60) days of the sale of the Debtor's Real Property. Class 6 is a class of Claims impaired under the Plan.

### ARTICLE IV - MEANS FOR EXECUTION OF THE PLAN

4.1     Funding of Plan. The funds necessary to implement the Plan shall be funded by the Debtor's cash reserves, contributions from the Plan Proponents, and, ultimately, the sale or refinance of the Debtor's Real Property no later than the Sale Deadline.

4.2     <u>Retained Duties, Rights and Powers of the Debtor</u>.  Upon confirmation of the Plan, the Debtor shall retain all rights and powers under the Bankruptcy Code, including, but not limited to, the right to prosecute all Causes of Action and all other causes of actions and all other rights and powers under §§ 505, 506, 541, 542, 543, 544, 547, 548, 549, 550, and 553 of the Bankruptcy Code.  Furthermore, from and after the Effective Date the Debtor shall retain the authority for (i) enforcing and prosecuting claims, interests, rights and privileges of the Debtor's Estate, including, without limitation, Causes of Action; (ii) resolving Disputed Claims; and (iii) confirming and administering the Plan and taking such actions as are necessary to effectuate the Plan.

4.3     <u>Actions on Claims</u>.  The Debtor shall have the exclusive right, power and authority, but not the obligation, among other things, to: (a) object to any Claim; (b) file suit or commence an action or proceeding with respect to any claim or cause of action of the Debtor and/or the Debtor's Estate, and otherwise prosecute, settle, compromise or pursue such claim or cause of action; (c) retain and employ professionals as it deems necessary or appropriate to carry out the terms and purposes of the Plan and on such terms as the Debtor deems reasonable; (d) execute and enter into contracts on behalf of the Estate as the Debtor deems necessary or appropriate to carry out the terms and purposes of the Plan and on such terms as the Debtor deems reasonable; (e) distribute funds to holders of allowed Claims consistent with the terms of the Plan; (f) file a final report and move to close the Debtor's Chapter 11 case; and (g) to take such other and further actions as may be necessary or appropriate to carry out the terms and purposes of the Plan.  The provisions of this paragraph are <u>subject to the following exception</u>: in the event that the proceeds from the sale of the Debtor's Real Property are not sufficient to pay unsecured creditors in full, any claimant may object to or seek subordination of the claim(s) of the Greir Revocable Trust or any insider party.

4.4     Special Tax Provision.  Pursuant to § 1146 of the Bankruptcy Code, the following transactions shall not be subject to any stamp, real estate transfer, recapture, mortgage recording or other similar tax: the issuance, transfer or exchange of any notes or equity securities under the Plan; sale of the Debtor's Real Property or other assets; the creation of any mortgage, deed of trust or other security interest; the making or assignment of any lease or sublease; or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan; and/or any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan.

4.5     Resolution of Disputed Claims. To the extent a Claim is a Disputed Claim, the Debtor shall not be required to pay the applicable disputed portion of a payment to the holder of the Disputed Claim that would otherwise he payable with respect to the Disputed Claim.  In the event that the Disputed Claim is allowed, the Debtor shall thereafter pay the appropriate amount to the holder of such Claim in accordance with the terms of the Plan and in the same manner as any other creditor of the same Class.

4.6     Distributions.  The Debtor may stop payment on any distribution check that has not cleared the issuing bank within ninety (90) days of the date of distribution of such check. All unclaimed funds or property may be used to satisfy any additional expenses or fees, or if none exist and all classes have been paid in full, shall revert to the bank accounts maintained by the Debtor.  Distributions to holders of Allowed Claims shall be made at the address of each such holder as determined in accordance with the proof of claim filed by the respective claimholder, or if no proof of claim is filed, in accordance with the Schedules.  If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Debtor becomes aware of such holder's then current address, at which time all missed distributions shall be

6173535.2

10

made to such holder, without interest, from the date of the first attempted distribution. All unclaimed distributions shall be used to satisfy the costs of administering and fully consummating this Plan and the holder of any such Claim or interest shall not be entitled to any other further distribution under this Plan on account of such Claim or interest.

