IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| IN RE | * | |
| CTLC LLC | * | Bankr. Case No.: 23-15444-DER |
|   Debtor | * | |
| * * * * * * * * * * * | | |
| Zvi Guttman, Plan Administrator | * | (CHAPTER 11) |
|   Movant | * | |
| WCP Fund I LLC as Servicer | * | |
| Pacific RBLF Funding Trust | * | CONTESTED MATTER |
| J Paul Builders LLC | * | |
| | * | |
|   Respondents | | |
| * * * * * * * * * * * * * | | |

## EMERGENCY MOTION FOR AUTHORITY TO SELL REAL PROPERTY
## FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS
## (15125 Devlin Drive, Glenelg, MD 21737)

Zvi Guttman, Chapter 7 Plan Administrator (the "Plan Administrator") for the bankruptcy estate of **CTLC, LLC** (the "Debtor"), by and through his undersigned attorney, files this *Emergency Motion for Authority to Sell Real Property Free and Clear of Liens, Claims, Encumbrances, and Interests* (the "Motion"), and in support thereof, states as follows:

### Jurisdiction

1.    This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O).

2.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The bases for the relief requested herein are, inter alia, 11 U.S.C. §363 and Federal Rules of Bankruptcy Procedure 2002 and 6004.

4.      This is a core proceeding.

## Background

5.      This case was commenced by the filing of a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on August 2, 2023.

6.      On June 14, 2024, the Debtor filed an Amended Chapter 11 Plan [Dkt. 126] (the "Plan").  The Plan was confirmed on August 15, 2024, by Order Confirming Amended Chapter 11 Plan [Dkt. 147].

7.      The funds necessary to implement the Plan were to come from the Debtor's cash reserves, contributions from the Plan Proponents, and, ultimately, the sale or refinance of the Debtor's real estate known as 15125 Devlin Drive, Glenelg, MD 21737 in Howard County, Maryland, generally described as a custom home site, consisting of approximately 38.25 acres, improved by a partially constructed two story, approximately 25,000 square-foot single family residence (the "Property").

8.      The Debtor failed to sell the Property in the time provided under the Plan or under extensions set forth in subsequent orders.

9.      On May 29, 2025, the Court entered an Order Granting Motion to Compel Debtor's Compliance with Terms of Confirmed Chapter 11 Plan of Reorganization in which the Court directed the appointment of a plan administrator with "the exclusive authority to effectuate the terms of the Plan." [Dkt. 186].

10.      In consultation with the secured creditors, the Plan Administrator advised the Debtor's realtor that she could submit a no-contingency, as-is, where-is offer, with no representations or warranties on an immediate basis or the Plan Administrator would engage an auctioneer to sell the Property.[1]

## The Contract

11.      By this Motion, the Plan Administrator seeks authority to sell the Property to **Isaac H. Birmingham,** or successor, designee, or assignee (hereinafter, the "Buyer" or the "Purchaser").

12.      The Purchaser and the Plan Administrator have entered into a "low-

---

[1] After the Debtor missed the deadline by which to sell the Property it was contemplated that the Property would be sold by auction.

contingency,[2]" as-is, where-is contract, with no representations or warranties (the "Contract") for the sale of the Property to the Purchaser for **$2,675,000** (the "Purchase Price") with a seller credit of $160,000.[3]

13.    In addition to the Property itself, the sale includes personal property and fixtures (e.g., appliances, window treatments, etc.) aka "incidental property" in and about the Property. Similarly, the sale includes any and all construction materials, partially installed or uninstalled fixtures, equipment, supplies, and other building components or related items located on or intended for use at the Property, including but not limited to lumber, drywall, roofing materials, cabinetry, appliances, lighting fixtures, plumbing fixtures, mechanical systems, hardware, tools, fasteners, surplus inventory, and any other goods or materials stored, staged, or left on-site, whether or not incorporated into the structure. This shall also encompass any construction debris, packaging, and abandoned equipment, whether originally intended for installation or for temporary use in connection with the construction of the improvements on the Property.

14.    The sale is scheduled to close no later than August 1, 2025, or as provided for in the Bankruptcy Addendum to the Contract.

15.    Closing costs will be paid as set forth in the Contract, provided, however, pursuant to 11 U.S.C. § 1146, §4.4 of the Plan provides, "the following transactions shall not be subject to any stamp, real estate transfer, recapture, mortgage recording or other similar tax: the issuance, transfer or exchange of any notes or equity securities under the Plan; **sale of the Debtor's Real Property or other assets;** the creation of

---

[2] The Contract is subject to an appraisal contingency. However, the Plan Administrator has been assured that this contingency will be satisfied or not within 5 business days. In order to provide maximum notice this Motion has been filed with that contingency in place. Should the Buyer be unable to withdraw or satisfy that contingency within 5 business days, the Plan Administrator is prepared to withdraw this Motion and file an application to employ an auctioneer.

