USBC-MD B FILED
23 JUL '25 PM1:39

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
### BALTIMORE DIVISION

In re:                                                    )
                                                          )
      CTLC, LLC,                              )    Chapter 11
                Debtor          )    Case No. 23-15444-DER
                                                          )
                                                          )

WCP Fund I LLC
Servicer Pacific RBLF Funding Trust

J. Paul Builders, LLC

Respondents

Zvi Guttman
Plan Administrator

> **THIS IS AN OBJECTION TO YOUR CLAIM. THE OBJECTING PARTY IS ASKING THE COURT TO DISALLOW OR MODIFY THE CLAIM THAT YOU FILED IN THIS BANKRUPTCY CASE. YOU SHOULD IMMEDIATELY CONTACT THE OBJECTING PARTY TO RESOLVE THE DISPUTE. IF YOU DO NOT REACH AN AGREEMENT, YOU MUST FILE A RESPONSE TO THIS OBJECTION AND SEND A COPY OF YOUR RESPONSE TO THE OBJECTING PARTY WITHIN 30 DAYS AFTER THE OBJECTION WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE OBJECTION IS NOT VALID. IF YOU DO NOT FILE A RESPONSE BY SEPTEMBER 13, 2023, YOUR CLAIM MAY BE DISALLOWED OR MODIFIED WITHOUT A HEARING.**

### DEBTOR'S OBJECTION TO CLAIM NO. 5
### OF CLAIMANT J. PAUL BUILDERS, LLC

CTLC, LLC debtor and debtor in possession (the "Debtor"), solely in its capacity, hereby objects to Claim No. 5 (the "Claim") filed by J. Paul Builders LLC. In support of this Objection, the Debtor respectfully states as follows:

### PRELIMINARY STATEMENT

1. The Claim purports to assert a secured lien based on a purported mechanic's lien filed against the Debtor's real property located at 15125 Devlin Drive Glenelg, MD 21737. In reality, the lien is invalid and unenforceable under Maryland law because the Claimant failed to comply with the statutory prerequisites for establishing a mechanic's lien. The Claimants lien was unquestionably based on materially false representations. Moreover, Maryland law specifically criminalizes the filing of a fraudulent lien, rendering any purported lien void ab initio.

22

2. Under section 502(b)(1) of the Bankruptcy Code, a claim that is unenforceable under applicable law must be disallowed. Because Claimant's mechanic's lien is based on materially false statements and invoices, the Claim must be disallowed in its entirety. For these reasons and as set forth below, the Debtor requests that the Court sustain this Objection and disallow the Claim in full.

### JURISDICTION AND VENUE

3. The Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 157 and 1334. This Objection is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory predicates for the relief requested are Bankruptcy Code sections 502 and 105, and Federal Rule of Bankruptcy Procedure 3007.

### BACKGROUND AND RELEVANT FACTS

6. On August 2, 2023, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On August 15, 2024, the Court entered an Order Confirming the Debtor's chapter 11 Plan (the "Plan").

7. Claimant filed a proof of claim on November 21, 2023, asserting a secured lien in the amount of $994,413.35, purportedly arising from labor and materials allegedly furnished to the Debtor at the property address 15125 Devlin Drive, Glenelg, MD 21737. The Claim is designated as Claim No. 5 on the Court's claims register.

8. Pursuant to the Plan, the deadline for the Debtor to complete a sale of the Property was December 31, 2024. This was a negotiated deadline, and the Debtor agreed that if that deadline was not met, the Plan required that the Property be sold through an auction process.

9. Thereafter, the Debtor sought to extend the December 31, 2024, sale deadline. Pursuant to Consent Order Resolving Motion to Extend Time entered on January 23, 2025, the sale deadline was extended to March 1, 2025. Pursuant to the Consent Order, if there is not a confirmed contract for the sale of the Property by March 1, 2025, the auction process is to immediately commence.

