**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) |
| CTLC, LLC, | )   Chapter 11 |
| | )   Case No. 23-15444-DER |
| Debtor. | ) |
| | ) |
| | ) |

**RESPONSE IN OPPOSITION TO DEBTOR'S OBJECTION TO
CLAIM OF J. PAUL BUILDERS, LLC (CLAIM NO. 5)**

J. Paul Builders, LLC ("J. Paul"), by and through its counsel, files this *Response in Opposition to Debtor's Objection to Claim of J. Paul Builders, LLC (Claim No. 5)* (the "Claim Objection"), and states as follows:

**BACKGROUND**

1.      On August 2, 2023, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Maryland (the "Court").

2.      The Debtor's primary asset was a custom home site located in Glenelg, Maryland, and a partially completed custom home thereon (the "Property").

3.      J. Paul holds a secured claim against the Property resulting from a final mechanic's lien against the Property, and also an unsecured claim against the Debtor's estate.

**THE DEBTOR'S FAILURE TO COMPLY WITH CHAPTER 11 PLAN**

4.      On August 15, 2024, the Court entered an Order Confirming the Debtor's Chapter 11 Plan (the "Plan") [Docket No. 147].

5.      Pursuant to the Plan, the deadline for the Debtor to complete a sale of the Property was December 31, 2024. This was a negotiated deadline, and the Debtor agreed that if the deadline

to complete a sale was not met, the Plan required that the Property be sold through an auction process. The Confidential Plan Supplement agreed to by the Debtor also provided as follows:

> Consent to Expedited Plan Administrator Appointment.  The Debtor hereby irrevocably grants its consent to the appointment of a Plan Administrator on an expedited basis in the event that the Debtor fails to comply with auction deadlines set forth in the preceding paragraph.  To effectuate the appointment of a Plan Administrator, Class 4 or Class 5 claimants may file a motion for such appointment and seek the Court's consideration of same on an expedited basis. **Upon appointment, the Plan Administrator shall have the exclusive autorty to effectuate the terms of the Plan, subject to Court approval.**

(Emphasis added.)

6.      Thereafter, the Debtor sought to extend the December 31, 2024, sale deadline. Pursuant to a Consent Order Resolving Motion to Extend Time entered on January 23, 2025, the sale deadline was extended to March 1, 2025. Pursuant to the Consent Order, if a confirmed contract for the sale of the Property was not in place by March 1, 2025, the auction process was to immediately commence.

7.      The Debtor did not secure a sale contract by March 1, 2025. As required by the Plan, the Debtor, J. Paul, and Washington Capital Partners agreed that the auction would be conducted by Alex Cooper Auctioneers. However, the Debtor's representatives refused to sign an auction contract with Alex Cooper, failed to grant Alex Cooper access to the Property to prepare auction marketing materials and otherwise move forward with the auction process, and failed to cooperate in any way to allow the auction to proceed, in direct violation of the Plan.

## THE APPOINTMENT OF THE PLAN ADMINISTRATOR

8.      As a result of the Debtor's refusal to comply with the terms of the Plan, J. Paul filed a Motion to Compel Compliance with Terms of Confirmed Chapter 11 Plan of Reorganization (the "Motion to Compel").

9.      After a hearing on the Motion to Compel on May 28, 2025, the Court entered an Order Granting Motion to Compel Debtor's Compliance with Terms of Confirmed Chapter 11

Plan of Reorganization [Docket. 186] (the "Order to Compel"). The Order to Compel directed the appointment of a Plan Administrator and directed that the "Plan Administrator shall have the exclusive authority to effectuate the terms of the Plan."

10.     By Order entered May 30, 2025, the Court appointed Zvi Gutttman as Plan Administrator [Docket 188]. After his appointment, the Plan Administrator completed the sale of the Property as required by the Plan. Although Section 3.5 of the Plan required the payment of J. Paul's secured claim no later than the Sale Deadline, J. Paul did not receive payment of its secured claim at the time of closing due to the pending Claim Objection. The Plan Administrator is holding in escrow funds attributable to J. Paul's secured claim pending resolution of the Claim Objection.