### ARTICLE V - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.1     <u>Assumption of Remaining Leases and Contracts</u>.  Unless otherwise assumed or rejected by separate Court order, on the Effective Date, except as otherwise provided herein, or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, executory contracts and unexpired leases shall be deemed rejected, with the effective date of assumption being the Effective Date or such date determined by the Bankruptcy Court, unless such executory contract or unexpired lease: (i) was assumed, assumed and assigned, or rejected previously; (ii) previously expired or terminated pursuant to its own terms; or (iii) is the subject of a motion to assume or assume and assign filed on or before the Effective Date. The entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions or rejections of such executory contracts or unexpired leases as set forth in the Plan, pursuant to sections 365(a) and § 1123 of the Bankruptcy Code. Any motions to assume or assume and assign executory contracts or unexpired leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a final order, including the Confirmation Order.

5.2     <u>Rejection Claims</u>.  Pursuant to Bankruptcy Rule 3002(c)(4), and except as otherwise ordered by the Court, Claims arising from the rejection of an executory contract or unexpired lease shall be filed, by way of motion, with the Court no later than thirty (30) days after the later of the entry of a Final Order approving such rejection and the confirmation of the Plan, or

such Claim shall be forever barred. Any Claim arising from the rejection of an executory contract or unexpired lease shall be deemed a Class 6 Claim for distribution purposes as of the date of the entry of an order of the Court approving said Claim.

## ARTICLE VI - MODIFICATION OF PLAN

6.1     Pre-Confirmation Modification. The Debtor reserves the right, in accordance with the Bankruptcy Code, to amend or modify the Plan or the treatment of any Claim prior to the Confirmation Date.

6.2     Post-Confirmation Modification. After the Confirmation Date, the Debtor may amend or modify the Plan, or any portion thereof, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission, or reconcile any inconsistency in the Plan, in such a manner as may be necessary to carry out the purpose and intent of the Plan.

## ARTICLE VII - EFFECT OF CONFIRMATION

7.1     Binding Effect. On or after the Confirmation Date, the provisions of this Plan shall bind the Debtor and any holder of a Claim against the Debtor, whether or not such Claim is impaired under this Plan and whether such holder has accepted this Plan. This Plan amends and supersedes any prior plan filed or proposed by the Debtor.

## ARTICLE VIII - GENERAL PROVISIONS

8.1     Retention of Jurisdiction. Notwithstanding the Confirmation of the Plan, the Court will retain jurisdiction until consummation of the Plan to ensure that the purposes and intent of the Plan are carried out. The Court's jurisdiction shall be over any and all disputes and litigation pending at the time of the confirmation of the Plan, any controversies that may arise thereafter, and any controversies that may affect the ability of the Debtor to effectuate the consummation of the Plan. By way of illustration of the jurisdiction retained by the Court, but not by way of limitation

6173535.2

12

of the same, the Court shall retain jurisdiction in this case, among other things, for the following

purposes:

(a)      The classification of the claim of any creditor and the re-examination of claims which have been allowed for purposes of voting, and the determination of such objections as may be filed to the claims of creditors. The failure by the Debtor to object, or to examine any claim for purposes of voting, shall not be deemed to be a waiver of the right to object to or re-examine any claim in whole or in part.

(b)      Except to the extent that the Debtor choose to invoke the jurisdiction of a state court, the determination of all causes of action, controversies, disputes and conflicts involving, or relating to, the Debtor or the Debtor's assets, arising prior to or after the Confirmation Date, whether or not subject to an action pending as of the Confirmation Date, between the Debtor and any other party or parties, including but not limited to, any right of the Debtor to recover assets pursuant to applicable provisions of the Bankruptcy Code.

(c)      The modification of this Plan after confirmation to correct any defect, to cure any omission, or to reconcile any inconsistency in this Plan or in the Order of Confirmation, as may he necessary or otherwise appropriate to carry out and/or clarify the intended purposes of the Plan or the Confirmation Order.

(d)      The allowance of compensation for professional services rendered to the Debtor's Estate by professionals of the Debtor through the Confirmation Date pursuant to section 330(a) of the Bankruptcy Code, upon application for such compensation.

(e)      The enforcement and interpretation of the terms and conditions of this Plan, including any agreement for satisfaction of an Allowed Claim.

(f)      The determination of the existence of any liens, encumbrances, or interests of other parties in property of the Debtor's Estate or the Debtor, and the extent and priority thereof.

(g)      The enforcement of, and the continuation of, the automatic stay and any similar equitable relief with respect to post-confirmation actions against the Debtor, the Debtor's Estate, and/or property of the Debtor's Estate.