[3] In addition to the Property itself, the sale includes personal property and fixtures (e.g., appliances, window treatments, etc.) aka "incidental property" in and about the Property. Similarly, the sale includes any and all construction materials, partially installed or uninstalled fixtures, equipment, supplies, and other building components or related items located on or intended for use at the Property, including but not limited to lumber, drywall, roofing materials, cabinetry, appliances, lighting fixtures, plumbing fixtures, mechanical systems, hardware, tools, fasteners, surplus inventory, and any other goods or materials stored, staged, or left on-site, whether or not incorporated into the structure. This shall also encompass any construction debris, packaging, and abandoned equipment, whether originally intended for installation or for temporary use in connection with the construction of the improvements on the Property.

any mortgage, deed of trust or other security interest; the making or assignment of any lease or sublease; or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan; and/or any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan."

16.    A copy of the Contract and significant addenda are attached hereto as Exhibit A.  Other addenda to the Contract may be filed prior any hearing on this Motion and are available from counsel for the Plan Administrator.

17.    While this Motion is pending, higher offers will be considered.

18.    The Schedule A/B value of the Property is $8,022,000.[4] However, creditors believe that number is highly unrealistic as the Debtor has not produced an offer in that range in the almost 2 years it has been in bankruptcy. Indeed, the Purchase Price is by far the highest offer that has been presented since the filing of this case.

19.    The Plan Administrator has not commissioned a formal appraisal.

20.    The Plan Administrator submits that the price offered by the Purchaser is fair and reasonable.

21.    To the best of the Plan Administrator's knowledge, information and belief, the Purchaser has no connection with the Plan Administrator or any creditor, and the Purchaser is a good faith Purchaser entitled to protection under 11 U.S.C. § 363(m).

22.    For additional information see the Terms of Sale (in the Notice) and below.

### Realtor Compensation

23.    The Debtor-in-Possession engaged Lydia Travelstead, an associate with TTR Sotheby's International Realty (Broker, Jonathan Taylor) ("Broker") under a January 3, 2024, Residential Brokerage Agreement [Dkt. 70] approved by Order entered on February 6, 2024 [Dkt. 178] with a commission of 6%.  Although the Plan Administrator has not formally entered into a subsequent brokerage agreement with Broker, he submits that at settlement Broker will have earned and is entitled to be paid the agreed-upon fee. (2.5% of the 6% will be paid to the buyer's broker.)

---

[4] This value came from Redfin.com.

**Liens, Claims, Encumbrances, Interests and Other Costs of Sale**

24.     Upon information and belief, the following are the liens, claims, encumbrances, and interests ("Interests") against the Property and the proposed treatment hereunder:

| Holder/Servicer of Secured Interest | Claim Amount/ Nature of Claim | Proposed Treatment | See ¶ ___ for more details |
|---|---|---|---|
| WCP Fund I LLC as Servicer for Pacific RBLF Funding Trust | $510,498.25 as of the Petition Date Deed of Trust Liber 21365/Page 438 See POC 1 | To be paid at Closing | 25-27 |
| J Paul Builders LLC | $994,413.35 as of the Petition Date Mechanic's Lien Howard County Case No.: C-13-CV-22-000026 | To be paid at Closing | 28-29 |
| Howard County, Maryland | Up to $11,022.75 | To be paid at Closing | 30 |

25.     **WCP Fund I LLC as Servicer for Pacific RBLF Funding Trust**. Upon information and belief, on February 24, 2022, the Debtor borrowed $350,000.00 from WCP Fund I LLC.

26.     WCP's loan is secured by a deed of trust on the Property.   The deed of trust is recorded in the Land Records of Howard County at Liber 21365/Page 438.[5]

27.     According to its Proof of Claim (POC-1) WCP was owed $510,498.25 as of the Petition Date.  Interest has continued to accrue.

28.     **J. Paul Builders LLC**.  J. Paul has filed POC-5 in the amount of 2,166,521.74.  The claim is secured to the extent of a mechanic's lien in the amount of $924,861.15.

29.     See also, Notice of Lis Pendens at Book 220/Page 281

30.     **Howard County, Maryland**. The Debtor owes real property taxes for the past and current year.  Taxes are estimated at up to $11,022.75.