10. The Property did not sell in the time provided under the Plan or under extensions set forth in subsequent orders.

11. On May 29, 2025, the Court entered an Order Granting Motion to Compel Debtor's Compliance with Terms of Confirmed Chapter 11 Plan of Reorganization in which the Court directed the appointment of a plan administrator.

12. On July 10, 2025, the plan administrator filed an Emergency Motion to sell the property with a low-contingency, as-is, where-is contract, with no representations or warranties (the "Contract") for the sale of the Property to the Purchaser to close no later than August 1, 2025.

13. In addition to the Property itself, the sale includes personal property and fixtures (e.g., appliances, window treatments, etc.) aka "incidental property" in and about the Property. Similarly, the sale includes any and all construction materials, partially installed or uninstalled fixtures, equipment, supplies, and other building components or related items located on or intended for use at the Property, including but not limited to lumber, drywall, roofing materials, cabinetry, appliances, lighting fixtures, plumbing fixtures, mechanical systems, hardware, tools, fasteners, surplus inventory, and any other goods or materials stored, staged, or left on-site, whether or not incorporated into the structure. This shall also encompass any construction debris, packaging, and abandoned equipment, whether originally intended for installation or for temporary use in connection with the construction of the improvements on the Property.

## BASIS FOR OBJECTION

Claim Is Based on Fraudulent Lien and Incorrect Amount Owed

14. Maryland Criminal Law Code § 3-808 prohibits the filing of false or fraudulent liens, subjecting violators to criminal penalties and rendering any such lien void. Claimant knowingly filed a petition containing materially false statements, including but not limited to misrepresentations of invoice amounts and double counting subcontractor invoice amounts for other lawsuits already filed with the court, all with the intent to defraud the Debtor and other subcontractors. Such conduct falls squarely within the definition of a fraudulent lien under § 3-808(a).

15. This Objection is founded on Bankruptcy Code section 502(b)(1), which provides that "a claim . . . is unenforceable against the debtor and property of the debtor under any agreement or applicable law" must be disallowed. Claimant's alleged secured claim is unenforceable under Maryland law and must be disallowed in its entirety.

16. The Claimant filed this lien with material misrepresentations, including:
     a) False statements regarding the scope and value of the work performed
     b) Fictitious invoices and documentation
     c) Substantial misrepresentation of the lien amount

17. Affidavits of Jim Coates, Syed Shah and Sandra Grier are submitted to support the improper establishment of the Mechanic's lien.

Because Claimant's lien is based on fraudulent representations and is void by operation of § 3-808, the Claim is unenforceable under § 502(b)(1) of the Bankruptcy Code and must be disallowed.

## RESERVATION OF RIGHTS

The Debtor reserves its rights to supplement this Objection and to assert additional grounds for disallowance or subordination of the Claim, including without limitation under Bankruptcy Code sections 502(d) and 510(c), and to object to any amended claim or additional claims filed by Claimant.

## CONCLUSION AND PRAYER

WHEREFORE, the Debtor respectfully requests that the Court enter an order:

1. Sustaining this Objection and disallowing Claim No. 5 in its entirety, or
2. Granting such other and further relief as is just and proper.

Respectfully submitted,

Sandra Grier
President CTLC, LLC
Dated: July 23, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2025, a copy of the foregoing was served on all registered participants via first-class U.S. Mail, postage prepaid, upon the following:

Sandra Grier
President, CTLC, LLC

Zvi Guttman, Esq.
Plan Administrator
The Law Offices of Zvi Guttman, P.A.
Post Office Box 32308
Baltimore, Maryland 21282
www.GuttmanLaw

Richard L. Costella
Tydings & Rosenberg LLP
One E. Pratt Street, Suite 901
Baltimore, MD 21202
rcostella@tydings.com

Joseph Michael Selba
Tydings & Rosenberg LLP
1 East Pratt Street
Suite 901
Baltimore, MD 21202
JSelba@tydingslaw.com