## THE CLAIM OBJECTION

11.     On July 23, 2025, Sandra Grier, purporting to act as President of the Debtor, filed a pleading styled as "Debtor's Objection to Claim No. 5 of Claimant J. Paul Builders, LLC [Docket 200]."[1]

12.     On August 12, 2025, the Debtor, purporting to act through new proposed counsel, filed the Claim Objection [Docket 208], which is identical to the claim objection filed at Docket 200. This response relates to both Docket 200 and Docket 208.

13.     As set forth below, the Claim Objection is both procedurally and substantively deficient and should be overruled.

## J. PAUL'S RESPONSE TO THE CLAIM OBJECTION

14.     Section 4.3 of the Plan provides that the Debtor has the exclusive right, power, and authority to object to any claim. Pursuant to the Order to Compel, the Plan Administrator has

---

[1] The Court issued a deficiency notice with respect to this pleading because, among other things, only individuals and not entities may represent themselves under Local Rule 9010-1(a).

exclusive authority to effectuate the terms of the Plan. This means that the Debtor may only act through the Plan Administrator and not through its principals (the same principals were removed from control due to their refusal to comply with the terms of the Plan). As such, the Claim Objection should be denied for lack of standing and legal authority to file a claim objection on behalf of the Debtor.[2]

15.    Assuming *arguendo* that the Debtor's principals do somehow have standing and authority under the Plan to pursue the Claim Objection (which they clearly do not), the Claim Objection must be denied on its merits by *res judicata* and by the *Rooker Feldman Doctrine*.

16.    Including the Claim Objection, this is the sixth  attempt by the Debtor to challenge J. Paul's Final Mechanic's Lien.

## THE STATE COURT LITIGATION

17.    On February 23, 2022, the Circuit Court for Howard County, Maryland entered a final mechanic's lien (the "Final Mechanic's Lien") in favor of J. Paul and against the Debtor (the "State Court Litigation"). A copy of the Final Mechanic's Lien Order is attached here as **Exhibit A**. In obtaining the Final Mechanic's Lien, J. Paul followed all procedures in accordance with the Maryland Mechanic's Lien Statute and the Maryland Rules. At all times during the State Court Litigation, the Debtor was represented by counsel.

18.    On March 23, 2022, the Debtor filed a Motion to Reconsider, Vacate or Strike Judgment/Lien and Incorporated Memorandum in Support (the "First Motion for Reconsideration"), seeking to vacate the Final Mechanic's Lien Order. In its First Motion for Reconsideration, the Debtor contended that (a) its Motion to Vacate was timely filed; (b) the Debtor's failure to respond to the Complaint and Show Cause Order was the result of "mistake, inadvertence, or excusable neglect"; (c) J. Paul would  suffer no prejudice if the Final Mechanic's

---

[2] For the same reason, the Debtor's principals have no authority to seek to retain new counsel on behalf of the Debtor.

Lien Order was vacated; and (d) the Debtor had viable defenses to J. Paul's claims, including alleged double billing, billing for work that had not actually been performed, and defective work. A copy of the First Motion for Reconsideration is attached hereto as **Exhibit B.**

19.     By Order dated April 19, 2022, the Circuit Court entered an Order denying the First Motion for Reconsideration.

20.     On April 29, 2022, the Debtor filed a Rule 2-602 Motion for Reconsideration of Clearly Non-Final Mechanic's Lien Order, Supporting Points and Authorities Requiring Vacation of the Court's Order and Dismissal of this Case as Premature, and Request for Hearing (the "Second Motion for Reconsideration"). The Second Motion for Reconsideration restated the arguments of its First Motion for Reconsideration, adding only a strained and erroneous argument regarding a mediation condition precedent to litigation.

21.     By Order dated May 23, 2022, the Circuit Court denied the Second Motion for Reconsideration.

22.     On April 29, 2022, the Debtor filed a Motion to Dismiss and/or Summary Judgment, which was denied on June 9, 2022.

23.     Seeking a fourth bite at the apple, the Debtor on July 11, 2022, filed a Third Motion for Reconsideration of Final Mechanic's Lien Order and Stay of Foreclosure (the "Third Motion for Reconsideration"). The Third Motion for Reconsideration repeated prior arguments that were raised and rejected by the Circuit Court, namely the mediation condition precedent and the valid defenses argument from the First and Second Motions for Reconsideration.