(h)      The resolution of any disputes regarding implementation of the Plan.

(i)      Entry of an order concluding and terminating the case.

8.2      <u>Payment as Release</u>.  The tender of full payment to the holder of an Allowed

Claim in any class as provided for under this Plan shall be deemed to effect a settlement, release,

6173535.2

and discharge of the Debtor, the Debtor's Estate, and all of the Debtor's property by such holder on behalf of itself, successors and assigns.

8.3     Extension of Dates.   If any date or deadline under this Plan falls on a Saturday, Sunday, or legal holiday, the date or deadline shall be deemed to occur on the next business day thereafter, unless otherwise provided herein.

8.4     Rules of Construction.   Except as otherwise provided herein, this Plan shall be construed in conformance with the rules of construction in § 102 of the Bankruptcy Code. Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Maryland, without giving effect to the principles of conflicts of law of such jurisdiction.

8.5     Addresses for Notices.   In the event a party is required to give notice to the Debtor under this Plan, such notice shall be in writing, shall reference the above-referenced case numbers, and shall be sent by commercially reasonable means under the circumstances to the following:

> Richard L. Costella, Esq.
> Joseph M. Selba, Esq.
> Tydings & Rosenberg LLP
> 1 East Pratt Street, Suite 901
> Baltimore, MD 21202
> (410) 752-9700
> Fax: 410.727.5460
> rcostella@tydings.com
> jselba@tydings.com

8.6     Section 1129(b) Election.   In order to confirm the Plan, and to the extent necessary, the Debtor invokes the entitlement of section 1129(b) of the Bankruptcy Code, such that, as long as the Plan does not discriminate unfairly, and is fair and equitable, with respect to any Class

of Claims that is impaired under and has not accepted the Plan, the Plan may be confirmed by the Court.

8.7     Statutory Fees.  All fees payable pursuant to Chapter 123 of Title 28, United States Code, as determined by the Court on the Confirmation Date, shall be payable on the Effective Date.  Any statutory fees accruing after the Effective Date shall constitute Administrative Expenses.

8.8     Deadline for Filing Administrative Expense Claims.     Notwithstanding section 503(a) of the Bankruptcy Code, any person or entity seeking the allowance or payment of an Administrative Expense Claim under section 503 of the Bankruptcy Code and/or any Professional Person or firm retained with approval by order of the Court seeking compensation in this Chapter 11 case pursuant to sections 330 or 503(b) of the Bankruptcy Code, shall be required to file on or before the Administrative Bar Date an application for the allowance and/or payment of an Administrative Expense Claim including, without limitation, an application for the final compensation of a Professional Person and reimbursement of expenses.  Any such Administrative Expense Claim not filed by the Administrative Bar Date shall be forever barred and discharged. Objections to any such application shall be filed on or before a date to be set by the Court.

8.9     Closing of Case.  When all Disputed Claims filed against the Debtor have become Allowed Claims or have been disallowed by Final Order, and the Debtor has determined that all causes of action have been fully and finally resolved, the Debtor may seek authority from the Bankruptcy Court to close it case and seek a final decree in accordance with the Bankruptcy Code and the Bankruptcy Rules.

8.10    Invalidity of Plan Provisions. Should any provision of this Plan be determined to be invalid, void or unenforceable, such determination shall not in any way limit or affect the enforceability and operative effect of any or all other provisions of the Plan and the Court shall, with

the consent of the Debtor, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and in no way shall be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in according with the foregoing, is valid and enforceable pursuant to its terms.

## ARTICLE IX - CONFIDENTIAL PLAN SUPPLEMENT

A Confidential Plan Supplement has been agreed to by the Debtor, Class 4 claimants, and Class 5 claimants, providing for (i) procedures to maintain the confidentiality of the Sale Deadline (defined at section 1.23 *supra*); (ii) requirements for the Debtor to provide reporting of any purchase offers made for the Debtor's Real Property, and (iii) certain remedies should the Debtor default on the terms of the Plan. The Confidential Plan Supplement is being filed under seal.