---

[5] Other documents regarding WCP's loan are attached to its Opposition to Application for Authority to Employ Tydings & Rosenberg [Dkt. 15].

## Authority to Sell

31.     Pursuant to §363(b)(1) of the Bankruptcy Code, a trustee, after notice and hearing, may use, sell or lease property of the estate other than in the ordinary course of business.

32.     Section 363(b)(1) provision does not explicitly set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan. However, courts have required that the decision to sell assets outside the ordinary course of business be based upon the sound business judgment of the trustee.  *See, e.g., In re Modanlo*, 412 B.R. 715, 732 (Bankr. D. Md. 2006) *subsequently aff'd*, 266 F. App'x 272 (4th Cir. 2008); *In re Fischer*, 03-13704, 2010 WL 2746329, at *10 (Bankr. D. Md. July 9, 2010).

33.     The Plan Administrator submits that the decision to proceed with the proposed sale is based upon sound business judgment and should be approved. A trustee's showing of a sound business purpose need not be unduly exhaustive; rather a trustee is "simply required to justify the proposed disposition with sound business reasons."  *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984); *see also U.S. ex rel. Rahman v. Oncology Assocs., P.C.,* 269 B.R. 139, 161 (D. Md. 2001) (concluding that the "standard to be applied by a court in determining whether or not to approve the disposition of property is whether the trustee exercised sound business judgment" and that the court must determine "whether a 'sound business reason' exists for such action").

34.     The Plan Administrator and his predecessors have extensively marketed the Property.  The stated means for the execution of the Plan was is to sell the Property. The raison d'être of the Plan Administrator's appointment is to sell the Property.  The Plan Administrator submits that he has demonstrated and articulated ample business justification for the proposed sale.

## The Proposed Sale Satisfies § 363(f) of the Bankruptcy Code

35.     Pursuant to §363(f) of the Bankruptcy Code, the trustee may sell property free and clear of any interest in such property of an entity other than the estate if (i) permitted under applicable non-bankruptcy law, (ii) the party asserting such interest consents, (iii) the interest is a lien and the purchase price for the property is greater than

the aggregate amount of all liens on the property, (iv) the interest is the subject of a bona fide dispute, or (v) the party asserting the interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest.

36.    Section 363(f) of the Bankruptcy Code is stated in the disjunctive. Thus, it is only necessary for the Trustee to satisfy one of the five conditions of §363(f). *See* 11 U.S.C. § 363(f); *In re Collins*, 180 B.R. 447, 450 (Bankr. E.D. Va. 1995) ("Section 363(f) is phrased in the disjunctive, such that only *one* of the enumerated conditions must be met in order for the Court to approve the proposed sale.") (emphasis in original); *In re Byrd*, 04-35620-TJC, 2007 WL 1485441, at *14 (Bankr. D. Md. May 18, 2007) *aff'd sub nom. Byrd v. Hoffman*, 417 B.R. 320 (D. Md. 2008) *aff'd sub nom. In re Byrd*, 331 F. App'x 212 (4th Cir. 2009).

37.    The Plan Administrator believes, and therefore avers, that he will be able to demonstrate that he has satisfied one or more of these conditions with respect to each and every entity claiming an interest in or lien upon such Property and that he should be authorized to sell the Property free and clear of all liens, claims, encumbrances and interests.

### Purchaser Is Entitled To The Protections Of Section 363(m)

38.    Section 363(m) of the Bankruptcy Code provides for certain protections to be provided to good faith purchasers of estate assets pursuant to § 363(b).

39.    Thus, where the purchase of assets is in good faith, § 363(m) protects parties from the consequences of the reversal or modification of an authorization of sale. While the Bankruptcy Code does not define "good faith", the Fourth Circuit has held that a good faith purchaser is "one who purchases the assets for value, in good faith, and without notice of adverse claims." *Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1197 (7th Cir. 1978)). To constitute lack of good faith, a purchaser's conduct in connection with the sale must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders." Id. at 1024; *In re Xact Telesolutions, Inc.*, CIV.A. DKC 2005-1230, 2006 WL 66665, at *5 (D. Md. Jan. 10, 2006). Due to the absence of a bright line test for good faith, the determination is based on the facts of each case, concentrating on the "integrity of [an

actor's] conduct during the sale proceedings." *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986).

40.     The Plan Administrator requests that the Court find that the Purchaser is entitled to the protections of a good faith purchaser under § 363(m) because, among other things, the sale bears the hallmarks of an arm's-length sale and the Purchaser should be afforded the protections of a good faith purchaser. There is no evidence of fraud or collusion, the Purchaser is not an insider of the Plan Administrator or the Debtor, as that term is defined in § 101(31) of the Bankruptcy Code, and all negotiations have been and will continue to be conducted on an arm's length, good faith basis.