Brent C. Strickland, Esquire (Bar No. 22704)
Whiteford, Taylor & Preston L.L.P.
8830 Standford Blvd, Suite 400
Columbia, MD 21045
bstrickland@whitefordlaw.com

**IN THE UNITED STATES BANKRUPCTY**
**COURT FOR THE DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

In re:                                                    )
                                                          )
    CTLC, LLC,                          )   Chapter 11
        Debtor           )   Case No. 23-15444-DER
                                                          )
                                                          )

WCP Fund I LLC
Servicer Pacific RBLF Funding Trust

J. Paul Builders, LLC

Respondents

Zvi Guttman
Plan Administrator

> **THIS IS AN OBJECTION TO YOUR CLAIM. THE OBJECTING PARTY IS ASKING THE COURT TO DISALLOW OR MODIFY THE CLAIM THAT YOU FILED IN THIS BANKRUPTCY CASE. YOU SHOULD IMMEDIATELY CONTACT THE OBJECTING PARTY TO RESOLVE THE DISPUTE. IF YOU DO NOT REACH AN AGREEMENT, YOU MUST FILE A RESPONSE TO THIS OBJECTION AND SEND A COPY OF YOUR RESPONSE TO THE OBJECTING PARTY WITHIN 30 DAYS AFTER THE OBJECTION WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE OBJECTION IS NOT VALID. IF YOU DO NOT FILE A RESPONSE BY SEPTEMBER 13, 2023, YOUR CLAIM MAY BE DISALLOWED OR MODIFIED WITHOUT A HEARING.**

**DEBTOR'S OBJECTION TO CLAIM NO. 5**
**OF CLAIMANT J. PAUL BUILDERS, LLC**

**PLEASE TAKE NOTICE,** CTLC, LLC debtor and debtor in possession (the "Debtor"), solely in its capacity, hereby objects to Claim No. 5 (the "Claim") filed by J. Paul Builders LLC.

**PLEASE TAKE FURTHER NOTICE,** that by the Objection, the Debtor seeks to disallow your

claim. **YOUR RIGHTS MAY BE AFFECTED BY THIS OBJECTION.**

    **PLEASE TAKE FURTHER NOTICE** that responses to the Objection, if any, must be

filed by the deadline with the United States Bankruptcy Court of Maryland Baltimore Division, Clerk's Office, 101 W. Lombard Street Baltimore, Maryland 21201 and served on the undersigned counsel to be received on or before the Response Deadline.

**PLEASE TAKE FURTHER NOTICE THAT IF NO RESPONSE TO AN INDIVIDUAL CLAIM LISTED IN THE OBJECTION IS TIMELY FILED, SERVED, AND RECEIVED BY THE RESPONSE DEADLINE IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE OBJECTION WITH RESPECT TO ANY SUCH CLAIM WITHOUT FURTHER NOTICE OR HEARING.**

Date:   July 23, 2025.                    **Sandra Grier President CTLC, LLC**

**IN THE CIRCUIT COURT FOR HOWARD COUNTY, MARYLAND**

| | |
|---|---|
| **J. PAUL BUILDERS, LLC** | ) |
| | ) |
| Plaintiff/Petitioner, | ) |
| | ) |
| v. | ) Case No. C-13-CV-22-000026 |
| | ) |
| **CTLC, LLC t/a CTLC, INC.,** | ) |
| | ) |
| Defendant/Respondent. | ) |

## AFFIDAVIT OF SYED SHAH

I, Syed Shah, being duly sworn, do hereby depose and state:

1.      I am of legal age, have personal knowledge of the following facts, and am competent to testify to same. At all times relevant herein, I was and still am the employed by Defendant CTLC, LLC ("CTLC")

2.      In my capacity as Project Manager at CTLC, I became familiar with the real property and partially-constructed improvement at 15125 Devlin Drive, Glenelg, Maryland 21737 (the "Property") that is the subject of the above-captioned lawsuit (the "Lawsuit"), and the work contracted for and performed by J. Paul Builders, LLC ("J. Paul"), as the builder for the partially-constructed improvement.