24.     By Order dated August 2, 2023, the Circuit Court denied the Third Motion for Reconsideration. That Order expressly stated that the Court found that "that no new arguments have been presented that have not been previously considered by the Court". A copy of this Order is attached hereto as **Exhibit C**.

25.     On April 11, 2023, the Debtor filed a Motion to Strike Petition for Mechanic's Lien (the "Motion to Strike"), seeking a fifth time to challenge the Final Mechanic's Lien Order. In the Moton to Strike, the Debtor made the same arguments that it makes in the Claim Objection. The Debtor goes so far as to attach to the Claim Objection the same affidavits that it filed with the Motion to Strike.

26.     By Order dated August 2, 2023, the Circuit Court denied the Motion to Strike.

## ARGUMENT AND LEGAL AUTHORITY

27.     In the Claim Objection, the Debtor contends that J. Paul's lien is invalid and unenforceable under Maryland law. This is the sixth attempt by the Debtor's principals to challenge the Final Mechanic's Lien Order entered over three and a half years ago in the State Court Litigation.  The Claim Objection is frivolous, utterly devoid of merit, and contrary to clearly established law.

28.     The Claim Objection is barred by *res judicata*.  *Res judicata*, also known as claim preclusion or direct estoppel, means "a thing adjudicated". *Anne Arundel Board of Education v. Norville*, 887 A.2d. 1029 (2005). The doctrine of *res judicata* bars the re-litigation of a claim if there is a final judgment in a previous litigation where the parties, the subject matter, and causes of action are identical or substantially identical as to issues actually litigated and as to those which could have or should have been raised in the previous litigation. *Id*.

29.     *Res judicata* clearly applies in this case. The Claim Objection presents the identical arguments presented by the same parties in the State Court Litigation and ruled upon by the Circuit Court. Indeed, the affidavits attached to the Claim Objection are the same affidavits previously submitted in the State Court Litigation. Having actually litigated all of the issues in the Claim Objection in the State Court Litigation and having failed to succeed, the Debtor is estopped from seeking to re-litigate the claims again in the Bankruptcy Court.

30.    Moreover, the *Rooker-Feldman Doctrine* applies here and operates as a jurisdictional bar to the relief sought in the Claim Objection. This doctrine applies to "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil v. Saudi Basic Industries Corp.*, 125 S. Ct. 1517 (2005).

31.    That is precisely the case here. The Debtor, having lost in the State Court Litigation on multiple attempts to set aside, vacate, or strike the Final Mechanic's Lien Order prior to the filing of this Chapter 11 case, requests through the Claim Objection that this Court review and reject the Final Mechanic's Lien Order. *Rooker-Feldman* precludes the Debtor from asking this Court to do so.

32.    Finally, it must be noted that the Debtor's principals are acting in bad faith and with unclean hands. The Debtor's principals willfully failed to comply with the terms of the Plan (which they agreed to and requested that the Court confirm). As such, the Court should preclude the Debtor's principals from seeking any relief from the Court, particularly the baseless Claim Objection.

WHEREFORE, J. Paul respectfully requests that this Court: (i) deny and overrule the Claim Objection in its entirety and (ii) grant such other and further relief as may be just.

Respectfully submitted,

*/s/ Brent C. Strickland*
WHITEFORD, TAYLOR & PRESTON L.L.P.
Brent C. Strickland, Esquire (Bar No. 22704)
Whiteford, Taylor & Preston L.L.P.
8830 Stanford Blvd. Suite 400
Columbia, MD 21045
Phone: (410) 347-9402
Facsimile: (410) 223-4302
Email: bstrickland@whitefordlaw.com

*Counsel to J. Paul Builders, LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 19, 2025, I served a copy of the foregoing via CM/ECF on all parties receiving notice pursuant to the Court's electronic noticing system, and on the following by U.S. Mail, postage prepaid:

      Richard B. Rosenblatt, Esq.
      Linda M. Dorney, Esq.
      Law Offices of Richard B. Rosenblatt PC
      30 Courthouse Square, Suite 302
      Rockville MD 208560
      *Proposed Counsel for the Debtor*

                                                      */s/ Brent C. Strickland*
                                                      Brent C. Strickland

4913-0995-0048, v. 1