Dated: June 14, 2024


/s/ Joseph M. Selba
Richard L. Costella, Bar No. 14095
Joseph M. Selba, Fed. Bar No.: 29181
Tydings & Rosenberg LLP
1 East Pratt Street, Suite 901
Baltimore, Maryland 21202
Tel: (410) 752-9700
Email: rcostella@tydings.com
        jselba@tydings.com
*Counsel for the Debtor*

6173535.2

EXHIBIT 2

 

Date: December 12th 2024

## Marketing To Date

The items listed below are items which are of note. This is not an entire list of marketing efforts and ongoing efforts to successfully sell 15125 Devlin Drive

- Website – The individual website for The Devlin Estate is published and has been shared previously.
- There have been Multiple Emails to top Brokers & Qualified Clients who we've worked with previously. A bit more personal these have been successful in generating quality interest from buyers we know would be qualified to purchase a large project.
- Coinciding with the Qualified Clients and top Brokers who we've worked with previously, a general targeted marketing eblast has been sent out to agents in local markets within Maryland, DC, and Virginia. Each was sent to 700+ persons and statistics show each with around 550+ opens. All emails have a link to the website and have around 25+ individual site visits per batch email which falls within the normal trends expected visits.
- In November we worked with the Baltimore Business Journal to publish a successful article on The Devlin Estate. Per our contact at the BBJ the views and interest was a bit more than they typically see from a property article. To follow up this article we sent out an eblast with the article attached which had 448 views and 31 link clicks to view the property website.
- General Mailers to Local & Target Markets have been sent out to both make potential buyers aware of the opportunity but also to share the website and contact information. We've have multiple requests for information based on this general mailer.
- Those who have inquired and expressed further interest are then sent (or given upon touring) the in depth booklet. We have also sent these out to all of TTR Sotheby's offices coinciding with presentations about The Devlin Estate at each sales meeting.

## Update on Prospective Buyers

There have been multiple interested parties with repeated follow-up over the past few months, and we expect at least one of them to submit an offer.  There have been multiple tours by these parties, and though we have also toured them through other upper echelon properties, the Devlin Drive property has been the focus.  Each of the interested parties has construction personnel involved, and we have had to field numerous requests for information regarding the property.  While we are hopeful to have an offer in hand before the anticipated deadline, we don't want to push the buyers and risk turning them off.

 

**Update on Maryland Luxury Market**

- Since ~ end of summer the market as a whole has slowed down to a standstill due to rates and waiting to see what the election & new administration will bring.
- We anticipate luxury buyers to truly start looking genuinely in March/April of 2025 with a new administration in place and understanding what their portfolios and lending potential will be under new laws & regulations.
- There are multiple buyers we've spoken to who have expressed interest but wanting to see what their investments and risk factors will be under new tax laws, regulations, and new "normal" with a new administration in place.
- A Large push will be made in February & March of 2025 in anticipation of this anticipated return to real estate purchasing in the upper luxury market. To include but not limited to;
  - Multiple mailers to targeting markets
  - Increased digital asset marketing locally and internationally
  - An increased push to local DMV located business owners who would suit the property
- Historically the market is always slower in November through March, but this is amplified during election years such as this one
  - This can be seen across all price points but especially in the $1,750,000+ price range even properties which have gone to auction ended up not selling as buyers wait on the sidelines to determine their next move.
- **We believe it to be in the best interest of all parties to continue with the plan set forth both in marketing the property and allowing the best qualified buyers to make their move without outside pressure. Additionally, buyers in the upper luxury market are very savvy with their intentions and offers, which to ensure a number that is satisfactory to all parties, any outside exposure limiting or hurting the urgency or limiting the strength of our negotiating power is best to be avoided.**

EXHIBIT 3



EXHIBIT 4

**FOR THE EXCLUSIVE USE OF**

From the Baltimore Business Journal:
https://www.bizjournals.com/baltimore/news/2024/11/04/devlin-estate-glenelg-mansion-for-sale.html?ana=WBAL

SUBSCRIBER CONTENT:

**Residential Real Estate**

# Unfinished 30,000-square-foot estate for sale for $9M



Image: Trim Render

Another aerial view of the property, which is planned to include sport courts, a pool and more. Expand to read more

TRIM RENDER

 By Joe Ilardi – Digital Producer, Baltimore Business Journal
Nov 4, 2024

 Preview this article   1 min   

The new owner will have much of the groundwork already done for them. Here's what the previous owner envisioned, and what could be next for the massive estate.