## 11 U.S.C. § 1146

41.     The Bankruptcy Code provides a stamp-tax exemption for any asset transfer "under a plan confirmed under [Chapter 11]" of the Code. In particular,

> [t]he issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 or 1191 of this title, may not be taxed under any law imposing a stamp tax or similar tax.

11 U.S.C. § 1146(a).

42.     Section 4.4 of the Plan echoes and expands upon § 1146:

> the following transactions shall not be subject to any stamp, real estate transfer, recapture, mortgage recording or other similar tax: the issuance, transfer or exchange of any notes or equity securities under the Plan; sale of the Debtor's Real Property or other assets; the creation of any mortgage, deed of trust or other security interest; the making or assignment of any lease or sublease; or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan; and/or any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan.

43.     As applicable herein, the import of § 1146 is to exempt the proposed sale from recordation and transfer taxes occasioned by the proposed sale of the Property.

## Waiver of Stay

44.     The Plan Administrator requests that the Sale Order be made effective immediately by providing that the stays under Bankruptcy Rules 6004(h) is waived and inapplicable with respect to the sale of the Property. The sale process here has been

fair and closing is to take place shortly following approval of the Sale.

45.     Although Bankruptcy Rules 6004(h) and the Advisory Committee Notes are silent as to when a court should order otherwise and eliminate or reduce the fourteen (14) day stay period, *Collier on Bankruptcy* suggests that the fourteen (14) day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 COLLIER ON BANKRUPTCY ¶ 6004.11, 6006.4 (16th ed. 2013). Waiver of these stays will allow the Sale Order approving this Sale Motion to become effective immediately upon entry on the Court's docket so that the Plan Administrator can promptly complete the sale proposed herein.

## Conclusion and Relief Sought

46.     In the exercise of his business judgment, the Plan Administrator believes, and therefore avers, that the proposed sale is in the best interest of the creditors of this estate.

WHEREFORE, the Plan Administrator moves for the entry of an Order substantially in the form attached hereto which provides relief, including:

A.     Authorizing the Plan Administrator to sell the Property to the Purchaser for the Purchase Price on an "as is," no warranty basis, free and clear of all liens, claims, encumbrances, or interests with said liens, claims and interests, if any, to attach to the proceeds of sale, subject to a further determination as to their validity, priority or extent;

B.     Authorizing the Plan Administrator to take any and all actions and to execute any and all documents necessary and appropriate to effectuate and consummate the terms of said sale of the Property including without limitation, executing a deed selling and conveying the interests of the Estate and the Debtor in and to the Property to the Purchaser, assignee, or such other person as may be approved by the Court;

C.     Authorizing the Plan Administrator to disburse from the proceeds of sale at or after settlement, directly or through an intermediary including a title company:

   i.     Subject to 11 U.S.C. § 1146 and § 4.4 of the Plan, any transfer or recordation fees and stamps and costs of sale;

ii.    the principal and interest and other allowable charges and amounts due to any person if and to the extent the Plan Administrator concludes that such person holds an interest or claim secured by a non-avoidable, non-subordinated, valid and perfected interest or lien on the Property;

iii.    the approved fees and reimbursement of expenses to the Plan Administrator's real estate professionals; and

iv.    secured, administrative or priority real property taxes, water/sewage charges, ground rent, tax sale purchaser fees or expenses, and secured and postpetition condominium/HOA fees and assessments due (if any) as of the date of closing

D.    Transferring all existing liens, claims and interests, if any, against the Property to the proceeds of the sale with the same priority as such liens, claims and interests had against the Property pre-sale but, upon motion or objection thereto, subject to the validity, extent, or priority of such liens, claims and interests and without prejudice to the rights and claims of each lienholder with respect to these proceeds;

E.    Directing that all proceeds of sale not disbursed at the direction of the Plan Administrator as authorized herein shall be turned over to and retained by the Plan Administrator in escrow for distribution in accordance with the Bankruptcy Code and/or further Order of this Court;

F.    Waiving any stay pursuant to Fed. R. Bankr. Proc. 6004(h); and

G.    Granting the Plan Administrator such other and further relief as is just and proper.

/s/ Zvi Guttman_____
Zvi Guttman (06902)
The Law Offices of Zvi Guttman, P.A.
P.O. Box 32308
Baltimore, Maryland 21282
Zvi@ZviGuttman.com
(410) 580-0500 Phone
(410) 580-0700 Fax

**Attorney for Zvi Guttman, Plan Administrator**