3.      Indeed, I was onsite at the Property weekly during 2021 and 2022 while construction was being performed and observed the work that was being performed both by J. Paul and its subcontractors.

4.      On behalf of CTLC, I have reviewed the invoices attached as Exhibit 5 to J. Paul's Petition and compared them to the work that was actually done by J. Paul and/or its subcontractors, and the materials and equipment that was actually delivered to the Property.

1

5.      There are many false representations in the invoices that J. Paul filed in support of its request for entry of a mechanic's lien.

6.      One of J. Paul's subcontractors, INI, Inc. ("INI"), agreed to provide (i) the wiring design and installation for internet access, the telephone communication systems, wireless networking, and all audio/video equipment at the Property; (ii) the equipment required for the audio, video, and wireless internet features at the Property; and (iii) installation of a complete home integration system at the Property.

7.      A true and correct copy of INI Inc. Invoice No. 1155 is attached to this Affidavit as **Exhibit 1**.

8.      As reflected on Invoice No. 1155, INI ordered certain speakers, wiring, and other equipment for the Property, and planned for the installation of same.  Pursuant to the payment terms, twenty percent (20%) of the invoice total was due at delivery of the materials to the Property, for a total of $81,471.96 due at delivery for Invoice No. 1155.

9.      The materials reflected on Invoice No. 1155 were never delivered to the Property.

10.     A true and correct copy of INI Inc. Invoice No. 1197 is attached to this Affidavit as **Exhibit 2**.

11.     As reflected on Invoice No. 1197, INI ordered additional materials and equipment for the Property.  The total amount due for the materials and equipment reflected on Invoice No. 1197 was $40,545.00

12.     The materials reflected on Invoice No. 1197 were never delivered to the Property.

13.     A true and correct copy of INI Inc. Invoice No. 1198 is attached to this Affidavit as **Exhibit 3**.

2

14.     As reflected on Invoice No. 1198, INI ordered additional speaker equipment and other materials for the Property. The total amount due for the materials and equipment reflected on Invoice No. 1198 was $12,650.00.

15.     The equipment and materials reflected on Invoice No. 1198 were never delivered to the Property.

16.     The total amount of materials and equipment invoiced as reflected on Invoice Nos. 1155, 1197 and 1198 is $134,666.95. Again, these materials and equipment were never delivered to the Property.

17.     There are other inconsistencies among the invoices that J. Paul filed in support of its request for entry of a mechanic's lien.

18.     For example, J. Paul included in its Petition Invoice Nos. 2021379; 2021416; and 2021518 from Jose Pimenta Construction in the amounts of $136,885.22; $77,380.00; and $156,466.78, respectively. These invoices are for materials and installation for limestone on first and second floor bands, window headers and jambs, coping and limestone for front door and represent progress invoices for 60% of the work completed and 100% of material delivered. *See* Motion to Strike Improperly Billed Invoices Filed in Support of Complaint and Petition to Establish and Enforce Mechanic's Lien; Request for Sanctions ("CTLC Motion to Strike and for Sanctions") at Exhibits A, B, and E.

19.     The limestone work done by Jose Pimenta is not complete. Attached as **Exhibit 4** are photographs of the exterior of the partially-constructed improvement (the "Improvement"). The photos show a good deal of the Improvement is still yellow, meaning the limestone work has not been done yet for these portions. Further, the limestone work that has been started is incomplete, i.e. where the limestone only goes up about a third of the way on the front of the

3

house. The remaining work described in Invoice Nos. 2021379, 2021416, and 2021518 was never completed, and Mr. Pimenta did not achieve 60% completion as described in Invoice No. 2021518.

20.     J. Paul included in its Petition an invoice from Bison Drywall invoice indicating that ninety percent (90%) of the EIFS application is complete. CTLC Motion to Strike and for Sanctions at Exhibit B.