EXHIBIT 5



15125 Devlin Drive

TTR | Sotheby's
INTERNATIONAL REALTY

PROOF

TTR | Sotheby's
INTERNATIONAL REALTY

Annapolis Office
209 Main Street | Annapolis, MD 21401
tlr.sir.com | +1 410.280.5600





THE TRAVELSTEAD
TEAM
AT TTR SOTHEBY'S INTERNATIONAL REALTY

The Travelstead Team of TTR Sotheby's International Realty is deeply rooted in Maryland. Based in Baltimore and its surrounding counties, this dynamic team is built on transparency, work ethic, attention to detail, and professionalism. As clients, The Travelstead Team makes their experience providing comprehensive solutions for buyers, sellers, and executors no matter the situation. Market knowledge, skill, and a commitment to the overall excellence provide their foundation for success. The Travelstead Team's experience and insight put clients' minds at ease as they embark on their next home journey.

Lydia Travelstead | Alex Lerner | Haley Narvaez
The Travelstead Team of TTR Sotheby's International Realty
410.989.2233 | 443.605.7293 | 443.768.5997 (c) | 410.280.5600
209 Main Street, Annapolis, Maryland 21401

Sotheby's International Realty and the Sotheby's International Realty logo are registered service marks used with permission. Each office is independently owned and operated. Equal Housing Opportunity.








## A Once-In-A-Lifetime Opportunity To Craft Maryland's Most Bespoke & Elegant Estate.

Welcome to 15125 Devlin Drive, situated in the heart of Gaming. This ultimate legacy estate awaits your finishing touches. No expense was spared on curating this over 30,000 square foot residence, and now it's your opportunity to add a color tone to complete its sustainable living. Conceived for the visionary and discerning owner, this custom luxury estate builders ready to complete this masterpiece. Blueprints and floorplans available upon request with permitting and approvals already in place. The new homeowner of this Devlin Estate will ultimately provide the luxury of planning, approvals, and build time with a final project likely completed by end of 2026.

First custom features: UNIQUE to this captivating residence including a two-story closet with a separate designated show rooms in the primary suite, and an architectural masterpiece on the flooring spiral stairway. High-bay luxury level bedroom suites bath. Accompanied by a master & theater room, bowling alley, and multiple fine spaces perfectly suited for any gathering. Every detail has unique potential, this creation to shine through in finishing this esteemed estate. Be part of a truly extraordinary process: a rarity for its next discerning buyer.




*Set on over 17 Private Acres with Ability to build additional outbuildings*



*Separate pool house cabana overlooking the Olympic sized pool*



*Situated within the boutique community designed by its original owners*

*Plans for a sports court, and Eight-Car Garage with Porte Cochere*

# The Ultimate Legacy Property





*Over 30,000 square feet of Customizable Luxury. Plans feature Eight Bedrooms, Eight Full Bathrooms plus Three Half Bathrooms a Bowling Alley, Fully Equipped Gym, and Three-Story Primary Suite Closet*

*An Architectural Masterpiece; the custom designed fully floating staircase showcases the entryway*



THE
TRAVELSTEAD
TEAM
OF THE OWNER'S INTERNATIONAL REALTY



# EXHIBIT 6



# The Ultimate Legacy Property

15125 DEVLIN DRIVE
GLENELG MARYLAND 21737



TTR | Sotheby's
INTERNATIONAL REALTY



TTR | **Sotheby's**
INTERNATIONAL REALTY

209 Main Street
Annapolis, MD 21401
ttrsir.com





Welcome to The Devlin Estate, situated in the heart of Glenelg; this legacy property awaits your finishing touches. No expense was spared in curating this over 30,000 square foot residence, set on 17 private acres with ability to add a solar farm to complete sustainable living.

Find custom features unique to this captivating residence including a two-story closet with separate designer shoe show room, and an architectural masterpieces in the floating entryway spiral stairway. Eight luxuriously sized Bedrooms are spread over 3 floors accompanied by Eight Full & Three Half Bathrooms. *Maryland's most extraordinary residence is ready for it's next discerning buyer.*

Price Upon Request

**Lydia Travelstead**
*Vice President*
m 410.869.2133
o 410.280.5600
ltravelstead@ttrsir.com

**Alex Lerner**
*The Travelstead Team*
m 443.465.3715
o 410.280.5600
alerner@ttrsir.com

©Sotheby's International Realty Affiliates LLC. All Rights Reserved. Sotheby's International Realty® is a licensed trademark to Sotheby's International Realty Affiliates LLC. Each Office Is Independently Owned And Operated. SIR1