21.     The pictures attached at Exhibit 4 show that 90% of the EIFS application is not complete because a large portion of the exterior of the house is still yellow, which means that the EIFS application has not been applied to these areas. With this much of the exterior still yellow it cannot be true that 90% of the EIFS application is complete.

22.     J. Paul included in its Petition invoices from Miller's Chimney & Hearth Retailer for $29,673.08 for a Dimplex linear electric fireplace plus the installation of four (4) Accucraft fireplaces. CTLC Motion to Strike and for Sanctions at Exhibit B. There is no Dimplex unit at the Property, and none of the fireplaces have been installed.

23.     J. Paul also included Invoice No. 252455 in the amount of $22,881.75 for a great room fireplace. CTLC Motion to Strike and for Sanctions at Exhibit D. This great room fireplace was never delivered and is not on site at the Property.

24.     J. Paul master invoice 12/1/2021 includes Invoice No. 20-545-R1 from Metropolitan Fire Protection in the amount of $8,646.75 is for the fire sprinkler system rough-in (70% of Proposal Total). CTLC Motion to Strike and for Sanctions at Exhibit B.

25.     Attached as **Exhibit 5** are photographs that show that there is one pipe run in six rooms of the house. The rest of the orange pipes remain on the floor of the garage.

4

26.     J. Paul's master invoice dated 12/30/2021 includes $9,200.85 for DNB

Construction Invoice No. 6, for ninety percent (90%) completion of the roof to date. The

pictures attached as Exhibit 1 show that the right side of the house has no roofing material

applied, and that edges and flashing are missing for the roof. This was also the conclusion of

Jonathan Fishbeck of EstateSpace, a construction management company CTLC hired to perform

an initial site inspection of the Property. Because the roof was not properly installed there are

active leaks and resulting water damage at the Property.

## **Affirmation**

I solemnly affirm under the penalties of perjury and upon personal knowledge that the

contents of the foregoing paper are true.

Syed Shah
Date:   April __6___, 2023

6

IN THE CIRCUIT COURT FOR HOWARD COUNTY, MARYLAND

| | | |
|---|---|---|
| **J. PAUL BUILDERS, LLC** | ) | |
| | ) | |
| Plaintiff/Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. C-13-CV-22-000026 |
| | ) | |
| **CTLC, LLC t/a CTLC, INC.,** | ) | |
| | ) | |
| Defendant/Respondent. | ) | |

### AFFIDAVIT OF SANDRA GRIER IN SUPPORT MOTION TO STRIKE IMPROPERLY BILLED INVOICES FILED IN SUPPORT OF COMPLAINT AND PETITION TO ESTABLISH AND ENFORCE MECHANIC'S LIEN; AND REQUEST FOR SANCTIONS

I, Sandra Grier, being duly sworn, do hereby depose and state:

1.      I am of legal age, have personal knowledge of the following facts, and am competent to testify to same.

2.      I am a co-owner of the Defendant/Respondent in this matter, CTLC, LLC t/a CTLC, Inc. ("CTLC").

3.      Plaintiff/Petitioner J. Paul Builders, LLC ("J. Paul" or "Petitioner"), in support of J. Paul's Complaint and Petition to Establish and Enforce Mechanic's Lien; Request for Attorneys' Fees (the "Petition"), filed certain invoices representing the amounts that J. Paul swore under oath were properly billed to CTLC for work done and materials delivered in

1

connection with J. Paul's work as the general contractor at the property CTLC owns at 15125 Devlin Drive, Glenelg, Maryland (the "Property").

4.      On behalf of CTLC, I have reviewed the invoices attached as Exhibit 5 to J. Paul's Petition and compared them to the work that was actually done by J. Paul and/or its subcontractors, and the materials and equipment that was actually delivered to the Property.

5.      There are many inconsistencies and blatantly false representations in the invoices that J. Paul filed in support of its request for entry of a mechanic's lien.

6.      For example, J. Paul included in its Petition Invoice Nos. 2021379; 2021416; and 2021518 from Jose Pimenta Construction in the amounts of $136,885.22; $77,380.00; and $156,466.78, respectively. These invoices are for materials and installation for limestone on first and second floor bands, window headers and jambs, coping and limestone for front door and represent progress invoices for 60% of the work completed and 100% of material delivered. *See* Motion to Strike Improperly Billed Invoices Filed in Support of Complaint and Petition to Establish and Enforce Mechanic's Lien; Request for Sanctions ("CTLC Motion to Strike and for Sanctions") at Exhibits A, B, and E.

7.      Attached as **Exhibit 1** are photographs of the work performed by Jose Pimenta which show that the limestone work is not complete. As is clear from the photographs, the exterior of the partially-constructed improvement (the "Improvement") is the supposed to be stone, except for the rounded areas that cannot be stone. The photos show a good deal of the Improvement is still yellow, meaning the limestone work has not been done yet for these portions. Further, the photos show that the limestone work that has been started is incomplete, i.e. where the limestone only goes up about a third of the way on the front of the house. The remaining work described in Invoice Nos. 2021379, 2021416, and 2021518 was never

2

completed, and Mr. Pimenta did not achieve 60% completion as described in Invoice No. 2021518.

8.  J. Paul included in its Petition an invoice from Bison Drywall invoice indicating that ninety percent (90%) of the EIFS application is complete. CTLC Motion to Strike and for Sanctions at Exhibit B.

9.  The pictures attached at Exhibit 1 show that 90% of the EIFS application is not complete because a large portion of the exterior of the house is still yellow, which means that the EIFS application has not been applied to these areas.  The front of the Improvement is supposed to be limestone, and the EIFS should go on the rounded areas that cannot be stone, for example under the porte cochère.  With this much of the exterior still yellow it cannot be true that 90% of the EIFS application is complete.

10.  J. Paul included in its Petition invoices from Miller's Chimney & Hearth Retailer for $29,673.08 for a Dimplex linear electric fireplace plus the installation of four (4) Accucraft fireplaces. CTLC Motion to Strike and for Sanctions at Exhibit B.  There is no Dimplex unit at the Property, and none of the fireplaces have been installed.

11.  J. Paul also included Invoice No. 252455 in the amount of $22,881.75 for a great room fireplace. CTLC Motion to Strike and for Sanctions at Exhibit D.  This great room fireplace was never delivered and is not on site at the Property.

12.  J. Paul master invoice 12/1/2021 includes Invoice No. 20-545-R1 from Metropolitan Fire Protection in the amount of $8,646.75 is for the fire sprinkler system rough-in (70% of Proposal Total).  CTLC Motion to Strike and for Sanctions at Exhibit B.

13.  Attached as **Exhibit 2** are photographs that show that there is one pipe run in six rooms of the house.  The rest of the orange pipes remain on the floor of the garage.

3

14.     J. Paul's master invoice dated 12/30/2021 includes $9,200.85 for DNB Construction Invoice No. 6, for ninety percent (90%) completion of the roof to date.

15.     The pictures attached as Exhibit 1 show that the right side of the house has no roofing material applied, and that edges and flashing are missing for the roof. This was also the conclusion of Jonathan Fishbeck of EstateSpace, a construction management company we hired to perform an initial site inspection of the Property. Because the roof was not properly installed there are active leaks and resulting water damage at the Property.

16.     J. Paul master invoice dated 11/1/2021 reflects a bill of $68,999.89 for General Liability Insurance to date; $10,875.00 for Builders Risk Insurance for 2020; and $19,875.00 for Builders Risk Insurance for 2021. CTLC Motion to Strike and for Sanctions at Exhibit C.

17.     J. Paul has never provided any documentation or evidence that these policies were secured, despite numerous requests from myself, my husband, and our former construction manager, Drew Padgett.

4

## Affirmation

I solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the foregoing paper are true.

_Sandra Grier_
_____

Sandra Grier
Date:   April 6th, 2023

IN THE CIRCUIT COURT FOR HOWARD COUNTY, MARYLAND

**J. PAUL BUILDERS, LLC**                        )
                                                 )
     Plaintiff/Petitioner,                )
                                                 )
    v.                                       )    Case No. C-13-CV-22-000026
                                                 )
**CTLC, LLC t/a CTLC, INC..**                    )
                                                 )
     Defendant/Respondent.                )

### <u>AFFIDAVIT OF JAMES COATES</u>

I, James Coates, being duly sworn, do hereby depose and state:

1. I am of legal age, have personal knowledge of the following facts, and am competent to testify to same. At all times relevant herein, I was and still am the Owner and President of INI Inc. ("INI").

2. In my capacity as President of INI, I became familiar with the real property and partially-constructed improvement at 15125 Devlin Drive, Glenelg, Maryland 21737 (the "Property") that is the subject of the above-captioned lawsuit (the "Lawsuit"), and the work contracted for and performed by J. Paul Builders, LLC ("J. Paul"), as the builder for the partially-constructed improvement.

3. INI and J. Paul entered into a subcontractor agreement on DATE (the "INI Subcontractor Agreement"), pursuant to which INI would provide (i) the wiring design and installation for internet access, the telephone communication systems, wireless networking, and all audio/video equipment at the Property; (ii) the equipment required for the audio, video, and wireless internet features at the Property; and (iii) installation of a complete home integration system at the Property. A true and correct copy of INI Subcontractor Agreement is attached to this Affidavit as **<u>Exhibit A</u>**.

1

4.      Pursuant to the INI Subcontractor Agreement, INI ordered speakers, wiring, and other pieces of equipment that were to be installed at the Property.

5.      A true and correct copy of INI Inc. Invoice No. 1155 is attached to this Affidavit as **Exhibit B**.

6.      As reflected on Invoice No. 1155, INI ordered certain speakers, wiring, and other equipment for the Property, and planned for the installation of same.  Pursuant to the payment terms, twenty percent (20%) of the invoice total was due at delivery of the materials to the Property, for a total of $81,471.96 due at delivery for Invoice No. 1155.

7.      The $81,471.96 amount due as reflected on Invoice No. 1155 was never paid, therefore the materials reflected on Invoice No. 1155 were not delivered to the Property, were being stored in INI's warehouse located in Leesburg Virginia until recently.  As this has been ongoing since January of 2022, these materials have since been used for other projects.

8.      A true and correct copy of INI Inc. Invoice No. 1197 is attached to this Affidavit as **Exhibit C**.

9.      As reflected on Invoice No. 1197, INI ordered additional materials and equipment for the Property.  The total amount due for the materials and equipment reflected on Invoice No. 1197 was $40,545.00

10.     The $40,545.00 amount due as reflected on Invoice No. 1197 was never paid, therefore the materials reflected on Invoice No. 1197 were not delivered to the Property and remain in INI's warehouse located in Leesburg, Virginia.

11.     A true and correct copy of INI Inc. Invoice No. 1198 is attached to this Affidavit as **Exhibit D**.

2

12.     As reflected on Invoice No. 1198, INI ordered additional speaker equipment and other materials for the Property. The total amount due for the materials and equipment reflected on Invoice No. 1198 was $12,650.00.

13.     The $12,650.00 amount due as reflected on Invoice No. 1198 was never paid, therefore the equipment and materials reflected on Invoice No. 1198 were not delivered to the Property and remain in INI's warehouse located in Leesburg, Virginia.

14.     The total amount of materials and equipment ordered and invoiced as reflected on Invoice Nos. 1155, 1197 and 1198 is $134,666.95. Again, these materials and equipment were ordered for the planned installation at the Property. However, since the amounts due under Invoice Nos. 1155, 1197 and 1198 were not paid, the equipment was not delivered to the Property.

**Affirmation**

I solemnly affirm under the penalties of perjury and upon personal knowledge that the

contents of the foregoing paper are true.

James Coates
Date:    February __17__, 2023

4